# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | |
|---|---|
| JEM MIXON, TERRENCE LOGAN, RONALD SMITH, PAUL FLICK, MELISSA SINDONI, WHITNEY SEXTON, CLINTON MAYBERRY, CARL FOSTER, AND KEITH WOODALL, INDIVIDUALLY, AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED, | Case No.:   4:24-cv-00907 |
| *Plaintiffs*, | **CLASS ACTION COMPLAINT** |
| v. | **JURY TRIAL DEMANDED** |
| TOYOTA MOTOR CORPORATION; TOYOTA MOTOR SALES, U.S.A., INC.; TOYOTA MOTOR NORTH AMERICA, INC.; AND TOYOTA MOTOR ENGINEERING & MANUFACTURING NORTH AMERICA, INC., | |
| *Defendants*. | |

## <u>CLASS ACTION COMPLAINT</u>

# TABLE OF CONTENTS

*Page*

I     INTRODUCTION .................................................................................................. 1

II    JURISDICTION AND VENUE ............................................................................ 5

III   PARTIES ............................................................................................................... 6

    A.    Texas Plaintiff Jem Mixon ........................................................................ 6

    B.    Texas Plaintiff Terrence Logan .................................................................. 8

    C.    Texas Plaintiff Ronald "RJ" Smith ............................................................ 9

    D.    New York Plaintiff Melissa Sindoni ......................................................... 10

    E.    North Carolina Plaintiff Whitney Sexton .................................................. 11

    F.    Florida Plaintiff Clinton Mayberry ............................................................ 12

    G.    Indiana Plaintiff Carl Foster ...................................................................... 14

    H.    Georgia Plaintiff Keith Woodall ................................................................ 15

    I.    Defendants .................................................................................................. 16

        1.    Toyota Motor Corporation .............................................................. 16

        2.    Toyota Motor Sales, U.S.A., Inc. ................................................... 17

        3.    Toyota Motor North America, Inc. ................................................. 17

        4.    Toyota Engineering & Manufacturing North America, Inc. ..................... 17

IV    FACTUAL ALLEGATIONS ................................................................................ 21

    A.    The Class Vehicles Suffer from the Door Actuator Defect ....................... 21

    B.    Toyota's Knowledge of the Door Actuator Defect's Safety Implications ............ 32

    C.    Toyota's Warranty-Related Practices ......................................................... 86

    D.    Toyota Caught Cheating on Vehicle Testing .............................................. 87

V     TOLLING OF STATUTES OF LIMITATIONS ................................................. 87

VI    CLASS ALLEGATIONS ...................................................................................... 89

VII   CAUSES OF ACTION ......................................................................................... 93

i

## TABLE OF CONTENTS (cont.)

*Page*

A.  Claims Brought on Behalf of the Nationwide Class, or alternatively, the Texas State Class ........................................................................................ 93

      COUNT I:     VIOLATIONS OF THE MAGNUSON-MOSS WARRANTY ACT ...................................................... 93

      COUNT II:    VIOLATIONS OF THE DECEPTIVE TRADE PRACTICES ACT – CONSUMER PROTECTION ACT ........................................................................... 95

      COUNT III:   BREACH OF IMPLIED WARRANTY ......................... 98

      COUNT IV:   BREACH OF EXPRESS WARRANTIES .................. 100

      COUNT V:    FRAUD BY CONCEALMENT.................................... 104

      COUNT VI:   MONEY HAD AND RECEIVED/UNJUST ENRICHMENT.............................................................. 106

B.  Claims Brought on Behalf of the New York Class............................................. 107

      COUNT VIII: BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY................................................ 110

      COUNT IX:   UNJUST ENRICHMENT............................................ 111

C.  Claims Brought on Behalf of the North Carolina Class ..................................... 112

      COUNT X:    VIOLATION OF THE NORTH CAROLINA UNFAIR AND DECEPTIVE TRADE PRACTICES ACT.......... 112

      COUNT XI:   BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY................................................ 114

      COUNT XII:   FRAUDULENT CONCEALMENT ............................ 116

      COUNT XIII:  UNJUST ENRICHMENT............................................ 117

D.  Claims Brought on Behalf of the Florida Class................................................. 118

      COUNT XIV: VIOLATION OF THE FLORIDA DECEPTIVE AND UNFAIR TRADE PRACTICES ACT .......................... 118

      COUNT XV:   BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY................................................ 120

      COUNT XVI: UNJUST ENRICHMENT............................................ 122

## TABLE OF CONTENTS (cont.)

*Page*

E.    Claims Brought on Behalf of the Indiana Class.................................................... 124

COUNT XVII:   VIOLATION OF THE INDIANA DECEPTIVE
CONSUMER SALES ACT ........................................... 124

COUNT XVIII: BREACH OF IMPLIED WARRANTY OF
MERCHANTABILITY ................................................. 127

COUNT XIX:    FRAUD BY CONCEALMENT ................................. 128

COUNT XX:     UNJUST ENRICHMENT ........................................... 131

F.    Claims Brought on Behalf of the Georgia Class................................................... 132

COUNT XXI:    VIOLATIONS OF GEORGIA'S UNIFORM
DECEPTIVE TRADE PRACTICES ACT.................. 132

COUNT XXII:   VIOLATIONS OF GEORGIA'S FAIR BUSINESS
PRACTICES ACT ......................................................... 135

COUNT XXIII: BREACH OF IMPLIED WARRANTY OF
MERCHANTABILITY ................................................. 138

COUNT XXIV: FRAUDULENT CONCEALMENT........................... 140

COUNT XXV:  UNJUST ENRICHMENT ........................................... 141

JURY DEMAND....................................................................................................................142

PRAYER FOR RELIEF .......................................................................................................142

Plaintiffs Jem Mixon, Terrence Logan, Ronald "RJ" Smith, Paul Flick, Melissa Sindoni, Whitney Sexton, Clinton Mayberry, Carl Foster, and Keith Woodall, on behalf of themselves and a class of other similarly situated individuals, complains of and alleges the following causes of action against Defendants Toyota Motor Corporation, Toyota Motor Sales, U.S.A., Inc., Toyota Motor North America, Inc., Toyota Motor Engineering & Manufacturing North America, Inc. (collectively "Toyota") as follows:

## I    INTRODUCTION

1.    This Complaint seeks damages against Toyota for breach of the manufacturers' warranties and for unfair or deceptive acts or practices pertaining to the design, manufacture, and sale of the following Toyota vehicles with defective door locking actuators (the "Class Vehicles" or "Vehicles"):[1]

| Model | Generation/<br>Model Years |
|---|---|
| 4Runner | 5th Gen (2010 – 2024) |
| RAV4 | 4th Gen (2013 – 2018) |
| | 5th Gen (2019 – Present) |
| Highlander | 3rd Gen (2014 – 2019) |
| | 4th Gen (2020 – Present) |
| Prius | 3rd Gen (2010 – 2015) |
| | 4th Gen (2016 – 2022) |
| Tundra | 2nd Gen (2007 – 2021) |
| | 3rd Gen (2022 – Present) |
| Camry | 7th Gen (2012 – 2017) |
| | 8th Gen (2018 – 2024) |
| Camry Hybrid | 2nd Gen (2012 – 2017) |
| | 3rd Gen (2018 – 2024) |

---

[1] Plaintiffs reserve the right to amend or add to the vehicle models included in the definition of Class Vehicles after conducting discovery.

| Corolla | 11th Gen (2014 – 2019) |
| | 12th Gen (2020 – Present) |
| Tacoma | 2nd Gen (2005 – 2015) |
| | 3rd Gen (2016 – 2023) |
| FJ Cruiser | (2007 – 2014) |

2.      The uniform defect present in each of the Class Vehicles, listed above, is defined as follows: the door lock actuator in each of the Class Vehicles' doors prematurely ceases to operate so that door cannot be locked or unlocked utilizing the remote key fob or power door locks on the interior door panels.

3.      AISIN Corp. ("AISIN"), a Japanese corporation, manufactures the door lock actuator that Toyota incorporates into its vehicles.[2]

4.      Plaintiffs are informed and believe, and thereon allege, that Toyota manufactures and sells the Class Vehicles throughout the United States, including within the State of Texas. Aisin manufactures the door actuator that Toyota incorporates into its vehicles.

5.      This action arises from Toyota's failure, despite their longstanding knowledge of a material defect in the Class Vehicles, to disclose to Plaintiffs and other consumers that the Class Vehicles are predisposed to a door lock actuator defect (the "Door Actuator Defect"). This defect—which is in all of the Class Vehicles when they roll off the assembly line, and typically manifests during or shortly after the limited warranty period has expired—will inevitably cause the door lock actuators in the Class Vehicles to fail. Once the door lock actuators cease operating properly, the door locking mechanism fails to function as intended and expected.

6.      Significantly, when the Door Actuator Defect occurs it poses a safety risk to the operator and passengers of the vehicle because the door locking and unlocking features fail to

---

[2] *Id.*

operate correctly. In some instances, single or multiple doors on the Class Vehicles may not lock at any time, whether the vehicle is turned on or off, despite actions or commands by the operator. This jeopardizes the safety of Vehicle occupants by causing unintentional door openings during operation, unknown failures to lock the doors, inoperable doors during emergency situations, more vulnerable to potential crime and other risks that could have otherwise been avoided. This defect also renders the Class Vehicles and their contents vulnerable to theft when left unattended.

7.    The doors of Class Vehicles may not lock or unlock electronically despite the necessary commands. This poses serious safety concerns, for example when Class Vehicles are involved in vehicular accidents because the occupants may become entrapped when the Door Actuator Defect prevents an occupant from unlocking the doors. Furthermore, this defect jeopardizes the safety of Vehicle occupants given that not all doors are capable of being manually unlocked from the exterior. Instead, and with the exception of the Vehicle's driver door, the electronic locking mechanism is the only method available to gain access to the Vehicle from the exterior. While this issue risks the safety of all occupants, the Door Actuator Defect poses an acute risk to young children occupying the rear seats because they may be unable to open the door from inside the vehicle and, due to the lack of an exterior locking mechanism, an individual on the outside may not be able to unlock these doors and gain interior access.

8.    Not only did Toyota actively conceal the fact that particular component within the door locking system are defective (and require costly repairs to fix), but Toyota also did not reveal that the existence of this defect would diminish the intrinsic and resale value of the Class Vehicles and lead to the safety concerns described herein.

9.       Toyota has long been aware of the Door Actuator Defect. Despite its longstanding knowledge of this defect, Toyota has routinely refused to repair the Class Vehicles without charge when the defect manifests.

10.      Many owners and lessees of Class Vehicles have communicated with Toyota's agents to request that Toyota remedy and/or address the Door Actuator Defect and/or resultant damage at no expense. Toyota has failed and/or refused to do so—often conveying to Vehicle owners that the failed parts comprising the Door Actuator Defect are considered "maintenance" and/or "wear" items and not covered under warranty.

11.      Failure of a door actuator is not a normal "wear and tear" item, nor is it a component that is expected to be repaired or replaced on regular intervals.

12.      For customers with vehicles within the written warranty period (which extends for the shorter of 3 years or 36,000 miles for Toyota vehicles), Toyota has done nothing more than temporarily repair the Door Actuator Defect or replace it with other similarly defective and inherently failure-prone door lock actuators.[3]

13.      Toyota has refused to take any action to correct this concealed defect when it manifests in vehicles outside the warranty period. Because the Door Actuator Defect typically manifests shortly outside of the warranty period for the Class Vehicles—and given Toyota's knowledge of this concealed, safety related defect, unequal bargaining power, and other factors discussed below—Toyota's attempt to limit the warranty with respect to the Door Actuator Defect is unconscionable.

14.      Despite notice and knowledge of the Door Actuator Defect from the numerous consumer complaints it has received, information received from dealers, National Highway Traffic

---

[3] Upon information and belief, if Toyota does replace the door lock actuator during the express warranty period, Toyota only warrants the newly-replaced door actuator for a period of 1-year.

Safety Administration ("NHTSA") complaints, and its own internal records, Toyota has not recalled the Class Vehicles to repair the Door Actuator Defect, offered its customers a suitable repair or replacement free of charge, or offered to reimburse its customers who have incurred out-of-pocket expenses to repair the defect.

15.     As a result of Toyota's unfair, deceptive and/or fraudulent business practices, owners and/or lessees of Class Vehicles, including Plaintiffs, have suffered an ascertainable loss of money and/or property and/or loss in value. The unfair and deceptive trade practices committed by Toyota was conducted in a manner giving rise to substantial aggravating circumstances.

16.     Had Plaintiffs and other Class members known about the Door Actuator Defect at the time of purchase or lease, they would not have bought or leased the Class Vehicles or would have paid substantially less for them.

17.     As a result of the Door Actuator Defect and the considerable monetary costs associated with attempting to repair such defect, Plaintiffs and Class members have suffered injury in fact, incurred damages and have otherwise been harmed by Toyota's conduct.

18.     Accordingly, Plaintiffs bring this action to redress Toyota's violations of the consumer protection statutes, and also seek recovery for Toyota's breaches of express warranty, implied warranty, its duty of good faith and fair dealing, and its fraudulent omissions and concealment of the Door Actuator Defect.

## II     JURISDICTION AND VENUE

19.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 of the Class Action Fairness Act of 2005 because: (i) there are 100 or more Class members, (ii) there is an aggregate amount in controversy exceeding $5,000,000, exclusive of interest and costs, and (iii) there is minimal diversity because at least one member of the nationwide class of

plaintiffs and one defendant are citizens of different States. Alternatively, this Court has federal question subject matter jurisdiction over this action, pursuant to 28 U.S.C. § 1331, based on Plaintiffs' allegations that Toyota has violated The Magnuson-Moss Warranty Act, 15 U.S.C. § 2301, *et seq.*, and supplemental jurisdiction over the alleged state law claims pursuant to 28 U.S.C. § 1367.

20.     This Court has specific personal jurisdiction over Toyota because Toyota's United States headquarters is located in this district. Toyota also conducts business in Texas, has purposefully availed themselves of the benefits and protections of Texas by continuously and systematically conducting substantial business in this judicial district, directing advertising and marketing materials to districts within Texas, and intentionally and purposefully placing Class Vehicles into the stream of commerce within the districts of Texas and throughout the United States with the expectation and intent that consumers would purchase them. Thousands of Class Vehicles have been sold in Texas and are operated within the State and this judicial district.

21.     Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391 because Toyota has its United States headquarters in this district, transacts business in this district, is subject to personal jurisdiction in this district, and therefore is deemed to be a citizen of this district. Additionally, there are one or more authorized Toyota dealers within this district, Toyota has advertised in this district, and Toyota has received substantial revenue and profits from its sales and/or leasing of Class Vehicles in this district; therefore, a substantial and material part of the events and/or omissions giving rise to the claims occurred within this district.

### III     PARTIES

#### A.     <u>Texas Plaintiff Jem Mixon</u>

22.     Plaintiff Jem Mixon is a resident of Collin County, Texas.

23.     In or about November 25, 2017, Plaintiff Mixon purchased a used 2017 Toyota Highlander (for the purposes of this section, "the Vehicle") from Cowboy Toyota in Dallas, Texas. Her vehicle bears Vehicle Identification Number 5TDKZRFH8HS525025.

24.     Plaintiff Mixon uses the Vehicle for personal, family, and/or household uses.

25.     At the time she purchased the vehicle, Plaintiff Mixon was not informed of the Door Actuator Defect or the risk of the door locking and unlocking features failure, jeopardizing the safety of the Vehicle occupants by making them more vulnerable to potential crime, unintentional door openings during operation, and other risks that could have otherwise been avoided.

26.     In or around January 2023, Plaintiff Mixon noticed the front-driver door lock of her 2017 Toyota Highlander would not automatically lock and unlock when she attempted to lock and unlock the doors using the vehicle's Frequency Operated Button ("FOB"). The Vehicle alarm system also did not activate when she tried to lock the doors using the FOB. This occurred both when using the vehicle's FOB to remotely lock and unlock the doors, as well as the interior power door locking switches. Plaintiff Mixon replaced the front-driver door actuator for a cost of approximately $500.

27.     In February 2024, Plaintiff Mixon noticed the rear-driver door lock of her Vehicle would not automatically lock and unlock when she attempted to lock and unlock the doors using the vehicle's FOB. Plaintiff Mixon has not replaced or repaired this door actuator.

28.     The Vehicle has not been recalled. Plaintiff Mixon is concerned and fearful regarding the integrity and safety of the door locking and unlocking features of the Vehicle.

29.     Had Plaintiff Mixon known of the Door Actuator Defect at the time she purchased the Vehicle, she would not have leased or purchased it or would have paid substantially less for it.

30.    Plaintiff Mixon has suffered an ascertainable loss as a result of Toyota's omissions and/or misrepresentations associated with the Door Actuator Defect and Toyota's refusal to correct the defect, including, but not limited to, out-of-pocket losses, diminished value to the Vehicle, and other consequential damages.

**B.    Texas Plaintiff Terrence Logan**

31.    Plaintiff Terrence Logan is a resident of Collin County, Texas.

32.    In or about May 2014, Plaintiff Logan purchased a new 2014 Toyota Corolla (for the purposes of this section, "the Vehicle") from Toyota of Denton in Denton, Texas. His vehicle bears Vehicle Identification Number: 2T1BURHE9EC170842

33.    Plaintiff Logan uses the Vehicle for personal, family, and/or household uses.

34.    At the time he purchased the Vehicle, Plaintiff Logan was not informed of the Door Actuator Defect or the risk of the door locking and unlocking features failure, jeopardizing the safety of the Vehicle occupants by making them more vulnerable to potential crime, unintentional door openings during operation, and other risks that could have otherwise been avoided.

35.    In or around May 2016, after only roughly two years of ownership, Plaintiff Logan locked his Vehicle using the Vehicle's FOB and noticed his 2014 Toyota Corolla's front driver door did not lock. Plaintiff Logan observed that the front driver door would not automatically lock and unlock when he attempted to lock and unlock the doors remotely using the vehicle's FOB.

36.    Plaintiff Logan brought his Vehicle to Toyota of Denton to fix the front driver door lock shortly after discovering the Door Actuator Defect. Toyota of Denton agreed to fix the door lock under a separate extended warranty Plaintiff Logan purchased when he originally bought the car from Toyota of Denton with a co-pay of approximately $100.00.

37.     Not long after the front driver door failed, Plaintiff Logan's rear driver door lock failed. Additionally, since noticing this issue in 2016, Plaintiff Logan has reported that the rear passenger door lock occasionally works for a short period of time, then proceeds to randomly fail for an unpredictable period of time.

38.     The Vehicle has not been recalled. Plaintiff Logan is concerned and fearful regarding the integrity and safety of the door locking and unlocking features of the Vehicle.

39.     Had Plaintiff Logan known of the Door Actuator Defect at the time he purchased the Vehicle he would not have leased or purchased it or would have paid substantially less for it.

40.     Plaintiff Logan has suffered an ascertainable loss as a result of Toyota's omissions and/or misrepresentations associated with the Door Actuator Defect and Toyota's refusal to correct the defect, including, but not limited to, out-of-pocket losses, diminished value to the Vehicle, and other consequential damages.

**C.    Texas Plaintiff Ronald "RJ" Smith**

41.     Plaintiff Ronald "RJ" Smith is a resident of Dallas County, Texas.

42.     In or about February 2022, Plaintiff Smith leased a used 2019 Toyota Tundra (for the purposes of this section, "the Vehicle") from Toyota of Dallas in Dallas, Texas. His vehicle bears Vehicle Identification Number: 5TFEM5F16KX136621

43.     Plaintiff Smith uses the Vehicle for personal, family, and/or household uses.

44.     At the time he purchased the Vehicle, Plaintiff Smith was not informed of the Door Actuator Defect or the risk of the door locking and unlocking features failure, jeopardizing the safety of the Vehicle occupants by making them more vulnerable to potential crime, unintentional door openings during operation, and other risks that could have otherwise been avoided.

45.     In or around March 2024, Plaintiff Smith, locked his car using the Vehicle's FOB, and returned to his 2019 Toyota Tundra to find that the front driver door was not locked. Plaintiff Smith noticed the front driver door would not automatically lock and unlock when he attempted to lock and unlock the doors remotely using the vehicle's FOB. Not long after the front driver door failed, Plaintiff Smith's front passenger door lock failed. Since noticing this issue in March 2024, Plaintiff Smith has reported that the affected door locks occasionally work for a short period of time, then proceed to randomly fail for an unpredictable period of time.

46.     The Vehicle has not been recalled. Plaintiff Smith is concerned and fearful regarding the integrity and safety of the door locking and unlocking features of the Vehicle.

47.     Had Plaintiff Smith known of the Door Actuator Defect at the time he purchased the Vehicle he would not have leased or purchased it or would have paid substantially less for it.

48.     Plaintiff Smith has suffered an ascertainable loss as a result of Toyota's omissions and/or misrepresentations associated with the Door Actuator Defect and Toyota's refusal to correct the defect, including, but not limited to, out-of-pocket losses, diminished value to the Vehicle, and other consequential damages.

**D.    New York Plaintiff Melissa Sindoni**

49.     Plaintiff Melissa Sindoni is a resident of Chemung County, New York.

50.     In or about April 2022, Plaintiff Sindoni purchased a used 2020 Toyota Tundra (for the purposes of this section, "the Vehicle") from Auto Outlets of Canandaigua. Her vehicle bears Vehicle Identification Number: 5TFDY5F19LX892249.

51.     Plaintiff Sindoni uses the Vehicle for personal, family, and/or household uses.

52.     At the time she purchased the Vehicle, Plaintiff Sindoni was not informed of the Door Actuator Defect or the risk of the door locking and unlocking features failure, jeopardizing

the safety of the Vehicle occupants by making them more vulnerable to potential crime, unintentional door openings during operation, and other risks that could have otherwise been avoided.

53.    In or around May 2022, Plaintiff Sindoni locked her car using the Vehicle's FOB. Plaintiff Sindoni noticed the front driver door would not automatically lock and unlock when she attempted to lock and unlock the doors remotely using the vehicle's FOB. Not long after the front driver door failed, Plaintiff Smith's rear driver side door lock failed. Since noticing this issue in May 2022, Plaintiff Sindoni has reported that the affected door locks occasionally work for a short period of time, then proceed to randomly fail for an unpredictable period of time.

54.    The Vehicle has not been recalled. Plaintiff Sindoni is concerned and fearful regarding the integrity and safety of the door locking and unlocking features of the Vehicle.

55.    Had Plaintiff Sindoni known of the Door Actuator Defect at the time she purchased the Vehicle she would not have leased or purchased it or would have paid substantially less for it.

56.    Plaintiff Sindoni has suffered an ascertainable loss as a result of Toyota's omissions and/or misrepresentations associated with the Door Actuator Defect and Toyota's refusal to correct the defect, including, but not limited to, out-of-pocket losses, diminished value to the Vehicle, and other consequential damages.

**E.    North Carolina Plaintiff Whitney Sexton**

57.    Plaintiff Whitney Sexton is a resident of Wilkes County, North Carolina.

58.    In or about November 2022, Plaintiff Sexton purchased a used 2017 Toyota 4Runner (for the purposes of this section, "the Vehicle") from Parkway Ford in Winston Salem, North Carolina. Her vehicle bears Vehicle Identification Number JTEBU5JR7H5443053.

59.    Plaintiff Sexton uses the Vehicle for personal, family, and/or household uses.

60.    At the time she purchased the Vehicle, Plaintiff Sexton was not informed of the Door Actuator Defect or the risk of the door locking and unlocking features failure, jeopardizing the safety of the Vehicle occupants by making them more vulnerable to potential crime, unintentional door openings during operation, and other risks that could have otherwise been avoided.

61.    In or around January 2023, Plaintiff Sexton, attempted to lock her car using the Vehicle's FOB only to find that the front driver door would not automatically lock and unlock when she attempted to lock and unlock the doors remotely using the vehicle's FOB.

62.    The Vehicle has not been recalled. Plaintiff Sexton is concerned and fearful regarding the integrity and safety of the door locking and unlocking features of the Vehicle.

63.    Had Plaintiff Sexton known of the Door Actuator Defect at the time she purchased the Vehicle she would not have leased or purchased it or would have paid substantially less for it.

64.    Plaintiff Sexton has suffered an ascertainable loss as a result of Toyota's omissions and/or misrepresentations associated with the Door Actuator Defect and Toyota's refusal to correct the defect, including, but not limited to, out-of-pocket losses, diminished value to the Vehicle, and other consequential damages.

**F.    Florida Plaintiff Clinton Mayberry**

65.    Plaintiff Clinton Mayberry is a resident of Broward County, Florida.

66.    In or about 2016, Plaintiff Clinton Mayberry purchased a used 2016 Toyota Prius (for purposes of this section, "the Vehicle") online from Koons Toyota. His vehicle bears the Vehicle Identification Number JTDKARFU8G3002172.

67.    Plaintiff Mayberry uses the Vehicle for personal, family, and/or household uses.

68.     At the time he purchased the vehicle, Plaintiff Mayberry was not informed of the Door Actuator Defect or the risk of the door locking and unlocking features failure, jeopardizing the safety of the Vehicle occupants by making them more vulnerable to potential crime, unintentional door openings during operation, and other risks that could have otherwise been avoided.

69.     In or around 2017, approximately between six and eight months after purchasing the Vehicle, Plaintiff Mayberry began to notice that the rear passenger door lock would occasionally not lock and unlock when he attempted to lock and unlock the doors using the vehicle's FOB. This issue has persisted and continues to affect the rear passenger door.

70.     Additionally, Plaintiff Mayberry has noticed that the front driver door has displayed the symptoms of the Door Actuator Defect. Plaintiff Mayberry has reported that the affected door locks occasionally work for a short period of time, then proceed to randomly fail for an unpredictable period of time.

71.     The Vehicle has not been recalled. Plaintiff Mayberry is concerned and fearful regarding the integrity and safety of the door locking and unlocking features of the Vehicle.

72.     Had Plaintiff Mayberry known of the Door Actuator Defect at the time she purchased the Vehicle she would not have leased or purchased it or would have paid substantially less for it.

73.     Plaintiff Mayberry has suffered an ascertainable loss as a result of Toyota's omissions and/or misrepresentations associated with the Door Actuator Defect and Toyota's refusal to correct the defect, including, but not limited to, out-of-pocket losses, diminished value to the Vehicle, and other consequential damages.

**G.**    **Indiana Plaintiff Carl Foster**

74.    Plaintiff Carl Foster is a resident of Sullivan County, Indiana.

75.    In or about July 2022, Plaintiff Foster purchased a used 2018 Toyota Highlander (for purposes of this section, "the Vehicle") from Taylor Automotive in Bourbonnais Illinois (for purposes of this section, "the Dealership"). His vehicle bears the Vehicle Identification Number 5TDJZRFH5JS843847.

76.    Plaintiff Foster uses the Vehicle for personal, family, and/or household uses.

77.    At the time he purchased the vehicle, Plaintiff Foster was not informed of the Door Actuator Defect or the risk of the door locking and unlocking features failure, jeopardizing the safety of the Vehicle occupants by making them more vulnerable to potential crime, unintentional door openings during operation, and other risks that could have otherwise been avoided.

78.    In or around August 2022, almost immediately after purchasing the Vehicle, Plaintiff Foster began to notice that both rear door locks would not lock and unlock when he attempted to lock and unlock the doors using the Vehicle's FOB.

79.    Plaintiff Foster spoke with the Dealership regarding this issue, and they never mentioned the Door Actuator Defect being covered under warranty. Moreover, Plaintiff Foster noted that the Dealership acknowledged that the Door Actuator Defect is an ongoing issue in Toyota vehicles.

80.    The Vehicle has not been recalled. Plaintiff Foster is concerned and fearful regarding the integrity and safety of the door locking and unlocking features of the Vehicle.

81.    Had Plaintiff Foster known of the Door Actuator Defect at the time he purchased the Vehicle he would not have leased or purchased it or would have paid substantially less for it.

- 14 -

82.     Plaintiff Foster has suffered an ascertainable loss as a result of Toyota's omissions and/or misrepresentations associated with the Door Actuator Defect and Toyota's refusal to correct the defect, including, but not limited to, out-of-pocket losses, diminished value to the Vehicle, and other consequential damages.

**H.     Georgia Plaintiff Keith Woodall**

83.     Plaintiff Keith Woodall is a resident of Fulton County, Georgia.

84.     In or about 2019, Plaintiff Woodall purchased a new 2019 Toyota 4Runner (for the purposes of this section, "the Vehicle") from Toyota of Roswell in Roswell, Georgia. His vehicle bears Vehicle Identification Number JTEZU5JR1K5197557.

85.     Plaintiff Woodall uses the Vehicle for personal, family, and/or household uses.

86.     At the time he purchased the vehicle, Plaintiff Woodall was not informed of the Door Actuator Defect or the risk of the door locking and unlocking features failure, jeopardizing the safety of the Vehicle occupants by making them more vulnerable to potential crime, unintentional door openings during operation, and other risks that could have otherwise been avoided.

87.     In or around May 2024, Plaintiff Woodall noticed the front-driver door lock of his 2019 Toyota 4Runner would not automatically lock and unlock when he attempted to lock and unlock the doors using the Vehicle's FOB. This occurred both when using the vehicle's FOB to remotely lock and unlock the doors, as well as the interior power door locking switches. Almost simultaneously, Plaintiff Woodall noticed the front-passenger door lock of his Vehicle would also not lock and unlock automatically when he attempted to lock and unlock the doors using the Vehicle's FOB.

88.    Shortly after, Plaintiff Woodall took his Vehicle to Toyota of Roswell to confirm that this issue was caused by the door lock actuators.

89.    Toyota of Roswell confirmed that the door lock actuators would need to be replaced and provided an estimate.

90.    In or around June 2024, Plaintiff Woodall took his Vehicle to Japanese Auto in Alpharetta Georgia to have repairs made.

91.    Plaintiff Woodall replaced both the front-driver and front-passenger door lock actuators for a cost of approximately $1,500.

92.    The Vehicle has not been recalled. Plaintiff Woodall is concerned and fearful regarding the integrity and safety of the door locking and unlocking features of the Vehicle.

93.    Had Plaintiff Woodall known of the Door Actuator Defect at the time he purchased the Vehicle, he would not have leased or purchased it or would have paid substantially less for it.

94.    Plaintiff Woodall has suffered an ascertainable loss as a result of Toyota's omissions and/or misrepresentations associated with the Door Actuator Defect and Toyota's refusal to correct the defect, including, but not limited to, out-of-pocket losses, diminished value to the Vehicle, and other consequential damages.

## I.    Defendants

### 1.    Toyota Motor Corporation

95.    Defendant Toyota Motor Corporation ("TMC") is a Japanese corporation with its principal place of business located at 1 Toyota-Cho, Toyota City, Aichi Prefecture, 471-8571, Japan. TMC is the parent corporation of Toyota Motor Sales, U.S.A., Inc. TMC, through its various entities, designs, manufactures, markets, distributes and sells Toyota, Lexus and Scion automobiles in Texas and multiple other locations in the United States and worldwide.

### 2. Toyota Motor Sales, U.S.A., Inc.

96.     Defendant Toyota Motor Sales, U.S.A., Inc. ("TMS") is incorporated and headquartered in Plano, Texas. TMS is TMC's U.S. sales and marketing arm, which oversees sales and other operations in 49 states. TMS distributes Toyota, Lexus, and Scion vehicles in the United States and sells these vehicles through its network of dealers. Money received from the purchase of a Toyota vehicle from a dealer flows from the dealer to TMS. Money received by the dealer from a purchaser can be traced to TMS and TMC.

### 3. Toyota Motor North America, Inc.

97.     Defendant Toyota Motor North America, Inc. ("TMNA") is a California corporation headquartered in Plano, Texas as of May 2017. TMNA operates as a wholly owned subsidiary of Toyota Motor Corporation ("TMC"), the Japanese parent company, and is the corporate parent of Toyota Motor Sales, U.S.A., Inc. ("TMS"). TMNA oversees government and regulatory affairs, economic research, corporate advertising, and corporate communications for all of TMC's North American operations. TMNA is in the business of designing, engineering, testing, validating, manufacturing, marketing, and selling Toyota and Lexus branded vehicles throughout the United States.

### 4. Toyota Engineering & Manufacturing North America, Inc.

98.     Defendant Toyota Engineering & Manufacturing North America, Inc. ("TEMA") is a Kentucky corporation with its corporate headquarters located at 6565 Headquarters Drive, Plano, Texas 75024.

99.     TEMA is responsible for automobile engineering, manufacturing, research, and design in North America for Toyota motor vehicles. TEMA designs, develops, tests, manufactures, assembles, and evaluates Toyota motor vehicles in the United States. TEMA also develops parts

for North American Toyota vehicles. TEMA operates factories which manufacture Toyota vehicles and operates research and development facilities. TMS, TMC, TMNA, and TEMA are collectively referred to in this complaint as "Toyota" or the "Defendants," unless identified as TMS, TMC, TMNA or TEMA.

100.  At all times herein mentioned, the Toyota Defendants designed, engineered, developed, manufactured, fabricated, assembled, equipped, tested or failed to test, inspected or failed to inspect, repaired, retrofitted or failed to retrofit, failed to recall, labeled, advertised, promoted, marketed, supplied, distributed, wholesaled, and/or sold the Class Vehicles, including the vehicle operated by Plaintiffs.

101.  There exists, and at all times herein mentioned existed, a unity of ownership between TMS, TMC, TMNA, and TEMA and their agents such that any individuality or separateness between them has ceased and each of them is the alter ego of the others. Adherence to the fiction of the separate existence of Defendants, would, under the circumstances set forth in this complaint, sanction fraud, or promote injustice.

102.  For example, upon information and belief, Defendants TMS, TMNA, and TEMA communicate with TMC concerning virtually all aspects of the Toyota products TMS, TMNA, and TEMA distribute within the United States, including appropriate repairs for pervasive defects, and whether Toyota will cover repairs to parts customers claim to be defective. Toyota's decision not to disclose the alleged defects to Plaintiffs or the Class, or whether to cover repairs to the same pursuant to an extended warranty or goodwill program, was a decision made jointly by TMC, TMS, and TMNA.

103.  TMS also oversees Toyota's National Warranty Operations (NWO), which, among other things, reviews and analyzes warranty data submitted by Toyota's dealerships and authorized

technicians in order to identify defect trends in vehicles. Upon information and belief, Toyota dictates that when a repair is made under warranty (or warranty coverage is requested), service centers must provide Toyota with detailed documentation of the problem and the fix that describes the complaint, cause, and correction, and also save the broken part in the event Toyota decide to audit the dealership. NWO collects this information, makes it available to other Toyota divisions, and assists Toyota in determining whether particular repairs are covered by an applicable Toyota warranty or are indicative of a pervasive defect.

104.    Toyota also jointly designs, determines the substance of, and affixes to its vehicles the window stickers visible on each new Toyota vehicle that is offered for sale at its authorized dealerships, including those omitting mention of the alleged defects. Plaintiffs and the Class reviewed these stickers prior to purchasing or leasing Class Vehicles. Toyota controls the content of these window stickers; its authorized dealerships have no input with respect to their content. Vehicle manufacturers like Toyota are legally required to affix a window sticker to every vehicle offered for sale in the United States pursuant to the Automobile Information Disclosure Act of 1958, 15 U.S.C. §§ 1231-1233, *et seq.* The Act specifically prohibits the removal or alteration of the sticker prior to the sale of the car by anyone other than the ultimate purchaser, including the dealership at which the vehicle is offered for sale.

105.    Toyota developed the marketing materials to which Plaintiffs and the Class were exposed, owner's manuals, informational brochures, warranty booklets, and information included in maintenance recommendations and/or schedules for the Class Vehicles, all of which fail to disclose the Door Actuator Defect.

106.    Toyota also employs a Customer Experience Center, the representatives of which are responsible for fielding customer complaints and monitoring customer complaints posted to

Toyota or third-party web sites—data which informs NWO's operations, and through which Toyota acquires knowledge of defect trends in its vehicles.

107.    Toyota manufactured, sold, and warranted the Class Vehicles throughout the United States. Toyota and/or its agents, divisions, or subsidiaries designed, manufactured, and installed the defective door lock actuator system in the Class Vehicles.

108.    Toyota distributes vehicles, including the Class Vehicles, through a network of dealers who are agents of TMS and TMC.

109.    Toyota manufactured, sold, and warranted the Class Vehicles throughout the United States. Toyota and/or its agents, divisions, or subsidiaries designed, manufactured, and installed the defective door lock actuator system in the Class Vehicles.

110.    Additionally, upon information and belief, Toyota Motor Corporation owns roughly 25% of the outstanding stock in AISIN Corp.[4]

111.    Based upon information and belief, Plaintiffs alleges that at all times mentioned herein, each and every Defendant was acting as an agent and/or employee of each of the other Defendants, and at all times mentioned was acting within the course and scope of said agency and/or employment with the full knowledge, permission, and consent of each of the other Defendants. In addition, each of the acts and/or omissions of each Defendant alleged herein were made known to, and ratified by, each of the other Defendants.

---

[4] Recent news suggests that Toyota is planning to reduce its stake in AISIN from approximately 25% to 20% of issued shares. See https://www.japantimes.co.jp/business/2024/06/27/toyota-offload-aisin-shares/#:~:text=Toyota%20Motor%20and%20two%20affiliates,sales%20of%20its%20cross%2Dshareholdings.

## IV    FACTUAL ALLEGATIONS

### A.    The Class Vehicles Suffer from the Door Actuator Defect

112.    All the Class Vehicles were marketed as containing power door locks as standard equipment, regardless of the trim model selected by the purchaser.

113.    Power door locks (also known as electronic door locks or central locking) allow the driver or front passenger to simultaneously lock or unlock all the doors of an automobile or truck, through use of an interior lock/unlock button or switch, an exterior manual locking mechanism, and/or a key FOB.

114.    The components of a power door locking system include, *inter alia*, a latch, metal rod, cables, and an actuator. Typically, inside the door of a vehicle equipped with power door locks is a metal latch. The main function of this component is to keep the car door shut. The latch is then connected to an electromechanical door lock actuator, which is a small motor that moves the latch up and down based on electronic commands by the vehicle operator. Another rod or cable is connected to the manual door lock button. This can take the form of a rod protruding from the top of the door or a flip-style switch near the interior door handle. The exterior door handle is connected to a metal rod inside of the car door, but this rod engages only if the latch is in the unlocked position. If the manual door lock button is in the "lock" position, or if the actuator lowered the latch, the rod connected to the door handle will disengage from the latch and will not be able to open the door.

115.    The picture below exemplifies interior door components generally comprising a power door locking system.

- 21 -



116.    The components of the power door locking system in the Class Vehicles also include, *inter alia*, a latch, metal rod, cables, and a door lock actuator. The picture below illustrates the interior door components comprising the power door locking system in the Class Vehicles.



117.    The power door locking system contained in the Class Vehicles is designed to be operated using interior electronic switches or, when the operator is on the exterior of the vehicle, through the use of a radio transmitter in the vehicle's key FOB.

**Toyota 4Runner Driver Side Power Window and Door Lock Controls (Below)**



**Toyota 4Runner Passenger Side Power Window and Door Lock Controls (Below)**



**Toyota 4Runner Key FOB with Lock and Unlock Buttons (Below)**



118.    When the Door Actuator Defect manifests in the Class Vehicles, the power door locking system will no longer respond properly using the interior electronic door lock switches, the vehicle's key FOB or the programmable automatic lock/unlock features. As a result, and where possible, the operator must manually operate the door locking system.

119.    In the Class Vehicles, the interior manual door lock/unlock button is a flip-style door lock switch near the interior door handle rather than a rod protruding from the top of the door

panel. If the flip-style door lock switch is in the "lock" position, or if the actuator lowered the latch, an occupant will not be able to open the door with the vehicle's key FOB or the programmable automatic lock/unlock features. The below pictures illustrate the Class Vehicles' flip-style interior door lock switch.

**Flip-style interior door lock in the unlocked position (Toyota 4Runner)**



**Flip-style interior door lock in the locked position (Toyota 4Runner)**



120.    The exterior door lock/unlock mechanism on the Class Vehicles, located only on the front driver's side door handle, can be manually operated from the exterior by inserting the Vehicle's ignition key. The remaining Vehicle doors do not have any similar exterior method of manually locking and/or unlocking the doors. The below pictures illustrate the Class Vehicles'

exterior door locking mechanism on the front driver side door and the lack of any similar feature on the remaining doors.

**Class Vehicles' Front Driver Side Exterior Door Handle with Key Lock (Toyota 4Runner)**



**Front Passenger Side Exterior Door Handle without Key Lock (Toyota 4Runner)**



**Rear Driver Side Exterior Door Handle without Key Lock (Toyota 4Runner)**



**Rear Passenger Side Exterior Door Handle without Key Lock (Toyota 4Runner)**



121.    If the interior flip-style door lock/unlock switch is in the "lock" position, or if the actuator lowered the latch, the metal rod connected to the exterior door handle will disengage from the latch and an individual will not be able to open the door from the exterior on remaining doors (i.e. all doors other than the front driver's side door become un-openable from the exterior). Because, with the exception of the front driver side door, the Class Vehicle doors do not have a manual exterior method of locking and unlocking the doors, an individual may not be able to gain access to the interior of the Vehicles when the Door Actuator Defect manifests. This presents a serious safety issue when young children, and others requiring assistance, are passengers in the Class Vehicles becasue these individuals may become entrapped due to the Door Actuator Defect.

122.    In Class Vehicles, the latch and door lock actuator are manufactured, sold, serviced and repaired as one unit. Therefore, when the door lock actuator fails and necessitates replacement, the door latch must also be replaced. An example of the combined door lock actuator and latch unit contained in the Class Vehicles (specifically Toyota 4Runner) is shown below.

- 27 -

**Part No. 69040-42250 Door Lock Actuator View #1 (Below)**



**Part No. 69040-42250 Door Lock Actuator View #2 (Below)**



**Part No. 69040-42250 Door Lock Actuator View #3 (Below)**



**Internal Image of the Door Lock Actuator (Toyota 4Runner)**



**Alternative Internal Image of the Door Lock Actuator (Toyota 4Runner)**



123.    Power door lock systems are designed to function for periods (and mileages) substantially in excess of those specified in Toyota's warranties, and given past experience, consumers legitimately expect to enjoy the use of an automobile without worry that the power door lock systems will fail for significantly longer than the limited times and mileages identified in Toyota's warranties

124.    Automobiles must incorporate designs that are able to withstand foreseeable usage conditions such as locking and unlocking the doors electronically. A vehicle can suffer extensive damage and costly repairs from customary environmental and usage conditions when an insufficient vehicle design is implemented.

125.    The Class Vehicles were manufactured with insufficient and defective door lock actuator mechanisms. This defect renders the Class Vehicles prone to premature door lock actuator failure. Once the door lock actuators cease operating properly, the door locking mechanism(s) fail

to function as intended and expected. The Door Actuator Defect poses serious safety and security issues for operators and occupants of the Class Vehicles.

126.    In many instances, consumers have incurred and will continue to incur expenses for repair and/or replacement of the defective door lock actuators despite such defect having been contained in the Class Vehicles when manufactured by Toyota.

127.    Upon information and belief, Toyota, through (1) their own records of customers' complaints, (2) dealership repair records, (3) records from the National Highway Traffic Safety Administration (NHTSA), (4) warranty and post-warranty claims, (5) internal durability testing, and (5) other various sources, were well aware of the Door Actuator Defect but failed to notify customers of the nature and extent of the problems with the Class Vehicle door locking systems or provide any adequate remedy.

128.    Toyota failed to adequately research, design, test and/or manufacture the electronic door locking system before warranting, advertising, promoting, marketing, and selling the Class Vehicles as suitable and safe for use in an intended and/or reasonably foreseeable manner.

129.    Toyota expressly warranted the affected vehicles to be free from defects for a period of the shorter of 3 years or 36,000 miles for Toyota vehicles.

130.    Buyers, lessees, and other owners of the affected Vehicles were without access to the information concealed by Toyota as described herein, and therefore reasonably relied on Toyota's representations and warranties regarding the quality, durability, and other material characteristics of the Vehicles. Had these buyers and lessees known of the defect and the potential danger, they would have taken steps to avoid that danger and/or would have paid less for the Vehicles than the amounts they actually paid, or would not have purchased the Vehicles.

131.    The Class Vehicles suffer from the Door Actuator Defect, which is a significant and material defect capable of leading to complete failure of the door lock actuator. The Door Actuator Defect materially threatens the health and safety of drivers and passengers who ride in the Class Vehicles.

132.    Plaintiffs and numerous Class Vehicle owners and lessees have reported that the Door Actuator Defect causes complete failure of the door lock actuator.

**B.    Toyota's Knowledge of the Door Actuator Defect's Safety Implications**

133.    An important source of field data is NHTSA's Consumer Complaint Database. This publicly available database contains all motor vehicle-related consumer complaints submitted to NHTSA since January 2000. Consumers submit what is called a "Vehicle Owner Questionnaire" in which they are asked to provide information that includes, the make, model, and model year of the vehicle, the approximate incident date, the mileage at which the incident occurred, whether the incident involved a crash or a fire, whether any persons were injured or killed in the incident, the speed of the vehicle at the time of the incident, and a description of the incident along with a description of the vehicle components they believe were involved in the incident. The majority of consumer complaints are submitted online at www.NHTSA.gov where consumers can input this information directly into the database through their computer. They can also submit complaints by telephone through the Vehicle Safety Hotline. This information is then entered into NHTSA's database where it can be searched and reviewed by the general public and vehicle manufacturers alike, by make, model, model year, and component. NHTSA promotes this database as a valuable consumer information tool.

134.    Plaintiffs' experiences are by no means isolated or outlying occurrences. Indeed, the internet is replete with examples of blogs and other websites where consumers have

complained of the exact same Door Actuator Defect within the Class Vehicles. See the following chart below with links to various blogs, forums, videos, etc., which discuss the Door Actuator Defect in one model of the Class Vehicles, the Toyota 4Runner. Similar discussions, links, and complaints can be found all across the internet regarding all Class Vehicles describing the Door Actuator Defect.

| Description | Link to website |
|---|---|
| Reddit 4Runner Forum: see both posts and comments | https://www.reddit.com/r/4Runner/comments/15723aw/door_lock_actuator/ |
| | https://www.reddit.com/r/4Runner/comments/15c7rfa/drivers_door_lock_actuator/ |
| | https://www.reddit.com/r/4Runner/comments/163npt5/lock_actuator_issue/ |
| | https://www.reddit.com/r/4Runner/comments/11ehw4j/door_actuator_replacement/ |
| | https://www.reddit.com/r/4Runner/comments/a1dp8t/anybody_have_any_advice_for_replacing_a_door_lock/ |
| | https://www.reddit.com/r/4Runner/comments/uab4n4/door_not_lockingunlocking_via_keyless_entry/ |
| | https://www.reddit.com/r/4Runner/comments/111sqwf/front_passenger_door_lock_no_longer_works/ |
| | https://www.reddit.com/r/4Runner/comments/1bcauio/door_lock_actuator_fail_anyone_else_with_a/ |
| | https://www.reddit.com/r/4Runner/comments/1cmr50q/had_my_door_lock_actuator_on_my_drivers_door_go/ |
| | https://www.reddit.com/r/4Runner/comments/18jgdl2/5th_gen_door_lock_issues_anyone_else/ |
| | https://www.reddit.com/r/4Runner/comments/12ppwva/lock_issues_on_passenger_door/ |
| | https://www.reddit.com/r/4Runner/comments/bz1grk/lock_issue_on_5th_gen_driver_door/ |
| | https://www.reddit.com/r/4Runner/comments/17zsink/driver_side_door_wont_lock/ |
| | https://www.reddit.com/r/4Runner/comments/14oulg9/issues_with_lock_unlocking_only_on_driver_door/ |
| | https://www.reddit.com/r/4Runner/comments/9j8bbd/if_your_door_locks_fail_this_is_the_cause_it_is_a/ |
| | https://www.reddit.com/r/4Runner/comments/j6j1fl/driver_side_door_lock_question/ |
| | https://www.reddit.com/r/4Runner/comments/9xx821/5th_gen_lock_actuators/ |

| | |
|---|---|
| | https://www.reddit.com/r/4Runner/comments/17ifmxh/2014_front_door_locks/ |
| | https://www.reddit.com/r/4Runner/comments/90k7ss/4th_gen_drivers_side_door_stuck_closed_and_locked/ |
| | https://www.reddit.com/r/MechanicAdvice/comments/15xajgr/what_could_be_the_door_lock_issue_2018_4runner/ |
| | https://www.reddit.com/r/4Runner/comments/d5hwt0/5th_gen_door_locks_not_working/ |
| | https://www.reddit.com/r/4Runner/comments/16pk8m6/door_problems/ |
| | https://www.reddit.com/r/4Runner/comments/g6fz3r/5th_gen_trail_doors_wont_lock_fob_also_not_working/ |
| | https://www.reddit.com/r/4Runner/comments/18tb8rf/door_panel_question/ |
| | https://www.reddit.com/r/4Runner/comments/12977v6/did_i_buy_a_lemon/ (replaced all 4 door actuators) |
| | https://www.reddit.com/r/4Runner/comments/yyy9ug/door_lock_2015_sr5/ |
| | https://www.reddit.com/r/4Runner/comments/8h4iw1/5th_gen_owners_what_issues_have_you_dealt_with/ |
| | https://www.reddit.com/r/4Runner/comments/i97smw/parts_numbers/ |
| | https://www.reddit.com/r/4Runner/comments/w8spx0/2015_4runner_remotealarmlock_issue/ |
| | https://www.reddit.com/r/4Runner/comments/197eg94/2015_sr5_doors_not_locking_how_to_fix/ |
| | |
| Toyota 4Runner Forum: multiple pages of comments | https://www.toyota-4runner.org/4th-gen-t4rs/115949-door-lock-actuator-failure-2.html |
| | https://www.toyota-4runner.org/5th-gen-t4rs/242540-drivers-door-lock-actuator-motor-repair-[step-step-w-pics-].html |
| | |
| Trail 4Runner Forum: see comments below tutorial | https://trail4runner.com/2019/12/02/door-lock-actuator-install/ |
| | |
| eBay: comments then click "see all 96 reviews" | https://www.ebay.com/itm/252453085967 |

| IH8MUD Forum: | https://forum.ih8mud.com/threads/5th-gen-door-lock-actuator-hell.1231303/ |
|---|---|
| | |
| YouTube - Comment Section on all links: | https://www.youtube.com/watch?v=NgGl87pyhH4 |
| | https://www.youtube.com/watch?v=Z3n1r9JTXYE |
| | https://www.youtube.com/watch?v=kmmafPdW1Ao |
| | https://www.youtube.com/watch?v=eYiXFPsbm08 |
| | https://www.youtube.com/watch?v=kqJEyH81PmE |

135.    Owners of Class Vehicles have publicly complained to the United States government about the Door Actuator Defect in Class Vehicles for more than a decade. The Office of Defects Investigation (ODI) is an office within the National Highway Traffic Safety Administration (NHTSA). ODI conducts defect investigations and administers safety recalls to support the NHTSA's mission to improve safety on the Nation's highways. The following is believed to be a comprehensive list of the many complaints submitted to ODI by Class Vehicles owners. These publicly available complaints, filed as early as 2016, evidence Toyota's prior knowledge of the Door Actuator Defect, the negative experiences encountered by Class Vehicles owners and the serious safety concerns the Door Actuator Defect presents to vehicle occupants.

136.    The following are the consumer complaints submitted to NHTSA regarding the Door Actuator Defect in the Class Vehicles:[5]

### TOYOTA NHTSA COMPLAINTS (SEE BELOW)

### 2013 TOYOTA 4RUNNER

February 18, 2023 NHTSA ID NUMBER: 11507971
**Components: UNKNOWN OR OTHER**
**NHTSA ID Number:** 11507971
**Incident Date** February 1, 2023
**Consumer Location** WESTMINSTER, CO

---

[5] The following complaints are reproduced as they appear on NHTSA's website. Any typographical errors are attributable to the original author of the complaint. Emphasis added to original text is denoted by bold and underlining.

**Vehicle Identification Number** JTEBU5JR9D5****
**Summary of Complaint**
**CRASH** No
**FIRE** No
**INJURIES** 0
**DEATHS** 0

1) The failed component is the door locks. Or more precisely, the motor for the electrical operation of the door locks. When failed, the door remains locked even when pulling on the interior handle to open the door or when trying to unlock the door using the interior latch. You are essentially locked inside your car. I believe the door should always unlock when the handle is pulled, and the interior lock lever should always unlock the door as well. Both of these function "normally" when the actuator is not failed. The failure first appeared in late 2018/early 2019. I noticed that when I locked the vehicle using the key fob, I was not hearing the audible "beep." And when the car was shifted out of PARK, I was not hearing all the doors lock. I then realized the drivers front door was not locking. I lived with this for a while, long enough for the drivers side rear door to fail, and then the right rear door failed as well. The front right and rear door have never failed. I purchased a Toyota lock assembly for the drivers side front and it functioned perfectly after replacement until this past week. It appears to have failed again. And I was essentially trapped in the drivers seat. I had to give it and electrical command to unlock while pushing on the manual lever in order for the door to unlock. Pulling the open handle did not open the door, and pushing on the manual lock lever did not open the lock. The failed component appears to be a small motor in the lock assy. I replaced this motor in the left and right rear door lock assembly's and that corrected the problem. I am going to replace the motor in the lock assy I removed in 2019 and reinstall it in hopes of correcting the problem. I can send you the Toyota lock assy I will remove, and one of the motors I removed from one of the rear door lock assembly's. 2)The failed door locks trap occupants inside the vehicle. 3)Did not visit a dealer or repair center. 4)No inspections have been performed. 5)No
**1 Affected Product**
**Vehicle**

| MAKE | MODEL | YEAR |
|------|-------|------|
| TOYOTA | 4RUNNER | 2013 |

December 15, 2022 **NHTSA ID NUMBER: 11497648**
**Components: UNKNOWN OR OTHER**
**NHTSA ID Number:** 11497648
**Incident Date** December 12, 2022
**Consumer Location** NORTH SALT LAKE, UT
**Vehicle Identification Number** JTEBU5JR3E5****
**Summary of Complaint**
**CRASH** No
**FIRE** No

**INJURIES**0

**DEATHS**0

Three of the four locks do not work on a consistent basis. My car got broken into because the locks don't work. I just replaced three of the four locks for around $1,200.00. Neither the key fob nor the actual key would open the doors on the vehicle. This is an extreme safety issue in case of emergency, and it really makes me mad. It is a well-known defect which is commented on countless vehicle websites. There were no warning messages, the locks just stopped working.

**1 Affected Product**

**Vehicle**

| MAKE | MODEL | YEAR |
|------|-------|------|
| TOYOTA | 4RUNNER | 2014 |

### 2014 TOYOTA 4RUNNER

July 26, 2021 **NHTSA ID NUMBER: 11426420**

**Components: UNKNOWN OR OTHER**

**NHTSA ID Number:** 11426420

**Incident Date** May 1, 2021

**Consumer Location** SOUTHBRIDGE, MA

**Vehicle Identification Number** JTEBU5JR5E5****

**Summary of Complaint**

**CRASH**No

**FIRE**No

**INJURIES**0

**DEATHS**0

Having major problems with door lock actuators. just replaced front passenger side for 950 dollars at Toyota dealer and was told the other 3 doors may start failing as well. I did not realize at first that the door was not locking which would make it so easy for someone to break into my car.It is a 2014 Toyota 4runner. Sure enough the front driver side door is not locking. I need to spend another 950 dollars to get it fixed. What is wrong with these actuators? Now the replacement actuator I had put on the passenger side is giving me problems with the door opening and closing. What next?? Toyota should definitely have a recall on these actuators. It appears that I am not the only one having problems. This is a security issue.

**1 Affected Product**

**Vehicle**

| MAKE | MODEL | YEAR |
|------|-------|------|
| TOYOTA | 4RUNNER | 2014 |

**March 9, 2021 NHTSA ID NUMBER: 11400058**
**Components: ELECTRICAL SYSTEM**
**NHTSA ID Number:** 11400058
**Incident Date** March 1, 2021
**Consumer Location** HUNTSVILLE, AL
**Vehicle Identification Number** JTEBU5JR9E5****
**Summary of Complaint**
**CRASH**No
**FIRE**No
**INJURIES**0
**DEATHS**0
THE DOOR LOCK ACTUATOR HAS FAILED ON EVERY DOOR IN MY CAR. I'VE HAD THEM FIXED BUT NOW THE WARRANTY IS EXPIRED.
**1 Affected Product**
**Vehicle**

| MAKE | MODEL | YEAR |
|------|-------|------|
| TOYOTA | 4RUNNER | 2014 |

**January 14, 2020 NHTSA ID NUMBER: 11299191**
**Components: ELECTRICAL SYSTEM**
**NHTSA ID Number:** 11299191
**Incident Date** May 1, 2014
**Consumer Location** UNION, WV
**Vehicle Identification Number** JTEBU5JR3E5****
**Summary of Complaint**
**CRASH**No
**FIRE**No
**INJURIES**0
**DEATHS**0

ALL 4 DOOR LOCKS FAILED TO WORK WITHIN THE FIRST YEAR OF PURCHASE. THIS IS A SAFETY CONCERN AS THE CHILD LOCKS NO LONGER WORK. A CHILD CAN EXIT THE VEHICLE WHILE IT IS IN MOTION.
**1 Affected Product**
**Vehicle**

| MAKE | MODEL | YEAR |
|------|-------|------|
| TOYOTA | 4RUNNER | 2014 |

**February 1, 2019** NHTSA ID NUMBER: 11173545
**Components: ELECTRICAL SYSTEM**
**NHTSA ID Number:** 11173545
**Incident Date** January 4, 2019
**Consumer Location** CHARLOTTE, NC
**Vehicle Identification Number** JTEBU5JR8E5****
**Summary of Complaint**
**CRASH**No
**FIRE**No
**INJURIES**0
**DEATHS**0
IN FEBRUARY 2018 I DISCOVERED THAT THE PASSENGER SIDE DOOR LOCK WAS INTERMITTENTLY NOT LOCKING AND NOT OPENING. THIS WAS HAPPENING USING THE REMOTE, THE BUTTON ON THE DOOR AND WHEN PLACING THE THE VEHICLE IN DRIVE WHEN THE DOORS ARE SUPPOSED TO LOCK AUTOMATICALLY. THIS COULD HAVE BEEN HAPPENING FOR A SIGNIFICANT PERIOD OF TIME POSING A SECURITY RISK TO ME, MY PASSENGERS AND CARGO. EVENTUALLY THE LOCK STOPPED WORKING COMPLETELY AND I HAD IN REPAIRED AT THE DEALER IN MARCH COSTING $500 . THE DEALER CLAIMED THERE WERE NO RECALLS OR SAFETY CAMPAIGNS EVEN THOUGH I CAN SEE MANY COMPLAINTS ABOUT TOYOTA DOOR LOCKS ON THE INTERNET. IN JUNE 2018 THE SAME THINGS BEGAN OCCURRING WITH THE DRIVER DOOR LOCK. THE LOCK WOULD BE VERY DIFFICULT TO FORCE OPEN OR CLOSED MANUALLY OR WITH THE KEY FROM OUTSIDE. AGAIN IT POSED A SAFETY RISK ESPECIALLY BECAUSE IT WOULD BE SO DIFFICULT TO FORCE OPEN IN AN EMERGENCY. I BROUGHT IT TO THE DEALER AGAIN AND AGAIN THE DEALER CLAIMS THERE ARE NO RECALLS OR CAMPAIGNS AND THIS TIME IT COST $600. I'VE HAD MANY CARS AND TRUCKS FOR DECADES AND NEVER HAD TO REPLACE LOCK ACTUATORS NEVER MIND 2 WITHIN A FEW MONTHS. IN JANUARY 2019 THE REAR PASSENGER SIDE DOOR LOCK SUDDENLY STOPPED WORKING AND NOW I HAVE TO GO THROUGH THE SAME THING. SO THIS SAGA CONTINUES. THIS IS OBVIOUSLY A SERIOUS MANUFACTURING FLAW AND A SERIOUS SECURITY RISK TO DRIVERS, PASSENGERS AND BELONGINGS.
**1 Affected Product**

**Vehicle**

| MAKE | MODEL | YEAR |
|------|-------|------|
| TOYOTA | 4RUNNER | 2014 |

**April 15, 2019 NHTSA ID NUMBER: 11196224**
**Components: ELECTRICAL SYSTEM**
**NHTSA ID Number:** 11196224
**Incident Date** March 26, 2019
**Consumer Location** Unknown
**Vehicle Identification Number** JTEBU5JR7E5****
**Summary of Complaint**
**CRASH**No
**FIRE**No
**INJURIES**0
**DEATHS**0
TL* THE CONTACT OWNS A 2014 TOYOTA 4RUNNER. THE CONTACT STATED THAT THE DOOR LOCKS WOULD NOT WORK AND THE NAVIGATION SYSTEM WAS MALFUNCTIONING. THIS VEHICLE WAS SOLD TO THE CONTACT AFTER HIS CHRYSLER VEHICLE BROKE DOWN AND WAS TOWED TO MOUNT AIRY CHRYSLER DODGE JEEP RAM FIAT (538 N ANDY GRIFFITH PKWY, MT AIRY, NC 27030, (336) 789-8105). THE CONTACT PURCHASED THE 2014 TOYOTA 4RUNNER AND DROVE HOME. THE TOYOTA VEHICLE WAS TAKEN TO CENTRAL CITY TOYOTA (4800 CHESTNUT ST, PHILADELPHIA, PA 19139, (215) 476-1200) WHERE IT WAS DETERMINED THAT THE WARRANTY WAS NOT VALID FOR THE FAILURES. THE TOYOTA DEALER CALLED THE CHRYSLER DEALER. THE CHRYSLER DEALER INSTRUCTED THE TOYOTA DEALER TO RUN THE DIAGNOSTIC TESTS. IF THE COST WAS NOT TOO HIGH, THE CHRYSLER DEALER WOULD PAY FOR THE REPAIRS. THE CHRYSLER DEALER HAD NOT GOTTEN BACK IN TOUCH WITH THE TOYOTA DEALER. THE CONTACT CALLED THE FEDERAL TRADE COMMISSION AND WAS REFERRED TO HIS STATE'S ATTORNEY GENERAL'S OFFICE. THE FAILURE MILEAGE WAS UNKNOWN.
**1 Affected Product**
**Vehicle**

| MAKE | MODEL | YEAR |
|------|-------|------|
| TOYOTA | 4RUNNER | 2014 |

**December 26, 2018** NHTSA ID NUMBER: 11163441
**Components: ELECTRICAL SYSTEM, EQUIPMENT**
**NHTSA ID Number:** 11163441
**Incident Date** November 23, 2018
**Consumer Location** BENTON, AR
**Vehicle Identification Number** JTEBU5JR4E5****
**Summary of Complaint**
**CRASH** No
**FIRE** No
**INJURIES** 0
**DEATHS** 0
I HAVE BEEN HAVING ISSUES WITH MY RADIO/BACKUP CAMERA SYSTEM
FREEZING AND RESTARTING SINCE I PURCHASED THE VEHICLE IN 2015. I HAVE
NOW HAD MY PASSENGER FRONT DOOR ACTUATOR GO OUT LAST MONTH. THIS
IS A HUGE SAFETY CONCERN AND INCONVENIENCE.
**1 Affected Product**
**Vehicle**

| MAKE | MODEL | YEAR |
|------|-------|------|
| TOYOTA | 4RUNNER | 2014 |

**November 26, 2018** NHTSA ID NUMBER: 11153935
**Components: ELECTRICAL SYSTEM**
**NHTSA ID Number:** 11153935
**Incident Date** November 26, 2018
**Consumer Location** PONTE VEDRA BEACH, FL
**Vehicle Identification Number** JTEBU5JR9E5****
**Summary of Complaint**
**CRASH** No
**FIRE** No
**INJURIES** 0
**DEATHS** 0
POWER DOOR LOCK ACTUATORS ARE MALFUNCTIONING ON FRONT DOORS.
ALSO, THE RADIO/NAVIGATION SYSTEM LOCKS UP MULTIPLE TIMES ON ANY
GIVEN DAY.
**1 Affected Product**
**Vehicle**

| MAKE | MODEL | YEAR |
|------|-------|------|
| TOYOTA | 4RUNNER | 2014 |

**July 22, 2018 NHTSA ID NUMBER: 11112907**
**Components: UNKNOWN OR OTHER**
**NHTSA ID Number:** 11112907
**Incident Date** February 1, 2016
**Consumer Location** WALNUT RIDGE, AR
**Vehicle Identification Number** JTEBU5JR8E5****
**Summary of Complaint**
**CRASH** No
**FIRE** No
**INJURIES** 0
**DEATHS** 0
DOOR LOCK ACTUATORS KEEP GOING OUT RESULTING IN SAFETY ISSUES. DOORS CANT BE LOCKED OR UNLOCKED WITH REMOTE OR BY PRESSING BUTTON. MUST BE LOCKED AND UNLOCKED MANUALLY. THERE HAVE BEEN NUMEROUS COMPLAINTS OF THIS ISSUE MAINLY WITH ONLY THIS YEAR MODEL. TOYOTA WILL NOT FIX THE PROBLEM, DEALER WILL NOT FIX THE PROBLEM IF WARRANTY HAS EXPIRED. MULTIPLE REPORTS OF PEOPLE THAT HAVE HAD IT FIXED AND IT TEARS UP AGAIN. DEALER WANTS EST $800 PER DOOR TO FIX AND 4 OF MY 5 DOORS HAVE STOPPED WORKING. THIS IS A MAJOR SAFETY ISSUE, ESPECIALLY WITH CHILDREN IN BACKSEAT. DEALER EVEN AGREES THAT RECALL SHOULD BE ISSUED. I HAVE CONTACTED THE DEALER MULTIPLE TIMES, AND HAVE CONTACTED TOYOTA WHO STATED THAT THEY CANNOT ISSUE A RECALL, IT MUST BE DONE HERE. SO I AM BEGGING THAT YOU RESEARCH THIS ISSUE ON 2014 TOYOTA 4RUNNERS AND ISSUE A RECALL FOR THE DOOR LOCK ACTUATORS. MY ISSUE STARTED APPROX 11/2 YRS AGO AND THEY KEEP QUITTING 1 AT A TIME.
**1 Affected Product**
**Vehicle**

| MAKE | MODEL | YEAR |
|------|-------|------|
| TOYOTA | 4RUNNER | 2014 |

**April 4, 2016 NHTSA ID NUMBER: 10853294**
**Components: ELECTRICAL SYSTEM**
**NHTSA ID Number:** 10853294

**Incident Date** April 4, 2016
**Consumer Location** NORTH AUGUSTA, SC
**Vehicle Identification Number** JTEBU5JR9E5****
**Summary of Complaint**
**CRASH**No
**FIRE**No
**INJURIES**0
**DEATHS**0
DOOR LOCKS WILL NOT LOCK/UNLOCK. AFFECTS KEY FOB DOOR LOCKS AND REMOTE START CAPABILITY. INTERNET SEARCH REVEALED THAT DOOR LOCK ACTUATORS ARE A COMMON ISSUE WITH THESE VEHICLES.
**1 Affected Product**
**Vehicle**

| MAKE | MODEL | YEAR |
|------|-------|------|
| TOYOTA | 4RUNNER | 2014 |

**October 7, 2017** NHTSA ID NUMBER: 11032164
**Components: ELECTRICAL SYSTEM**
**NHTSA ID Number:** 11032164
**Incident Date** October 3, 2017
**Consumer Location** ODESSA, TX
**Vehicle Identification Number** JYEZU5JR5E5****
**Summary of Complaint**
**CRASH**No
**FIRE**No
**INJURIES**0
**DEATHS**0
THE AUTOMATIC DOOR LOCKS DO NOT FUNCTION PROPERLY AND WILL NOT LOCK OR UNLOCK WITHOUT MANUALLY FLIPPING THE LOCK OR FORCING THE KEY TO UNLOCK IT. THIS IS A SAFETY CONCERN BECAUSE IF THIS VEHICLE WAS TO BE IN AN ACCIDENT, IT WOULD BE DIFFICULT TO GET A PERSON IN OR OUT OF THE VEHICLE QUICKLY AND SAFELY. ANY INSTANCE IN WHICH SOMEONE MAY NEED TO GET IN AND OUT OF THE VEHICLE QUICKLY THE FAILURE OF THE LOCKING MECHANISM COULD POSSIBLY RESULT IN A CATASTROPHE.
**1 Affected Product**
**Vehicle**

| MAKE | MODEL | YEAR |
|------|-------|------|
| TOYOTA | 4RUNNER | 2014 |

**June 1, 2020 NHTSA ID NUMBER: 11326897**
**Components: ELECTRICAL SYSTEM**
**NHTSA ID Number:** 11326897
**Incident Date** June 1, 2020
**Consumer Location** ROCK SPRING, GA
**Vehicle Identification Number** JTEZU5JR0E5****
**Summary of Complaint**
**CRASH**No
**FIRE**No
**INJURIES**0
**DEATHS**0
MY LOCK ON ONE OF MY DOOR PANELS HAS QUIT WORKING, I SEE IT IS A COMMON PROBLEM COSTING @500 A DOOR PANEL TO CORRECT. THIS NEEDS TO BE A RECALL. *TR
**1 Affected Product**
**Vehicle**

| MAKE | MODEL | YEAR |
|------|-------|------|
| TOYOTA | 4RUNNER | 2014 |

**April 12, 2018 NHTSA ID NUMBER: 11084809**
**Components: ELECTRICAL SYSTEM**
**NHTSA ID Number:** 11084809
**Incident Date** May 30, 2017
**Consumer Location** MERIDIAN, MS
**Vehicle Identification Number** JTEZU5JR0E5****
**Summary of Complaint**
**CRASH**No
**FIRE**No
**INJURIES**0
**DEATHS**0
THE DOOR LOCKS ON MY 4RUNNER HAVE STOPPED WORKING. THEY WILL NOT WORK WITH THE KEY FOB OR WHEN YOU USE THE BUTTON INSIDE THE VEHICLE.

YOU HAVE TO MANUALLY FLIP THE LOCK TO LOCK AND UNLOCK THAT DOOR. FIRST IT WAS THE DRIVER DOOR THAT WENT OUT THEN THE REAR RIGHT, AND NOW THE PASSENGER SIDE DOOR. YOU CAN OPEN THE DRIVER DOOR WITH THE KEY FROM THE OUTSIDE, BUT THE OTHER 2 DOORS MUST BE UNLOCKED MY MANUALLY FLIPPING THE LOCK BY HAND. THE DRIVER'S DOOR WENT OUT RIGHT OUTSIDE OF THE WARRANTY AND THE OTHER 2 FOLLOWED SHORTLY AFTER. ALL WITHIN 53,000 MILES.

**1 Affected Product**
**Vehicle**

| MAKE | MODEL | YEAR |
|------|-------|------|
| TOYOTA | 4RUNNER | 2014 |

**July 13, 2018 NHTSA ID NUMBER: 11111274**
**Components: UNKNOWN OR OTHER**
**NHTSA ID Number:** 11111274
**Incident Date** June 1, 2017
**Consumer Location** BLAUVELT, NY
**Vehicle Identification Number** JTEBU5JR1E5****
**Summary of Complaint**
**CRASH**No
**FIRE**No
**INJURIES**0
**DEATHS**0

THE LOCK ACTUATORS ON MY 2014 TOYOTA 4 RUNNER HAVE FAILED MULTIPLE TIMES CAUSING THE DOOR TO NOT LOCK WHEN PROMPTED OR UNLOCK WHEN PROMPTED ( MUST BE MANUALLY DONE). THIS IS A SAFETY ISSUE IF ONE HAD TO EXIT THE CAR IN AN EMERGENCY SITUATION. ALSO THE SECURITY OF THE VEHICLE IS COMPROMISED.

**1 Affected Product**
**Vehicle**

| MAKE | MODEL | YEAR |
|------|-------|------|
| TOYOTA | 4RUNNER | 2014 |

**April 18, 2018 NHTSA ID NUMBER: 11088870**

- 45 -

**Components: ELECTRICAL SYSTEM**
**NHTSA ID Number:** 11088870
**Incident Date** January 1, 2018
**Consumer Location** TALLAHASSEE, FL
**Vehicle Identification Number** JTEZU5JR2E5****
**Summary of Complaint**
**CRASH**No
**FIRE**No
**INJURIES**0
**DEATHS**0
I OWN A 2014 4RUNNER WITH LESS THAN 60K MILES ON IT. THE FRONT DRIVER'S DOOR LOCK IS COMPLETELY GONE AND THE REAR DRIVER'S SIDE IS BEGINNING TO FAIL TOO. I'VE READ ON VARIOUS TOYOTA OWNERS WEBSITES THAT THIS SEEMS TO BE A PRETTY COMMON PROBLEM. THE VEHICLE IS NO LONGER UNDER WARRANTY AND I'M TOLD THAT THE COST TO REPLACE THE ACTUATOR IS $700-800 PER DOOR. IT'S TOTALLY UNACCEPTABLE TO ME TO SPEND $35K+ ON A VEHICLE TO THEN HAVE $1500 IN REPAIRS 3 1/2 YEARS LATER BECAUSE OF FAULTY EQUIPMENT. I COULD UNDERSTAND IF THE VEHICLE WAS 10-15 YEARS OLD.
**1 Affected Product**
**Vehicle**

| MAKE | MODEL | YEAR |
|------|-------|------|
| TOYOTA | 4RUNNER | 2014 |

## 2015 TOYOTA 4RUNNER

November 29, 2023 **NHTSA ID NUMBER: 11557501**
**Components: LATCHES/LOCKS/LINKAGES**
**NHTSA ID Number:** 11557501
**Incident Date** November 1, 2023
**Consumer Location** LONE TREE, CO
**Vehicle Identification Number** JTEBU5JR2F5****
**Summary of Complaint**
**CRASH**No
**FIRE**No
**INJURIES**0
**DEATHS**0
The door lock actuators have failed on both the driver side and passenger side front doors. Unfortunately this is a know issue across this model along with others and can be found in several forums. The problem is that the actuator gets stuck and at one point I was locked inside my car

and once I was locked outside my car. If there was an emergency it could put mine and others safety at risk if the lock fails. The vehicle was inspected by Toyota who stated the actuators need to be replaced at $805 a piece and will not fix it themselves even though it is a known problem. This happened within the last month.

**1 Affected Product**
**Vehicle**

| MAKE | MODEL | YEAR |
|------|-------|------|
| TOYOTA | 4RUNNER | 2015 |

**July 18, 2022 NHTSA ID NUMBER: 11474476**
**Components: UNKNOWN OR OTHER**
**NHTSA ID Number:** 11474476
**Incident Date** July 1, 2019
**Consumer Location** WALPOLE, MA
**Vehicle Identification Number** JTEBU5JR1F5****
**Summary of Complaint**
**CRASH** No
**FIRE** No
**INJURIES** 0
**DEATHS** 0

Three of the four locks do not work on a consistent basis. The fourth lock works on occasion. Neither the key fob or the actual key will open the doors on the vehicle. The front driver door lock was replaced while under warranty, but broke again in under a month. The front passenger door lock was replaced at an out of pocket cost, but it also in a stopped working in a matter of weeks. There are times when the only access to the vehicle is through the trunk. The safety for all passengers is at risk because you cannot enter the vehicle in case of emergency or even on a daily basis. Also, the locks may not work when you are inside the vehicle and need to exit. This is an extreme safety issue in case of emergency. The locks have been replaced twice and the dealer acknowledged there is an issue with this year and model. The locks were inspected by the Toyota dealership when they had to be replaced. It is a well known defect which is commented on countless vehicle websites. There were no warning messages, the locks just stopped working. The date listed below is an approximation. I am aware of the year.

**1 Affected Product**
**Vehicle**

| MAKE | MODEL | YEAR |
|------|-------|------|
| TOYOTA | 4RUNNER | 2015 |

**October 1, 2020 NHTSA ID NUMBER: 11362165**
**Components: ELECTRICAL SYSTEM**
**NHTSA ID Number:** 11362165
**Incident Date** June 1, 2020
**Consumer Location** COVINGTON, KY
**Vehicle Identification Number** JTEBU5JRXF5****
**Summary of Complaint**
**CRASH** No
**FIRE** No
**INJURIES** 0
**DEATHS** 0
TL* THE CONTACT OWNS A 2015 TOYOTA 4RUNNER. THE CONTACT STATED THAT HE WAS UNABLE TO LOCK AND UNLOCK THE PASSENGER'S SIDE DOOR. THE CONTACT CONTACTED KERRY TOYOTA SERVICE FLORENCE (6050 HOPEFUL CHURCH RD, FLORENCE, KY 41042; (859) 371-1518) AND THE VEHICLE WAS DIAGNOSED WITH A DEFECTIVE PASSENGER'S SIDE LOCK ACTUATOR. THE CONTACT WAS INFORMED THAT THE LOCK ACTUATOR NEEDED TO BE REPLACED. THE VEHICLE WAS NOT REPAIRED. THE MANUFACTURER WAS CONTACTED AND INFORMED OF THE FAILURE. THE CONTACT WAS REFERRED TO THE NHTSA FOR ASSISTANCE. THE APPROXIMATE FAILURE MILEAGE WAS 50,000.
**1 Affected Product**
**Vehicle**

| MAKE | MODEL | YEAR |
|------|-------|------|
| TOYOTA | 4RUNNER | 2015 |

**February 21, 2020 NHTSA ID NUMBER: 11310669**
**Components: ELECTRICAL SYSTEM, STRUCTURE**
**NHTSA ID Number:** 11310669
**Incident Date** July 14, 2018
**Consumer Location** BRIDGEWATER, MA
**Vehicle Identification Number** JTEBU5JR5F5****
**Summary of Complaint**

**CRASH** No
**FIRE** No
**INJURIES** 0
**DEATHS** 0

BOTH THE DRIVER SIDE DOOR AND PASSENGER SIDE DOOR DO NOT OPEN WHEN WHEN REMOTELY ACTIVATED. THEY ALSO CANNOT BE LOCKED REMOTELY. I HAVE NO WAY OF OPENING THE PASSENGER SIDE DOOR FROM THE OUTSIDE. BOTH DOORS HAVE TO BE MANUALLY OPENED. THE DRIVER SIDE CAN BE OPENED BY THE KEY, BUT THE PASSENGER SIDE NEEDS TO BE OPENED INSIDE THE PASSENGER DOOR.. THIS IS A SAFETY ISSUE ESPECIALLY WHEN MY WIFE TAKES THE CAR. IT IS DANGEROUS THAT SHE CANNOT ENTER THE CAR IN A TIMELY MANNER OR EVEN LOCK THE CAR.

**1 Affected Product**
**Vehicle**

| MAKE | MODEL | YEAR |
|------|-------|------|
| TOYOTA | 4RUNNER | 2015 |

May 7, 2019 **NHTSA ID NUMBER: 11205949**
**Components: ELECTRICAL SYSTEM**
**NHTSA ID Number:** 11205949
**Incident Date** May 4, 2019
**Consumer Location** EAST AMHERST, NY
**Vehicle Identification Number** N/A
**Summary of Complaint**
**CRASH** No
**FIRE** No
**INJURIES** 0
**DEATHS** 0

THE DOOR LOCK ACTUATORS FAIL AT AN ALARMING RATE. MY DRIVER SIDE DOOR LOCK ACTUATOR FAILED AFTER ONLY 50,000 MILES. THIS PREVENTS THE CAR DOOR FROM LOCKING, WHICH IS A SAFETY CONCERN DURING A CRASH OR JUST TO PREVENT FORCED ENTRY.

**1 Affected Product**
**Vehicle**

| MAKE | MODEL | YEAR |
|------|-------|------|
| TOYOTA | 4RUNNER | 2015 |

**December 27, 2018 NHTSA ID NUMBER: 11163674**
**Components: ELECTRICAL SYSTEM**
**NHTSA ID Number:** 11163674
**Incident Date** December 12, 2018
**Consumer Location** MARMORA, NJ
**Vehicle Identification Number** JTEBU5JR6F5****
**Summary of Complaint**
**CRASH** No
**FIRE** No
**INJURIES** 0
**DEATHS** 0
THE FRONT PASSENGER SIDE DOOR WILL NOT LOCK OR UNLOCK. I AM SURE YOU CAN UNDERSTAND THE SAFETY HAZARDS WITH THIS ISSUE. THIS DOOR WILL NOT LOCK OR UNLOCK WITH KEY FOB OR WITH THE LOCKING SYSTEM INSIDE THE CAR.
**1 Affected Product**
**Vehicle**

| MAKE | MODEL | YEAR |
|------|-------|------|
| TOYOTA | 4RUNNER | 2015 |

**October 18, 2018 NHTSA ID NUMBER: 11141238**
**Components: ELECTRICAL SYSTEM**
**NHTSA ID Number:** 11141238
**Incident Date** June 1, 2018
**Consumer Location** PHOENIX, AZ
**Vehicle Identification Number** JTEBU5JR5F5****
**Summary of Complaint**
**CRASH** No
**FIRE** No
**INJURIES** 0
**DEATHS** 0
2015 TOYOTA 4RUNNER - DOOR LOCK ACTUATORS. AT AROUND 36,000 MILES THE REAR DRIVER'S SIDE DOOR ACTUATOR BEGAN TO FAIL INTERMITTENTLY. WITHIN

A COUPLE MONTHS IT FAILED COMPLETELY AND THE REAR PASSENGER DOOR LOCK ACTUATOR BEGAN TO DISPLAY THE SAME PROBLEMS. AT 40,000 MILEAGES ALL OF THE DOOR LOCK ACTUATORS HAVE FAILED. THIS IS A NON-PROBLEM AND A MAJOR SAFETY ISSUE. IT IS ALSO VERY EXPENSIVE TO REPAIR.

**1 Affected Product**
**Vehicle**

| MAKE | MODEL | YEAR |
|------|-------|------|
| TOYOTA | 4RUNNER | 2015 |

**August 27, 2018 NHTSA ID NUMBER: 11122711**
**Components: UNKNOWN OR OTHER**
**NHTSA ID Number:** 11122711
**Incident Date** August 2, 2018
**Consumer Location** ROSWELL, GA
**Vehicle Identification Number** JTEZU5JR1F5****
**Summary of Complaint**
**CRASH** No
**FIRE** No
**INJURIES** 0
**DEATHS** 0

THE DRIVER DOOR ACTUATOR STOPPED WORKING. $700 TO FIX. APPARENTLY THEY ALL WILL GO AT SOME TIME. COST WILL BE $2800.00! APPARENTLY THIS IS AN EXTREMELY COMMON PROBLEM THAT TOYOTA IS AWARE OF. PLEASE FORCE A RECALL!

**1 Affected Product**
**Vehicle**

| MAKE | MODEL | YEAR |
|------|-------|------|
| TOYOTA | 4RUNNER | 2015 |

**July 19, 2018 NHTSA ID NUMBER: 11112417**
**Components: ELECTRICAL SYSTEM**
**NHTSA ID Number:** 11112417
**Incident Date** July 10, 2018
**Consumer Location** OAKTON, VA
**Vehicle Identification Number** JTEBU5JR7F5****

**Summary of Complaint**

**CRASH**No

**FIRE**No

**INJURIES**0

**DEATHS**0

DOOR ACTUATOR LOCKING OUT DRIVER, TO WHERE KEY DOESN'T EVEN WORK. EITHER THE DOOR WILL NOT LOCK, OR UNLOCK. THE FOB IS FINE AND SENDS THE SIGNAL AS YOU CAN HERE THE ACTUATOR TRYING TO MOVE. AND WHEN IT DOESN'T UNLOCK, YOU CAN'T EVEN UNLOCK THE DOOR WITH THE KEY. I WOULD THINK THIS WOULD BE A SAFETY ISSUE. I'VE READ A NUMBER OF COMPLAINTS ON A VARIETY OF SITES SUCH AS BELOW, THAT IT IS A KNOWN ISSUE? IF IT'S A KNOWN ISSUE, WHY ISN'T THERE SOME KIND OF SAFETY RECALL? SUPPOSE ALL OF THE ACTUATORS DIDN'T WORK AND THERE WAS A KID IN THE CAR. THIS WOULD BE THE THIRD OF 4 BAD ACTUATORS, SO THAT IS A POSSIBILITY. HTTPS://WWW.CARCOMPLAINTS.COM/TOYOTA/4RUNNER/2014/ELECTRICAL/AUTO _DOOR_LOCKS_NOT_WORKING.SHTML

**1 Affected Product**

**Vehicle**

| MAKE | MODEL | YEAR |
|------|-------|------|
| TOYOTA | 4RUNNER | 2015 |

**November 26, 2017 NHTSA ID NUMBER: 11048523**

**Components: STRUCTURE**

**NHTSA ID Number:** 11048523

**Incident Date** June 15, 2017

**Consumer Location** ERWIN, TN

**Vehicle Identification Number** JTEBU5JR2F5****

**Summary of Complaint**

**CRASH**No

**FIRE**No

**INJURIES**0

**DEATHS**0

WITHIN A FEW WEEKS BOTH THE DRIVER AND PASSENGER DOOR ACTUATOR MOTORS FAILED. THIS PREVENTED THE VEHICLE FROM AUTOMATICALLY LOCKING THE DOORS WHEN PLACED IN DRIVE OR REVERSE. THIS ALSO PREVENTED BEING ABLE TO LOCK AND UNLOCK EACH DOOR USING THE REMOTE OR THE LOCK BUTTON INSIDE THE VEHICLE. THE DEALER INDICATED THAT THIS IS A COMMON CONCERN FOR THE VEHICLE. EACH REPAIR RAN APPROXIMATELY $500.00 EACH. THE DOORS NOT AUTOMATICALLY LOCKING PRESENTS A SAFETY CONCERN WHEN THE VEHICLE IS MOVING. IT WOULD ALSO MAKE YOU MORE

SUSCEPTIBLE TO HAVING ITEMS STOLEN OR CAR JACKING. THIS OCCURRED WHETHER THE VEHICLE WAS MOVING OR NOT.
**1 Affected Product**
**Vehicle**

| MAKE | MODEL | YEAR |
|------|-------|------|
| TOYOTA | 4RUNNER | 2015 |

**August 19, 2017 NHTSA ID NUMBER: 11016339**
**Components: UNKNOWN OR OTHER**
**NHTSA ID Number:** 11016339
**Incident Date** August 18, 2017
**Consumer Location** WENTZVILLE, MO
**Vehicle Identification Number** JTEBU5JR8F5****
**Summary of Complaint**
**CRASH** **No**
**FIRE** **No**
**INJURIES** **0**
**DEATHS** **0**
THE LOCK ON DRIVER SIDE WORKED ERRATICALLY, PUT IN SHOP COST OVER $600. WEEKS LATER PASSENGER SIDE WOULD NOT OPEN WITH REMOTE KEY. INSTALLED MYSELF $300, THIS SHOULD NOT HAPPEN ON A CAR WITH 40,000 MILES. THE CONCERN IS IN AN EMERGENCY I WOULD HAVE A DIFFICUT TIME REMOVING A PERSON FROM THE VEHICLE . THE PART IN BOTH CASES WAS THE DOOR ACTUATOR.
**1 Affected Product**
**Vehicle**

| MAKE | MODEL | YEAR |
|------|-------|------|
| TOYOTA | 4RUNNER | 2015 |

## 2016 TOYOTA 4RUNNER

**August 12, 2021 NHTSA ID NUMBER: 11428880**
**Components: ELECTRICAL SYSTEM, UNKNOWN OR OTHER**
**NHTSA ID Number:** 11428880
**Incident Date** July 20, 2019

**Consumer Location** NASHVILLE, TN
**Vehicle Identification Number** JTEBU5JR0G5****
**Summary of Complaint**
**CRASH** No
**FIRE** No
**INJURIES** 0
**DEATHS** 0

Toyota has a major safety issue (that they know about) relating to door lock actuators on their 4runners. Both of mine (passenger and driver side) failed within the first 55,000 miles, and there are a LOT of others who have had the same problem. The forums are littered with people reporting. However, Toyota has discouraged people from reporting the problem to them by charging an exorbitant amount for repair of such an inexpensive item (about $800 per side). When that becomes known to owners, people will just repair the items themselves. This is obviously unethical. Door lock actuators pose an obvious safety issue, both if the door remains unlocked when it is supposed to be locked, and when the door remains locked when it is supposed to be unlocked. In the latter case, following an accident where a passenger is incapacitated and the door lock cannot be reached by hand (and there's no external key slot), the only way to unlock the door is via the electronic fob. If the door lock actuator is broken, then that incapacitated passenger will be trapped in the vehicle. For the former case - and this has personally happened to me - when the door was supposed to be locked, I had an individual actually open my passenger side door and enter into my vehicle. (He was under the influence of something, and fortunately nothing happened other than a very tense situation). But the safety issue remains. I expect that the post-accident scenario is more relevant to the NHTSA's interests, however, since a KNOWN design defect could very easily lead to the death of an individual trapped in a vehicle.

**1 Affected Product**
**Vehicle**

| MAKE | MODEL | YEAR |
|------|-------|------|
| TOYOTA | 4RUNNER | 2016 |

**June 21, 2021** NHTSA ID NUMBER: 11421709
**Components: ELECTRICAL SYSTEM, UNKNOWN OR OTHER**
**NHTSA ID Number:** 11421709
**Incident Date** June 4, 2021
**Consumer Location** SEMMES, AL
**Vehicle Identification Number** JTEBU5JR1G5****
**Summary of Complaint**
**CRASH** No
**FIRE** No
**INJURIES** 0
**DEATHS** 0

THE DOOR LOCK ACTUATOR ON THE PASSENGER SIDE DOOR IS GOING OUT. THIS IS CLEARLY A COMMON PROBLEM WITH THIS MAKE AND YEAR MODEL. SEVERAL REVIEWS I HAVE READ STATE THAT THIS HAS BEEN AN ISSUE SPECIFICALLY WITH THE FRONT DRIVER AND PASSENGER DOORS. I'M NOT SURE WHY THERE HAS NOT BEEN A RECALL ON THIS ISSUE. THIS IS OBVIOUSLY A MANUFACTURER ISSUE VS A OWNER/USER ISSUE. TOYOTA REALLY NEEDS TO CONSIDER A RECALL BECAUSE THIS IS NOT A CHEAP FIX.

**1 Affected Product**
**Vehicle**

| MAKE | MODEL | YEAR |
|------|-------|------|
| TOYOTA | 4RUNNER | 2016 |

**February 1, 2021** NHTSA ID NUMBER: 11390942
**Components: UNKNOWN OR OTHER**
**NHTSA ID Number:** 11390942
**Incident Date** June 30, 2020
**Consumer Location** WASHINGTON, PA
**Vehicle Identification Number** JTEBU5JR8G5****
**Summary of Complaint**
**CRASH** No
**FIRE** No
**INJURIES** 0
**DEATHS** 0
LOCKS ON DOORS DONT WORK. COMMON PROBLEM YOU ARE AWARE OF (MORE COMPLAINTS OF THIS THAN ANY OTHER ON THIS VEHICHLE). CANT UNLOCK VEHICLE OR LOCK IT. SEVERE DANGER IF TRAPPED IN CAR. MY WIFE KEEPS A BRICK UNDER THE SEAT TO BREAK OUT IN THE EVENT OF AN ACCIDENT NOT TO MENTION THEIVES GAINING ACCESS OUT IN PUBLIC.

**1 Affected Product**
**Vehicle**

| MAKE | MODEL | YEAR |
|------|-------|------|
| TOYOTA | 4RUNNER | 2016 |

**January 5, 2021** NHTSA ID NUMBER: 11386603
**Components: ELECTRICAL SYSTEM, UNKNOWN OR OTHER**
**NHTSA ID Number:** 11386603

**Incident Date** January 1, 2018
**Consumer Location** MARSHALL, TX
**Vehicle Identification Number** JTEBU5JR7G5****
**Summary of Complaint**
**CRASH** No
**FIRE** No
**INJURIES** 0
**DEATHS** 0
DOOR LOCK/UNLOCK ACTUATORS ARE GOING OUT. DRIVER'S SIDE AND NOW FRONT PASSENGER'S SIDE. THIS APPEARS TO BE A PREVALENT ISSUE ON LINE, AND NOTHING HAS BEEN DONE. REPLACING ONE COSTS $550.
**1 Affected Product**
Vehicle

| MAKE | MODEL | YEAR |
|------|-------|------|
| TOYOTA | 4RUNNER | 2016 |

October 29, 2020 **NHTSA ID NUMBER: 11372284**
**Components: UNKNOWN OR OTHER**
**NHTSA ID Number:** 11372284
**Incident Date** July 8, 2020
**Consumer Location** WASHINGTON, PA
**Vehicle Identification Number** JTEBU5JR8G5****
**Summary of Complaint**
**CRASH** No
**FIRE** No
**INJURIES** 0
**DEATHS** 0
DRIVER DOOR ACTUATOR NOT WORKING TO LOCK DOOR. STILL WORKS TO UNLOCK. LIGHT AND AUDIO DOESNT WORK EITHER WHEN LOCKING. HAVE TO USE KEY. THIS OCCURES WHEN TRYING TO LOCK THE DOOR WITH KEYLESS ENTRY.
**1 Affected Product**
Vehicle

| MAKE | MODEL | YEAR |
|------|-------|------|
| TOYOTA | 4RUNNER | 2016 |

**August 28, 2020** NHTSA ID NUMBER: 11351795
**Components: ELECTRICAL SYSTEM**
**NHTSA ID Number:** 11351795
**Incident Date** August 3, 2020
**Consumer Location** BLOOMFIELD HILLS, MI
**Vehicle Identification Number** JTEBU5JR1G5****
**Summary of Complaint**
**CRASH** No
**FIRE** No
**INJURIES** 0
**DEATHS** 0
DRIVER DOOR ACTUATOR DOES NOT WORK, PREVENTING THE REMOTE LOCKING AND UNLOCKING OF THE DOOR.
**1 Affected Product**
**Vehicle**

| MAKE | MODEL | YEAR |
|------|-------|------|
| TOYOTA | 4RUNNER | 2016 |

**May 14, 2020** NHTSA ID NUMBER: 11324596
**Components: ELECTRICAL SYSTEM**
**NHTSA ID Number:** 11324596
**Incident Date** May 14, 2020
**Consumer Location** Unknown
**Vehicle Identification Number** JTEBU5JR5G5****
**Summary of Complaint**
**CRASH** No
**FIRE** No
**INJURIES** 0
**DEATHS** 0
THE SUV DOES NOT LOCK WHEN I USE THE REMOTE OR WHEN I TRY TO LOCK IT MANUALLY. I REPLACED THE ACTUATOR IN THE DRIVER SIDE DOOR WHICH WAS THE DOOR THAT STAYS UNLOCKED HOWEVER TO NO AVAIL. I AM OUT A LOT OF MONEY HOWEVER I NOW BELIEVE THERE MAY BE A BIGGER PROBLEM WITH SOMETHING CALLED BCM. I DO NOT WANT TO SPEND MORE MONEY GETTING THE ISSUE DIAGNOSED AND REPAIRED. THIS FEELS UNFAIR TO ME THAT THE LOCKING SYSTEM IS BROKE AND I RISK THE VEHICLE BEING STOLEN AT SUCH A YOUNG AGE OF THE VEHICLE. *TR
**1 Affected Product**
**Vehicle**

| MAKE | MODEL | YEAR |
|------|-------|------|
| TOYOTA | 4RUNNER | 2016 |

## 2017 TOYOTA 4RUNNER

**July 10, 2024 NHTSA ID NUMBER: 11600914**
**Components: LATCHES/LOCKS/LINKAGES, UNKNOWN OR OTHER**
**NHTSA ID Number:** 11600914

**Incident Date** July 1, 2018

**Consumer Location** BRANDON, FL

**Vehicle Identification Number** JTEZU5JR3H5****

**Summary of Complaint**

**CRASH** No

**FIRE** No

**INJURIES** 0

**DEATHS** 0

I have owned my vehicle since 2017 and since then I have had to change the locks over 10 times. this has been ongoing since purchasing my car. Some were originally covered with the warranty but since it expired, i have paid dealerships out of pocket. I have a lock give out almost yearly. Right now my car has 3 of the 4 door locks not working and the 4th just started acting up as well. I have checked for recalls because it doesn't make sense that they would go out yearly and the dealerships have even told me there should be recalls because my year 4runner always has lock issues. my safety concern is my locks either have to stay unlocked or i risk locking my car completely and it not opening because the key will not unlock it. I have tried contacting Toyota and they have stated they cannot help so I am wanting to reach out to see if there is anything that can be done or if you can point me in the right direction on who i can reach out to . thank you

**1 Affected Product**
**I Vehicle**

| MAKE | MODEL | YEAR |
|------|-------|------|
| TOYOTA | 4RUNNER | 2017 |

## 2018 TOYOTA 4RUNNER

**November 1, 2020** NHTSA ID NUMBER: 11372555
**Components: ELECTRICAL SYSTEM**
**NHTSA ID Number:** 11372555
**Incident Date** October 21, 2020
**Consumer Location** LAKELAND, FL
**Vehicle Identification Number** JTEBU5JR9J5****
**Summary of Complaint**
**CRASH**No
**FIRE**No
**INJURIES**0
**DEATHS**0
PURCHASED VEHICLE BRAND NEW WITH 18 MILES ON IT. I GET IT SERVICED LIKE CLOCKWORK AND HAVE NEVER MISSED A MAINTENANCE APPOINTMENT. A LITTLE OVER A WEEK AGO, THE ELECTRICAL LOCKING SYSTEM ON THE DRIVERS SIDE DOOR STOPPED FUNCTIONING. TOYOTA IS TELLING ME THAT THERE ARE NO RECALLS AND IT WILL COST ME ALMOST $1000.00 TO REPAIR. NOW, THE ELECTRIC LOCKING SYSTEM FOR THE PASSENGER SIDE DOOR IS NOT WORKING AND TOYOTA IS STILL SAYING IT IS NOTHING THEY CAN DO BECAUSE THERE IS NO RECALL AND THE VEHICLE IS NO LONGER UNDER WARRANTY. THIS IS NOT ACCEPTABLE. ONE MINUTE THE LOCKING SYSTEM WAS WORKING WITH NO OBVIOUS SIGNS THAT SOMETHING WAS AMIDST, THEN ALL OF A SUDDEN, MY 4 RUNNER DOORS ARE NOT LOCKING. NOW THE COST IS DOUBLE AND THEY ARE SAYING THAT THE OTHER DOORS WILL SOON FOLLOW.
**1 Affected Product**
**Vehicle**

| MAKE | MODEL | YEAR |
|------|-------|------|
| TOYOTA | 4RUNNER | 2018 |

## 2019 TOYOTA 4RUNNER

October 26, 2022 **NHTSA ID NUMBER: 11490943**
**Components: VISIBILITY, LATCHES/LOCKS/LINKAGES**
**NHTSA ID Number:** 11490943
**Incident Date** April 26, 2022
**Consumer Location** MANSFIELD, TX
**Vehicle Identification Number** JTEZU5JR4K5****
**Summary of Complaint**
**CRASH** **No**
**FIRE** **No**
**INJURIES** **0**
**DEATHS** **0**
The contact owns a 2019 Toyota 4Runner. The contact stated that while attempting to lock the doors with the key fob, the front passenger's side door failed to lock as desired. The contact took the vehicle to the dealer who diagnosed that the actuator failed and needed to be replaced. The vehicle had been repaired. Shortly after the repair, the front passenger's side window failed to lower and raise. The contact returned the vehicle to the dealer and reattached the window's wiring harness due to the harness detaching. Shortly after the second repair, the same window failed again and the lock on the driver's door failed to lock. The contact had not taken the vehicle to the dealer yet. The manufacturer was not made aware of the failure. The approximate failure mileage was 40,000.
**1 Affected Product**
**Vehicle**

| MAKE | MODEL | YEAR |
|------|-------|------|
| TOYOTA | 4RUNNER | 2019 |

### 2014 TOYOTA RAV4

April 8, 2020 **NHTSA ID NUMBER: 11320480**
**Components: ELECTRICAL SYSTEM, UNKNOWN OR OTHER**
**NHTSA ID Number:** 11320480
**Incident Date** March 17, 2020
**Consumer Location** RINGGOLD, GA
**Vehicle Identification Number** 2T3YFREV4EW****
**Summary of Complaint**
**CRASH** **No**
**FIRE** **No**
**INJURIES** **0**
**DEATHS** **0**
RADIO WILL COMPLETELY STOP WORKING TO WHERE YOU HAVE TO BUY A NEW $1200 RADIO FROM THE DEALER. ALL DOOR LOCK ACTUATORS WILL STOP

WORKING AFTER A PERIOD OF TIME CAUSING YOU TO NOT BEING ABLE TO UNLOCK OR OPEN YOUR DOORS.
**1 Affected Product**
**II      Vehicle**

| MAKE | MODEL | YEAR |
|------|-------|------|
| TOYOTA | RAV4 | 2014 |

**August 13, 2019** NHTSA ID NUMBER: 11243800
**Components: ELECTRICAL SYSTEM**
**NHTSA ID Number:** 11243800
**Incident Date** June 21, 2018
**Consumer Location** SAVANNAH, GA
**Vehicle Identification Number** 2T3YFREV7EW****
**Summary of Complaint**
**CRASH**No
**FIRE**No
**INJURIES**0
**DEATHS**0
AT 46K MILES, DRIVER DOOR LOCK/ACTUATOR BEGAN TO FAIL WHEN UNLOCKING WITH KEYFOB/HAND SENSOR WHEN VEHICLE WAS STATIONARY. PRESSING THE LOCK/UNLOCK ON KEY FOB/DOOR PANEL WORKED 50% OF THE TIME. AT 50K MILES, ALL DOORS (DRIVER, PASSENGER, DRIVER REAR, AND PASSENGER REAR) NO LONGER UNLOCK/LOCK EXCEPT WHEN DONE MANUALLY THROUGH INSERTION OF KEY IN DRIVER DOOR AND MANUALLY UNLOCKING ALL OTHER DOORS (PASSENGER, PASSENGER REAR, AND DRIVER REAR) FROM EACH INDIVIDUAL DOOR LOCK .
**1 Affected Product**
**Vehicle**

| MAKE | MODEL | YEAR |
|------|-------|------|
| TOYOTA | RAV4 | 2014 |

## 2015 TOYOTA RAV4

**January 3, 2020** NHTSA ID NUMBER: 11296842
**Components: UNKNOWN OR OTHER**
**NHTSA ID Number:** 11296842

**Incident Date** October 1, 2019
**Consumer Location** BEL AIR, MD
**Vehicle Identification Number** 2T3RFREV9FW****
**Summary of Complaint**
**CRASH** No
**FIRE** No
**INJURIES** 0
**DEATHS** 0
TWO DOORS (FRONT DRIVER AND PASSENGER SIDE DOORS) NO LONG LOCK AND UNLOCK USING THE KEY FOB OR THE AUTOMATIC BUTTONS ON THE DRIVER SIDE DOOR. ACCORDING TO OUR MECHANIC, THIS IS A KNOWN ISSUE (THE LOCK ACTUATOR) WITH TOYOTAS, ESPECIALLY SUVS AROUND 2015 LIKE RAV4S AND HIGHLANDERS. ON A COUPLE OF OCCASIONS, THE DOOR LOCK ITSELF GOT STUCK AND I HAD TO FIDDLE WITH IT SIMPLE TO OPEN THE DOOR MANUALLY. SURPRISED THIS HASN'T BEEN RECALLED SINCE IT HAS THE POTENTIAL FOR A SAFETY HAZARD. COST TO REPAIR EACH DOOR'S ACTUATOR (BY MECHANIC) IS OVER $500.
**1 Affected Product**
**Vehicle**

| MAKE | MODEL | YEAR |
|------|-------|------|
| TOYOTA | RAV4 | 2015 |

### 2016 TOYOTA RAV4

January 28, 2024 NHTSA ID NUMBER: 11568358
**Components: UNKNOWN OR OTHER**
**NHTSA ID Number:** 11568358
**Incident Date** January 28, 2024
**Consumer Location** JACKSONVILLE, FL
**Vehicle Identification Number** JTMWFREV5GJ****
**Summary of Complaint**
**CRASH** No
**FIRE** No
**INJURIES** 0
**DEATHS** 0
The 2016 Toyota Rav4 XLE has a defective Power Door Lock Actuator for the front passenger and the driver side. It does not work manually or using the keyfobs. Previous Drivers have reported that the door locks appear to engage when locking using the remote key fob, but the locks do not engage. As a result, the locks may not be engaged while driving or when the vehicle is parked in a public place. Previous owners have also complained about having to pay to replace door lock actuators and, in some instances, have to pay for multiple replacements.

**1 Affected Product**
**Vehicle**

| MAKE | MODEL | YEAR |
|------|-------|------|
| TOYOTA | RAV4 | 2016 |

### **2017 TOYOTA RAV4**

July 30, 2022 **NHTSA ID NUMBER: 11476721**
**Components: UNKNOWN OR OTHER**
**NHTSA ID Number:** 11476721
**Incident Date** November 1, 2020
**Consumer Location** IOWA CITY, IA
**Vehicle Identification Number** JTMRFREV6HJ****
**Summary of Complaint**
**CRASH** No
**FIRE** No
**INJURIES** 0
**DEATHS** 0
6 months after warantee expired passenger front door lock actuator failed. Dor can only be locked /unlocked from manual rocker lock inside door. Electrick lock doesnt function. Within 6 months of that failure, drivers door developed same problem. Door can only be locked from inside and unlocked from outside with key.
**1 Affected Product**
**Vehicle**

| MAKE | MODEL | YEAR |
|------|-------|------|
| TOYOTA | RAV4 | 2017 |

November 19, 2022 **NHTSA ID NUMBER: 11494219**
**Components: UNKNOWN OR OTHER**
**NHTSA ID Number:** 11494219
**Incident Date** April 1, 2022
**Consumer Location** WOODSIDE, NY
**Vehicle Identification Number** Jtmdfrev6hd****
**Summary of Complaint**
**CRASH** No

**FIRE**No
**INJURIES**0
**DEATHS**0
The door lock actuators failed I was locked out of my car

**1 Affected Product**
III      Vehicle

| MAKE | MODEL | YEAR |
|------|-------|------|
| TOYOTA | RAV4 | 2017 |

March 3, 2020 NHTSA ID NUMBER: 11315782
**Components: ELECTRICAL SYSTEM**
**NHTSA ID Number:** 11315782
**Incident Date** March 1, 2020
**Consumer Location** WEST CHESTER, PA
**Vehicle Identification Number** JTMZFREV3HJ****
**Summary of Complaint**
**CRASH**No
**FIRE**No
**INJURIES**0
**DEATHS**0
DRIVERS SIDE DOOR LOCK STOPPED WORKING CAR ONLY HAS 37,000 AND IS 31
MONTHS OLD. DEALER WANTS $1000.00 TO REPAIR.
**1 Affected Product**
Vehicle

| MAKE | MODEL | YEAR |
|------|-------|------|
| TOYOTA | RAV4 | 2017 |

## **2018 TOYOTA RAV4**

October 11, 2023 NHTSA ID NUMBER: 11549437
**Components: ELECTRICAL SYSTEM, UNKNOWN OR OTHER**
**NHTSA ID Number:** 11549437
**Incident Date** October 11, 2023
**Consumer Location** RIVERBANK, CA

**Vehicle Identification Number** JTMRJREV3JD****
**Summary of Complaint**
**CRASH** No
**FIRE** No
**INJURIES** 0
**DEATHS** 0
Door lock actuator had to be replaced. $500
**1 Affected Product**
**Vehicle**

| MAKE | MODEL | YEAR |
|------|-------|------|
| TOYOTA | RAV4 | 2018 |

## 2021 TOYOTA RAV4

January 21, 2023 **NHTSA ID NUMBER: 11502993**
**Components: ELECTRICAL SYSTEM**
**NHTSA ID Number:** 11502993
**Incident Date** January 21, 2023
**Consumer Location** SAN ANTONIO, TX
**Vehicle Identification Number** 2T3H1RFV3MC****
**Summary of Complaint**
**CRASH** No
**FIRE** No
**INJURIES** 0
**DEATHS** 0
-Rear passenger door lock actuator fails -Safety risk of door not automatically locking when driving -Problem has been reproduced because it has occurred more than once -No inspection has taken place -No warning lamps or messages
**1 Affected Product**
**Vehicle**

| MAKE | MODEL | YEAR |
|------|-------|------|
| TOYOTA | RAV4 | 2021 |

## 2014 TOYOTA HIGHLANDER

June 28, 2020 NHTSA ID NUMBER: 11331293
**Components: ELECTRICAL SYSTEM**
**NHTSA ID Number:** 11331293
**Incident Date** June 1, 2019
**Consumer Location** CHARLOTTE, NC
**Vehicle Identification Number** 5TDYKRFH1ES****
**Summary of Complaint**
**CRASH**No
**FIRE**No
**INJURIES**0
**DEATHS**0
DOOR LOCK ACTUATORS NOT WORKING. CAN NO LONGER USE KEY FOB TO UNLOCK/LOCK DOORS. POTENTIAL SAFETY ISSUE.
**1 Affected Product**
**Vehicle**

| MAKE | MODEL | YEAR |
|------|-------|------|
| TOYOTA | HIGHLANDER | 2014 |

July 7, 2019 NHTSA ID NUMBER: 11229865
**Components: ELECTRICAL SYSTEM**
**NHTSA ID Number:** 11229865
**Incident Date** June 15, 2019
**Consumer Location** TIMNATH, CO
**Vehicle Identification Number** 5TDBKRFH2ES****
**Summary of Complaint**
**CRASH**No
**FIRE**No
**INJURIES**0
**DEATHS**0
WE ARE AFFECTED BY I AM LEARNING VERY COMMON ISSUE IN TOYOTA HIGHLANDER 2014 AND LATER. POWER DOOR LOCK ACTUATORS ARE ALL FAILING AT AROUND 4-5 YEARS. I HAVE NOT ENCOUNTERED THIS ON ANY OTHER CARS I OWNED AND IT SEEMS SOMETHING IS WRONG WITH THESE SINCE PRETTY MUCH EVERYONE I TALKED TO HAD ONE OR MORE FAIL IN TOYOTA HIGHLANDER. THE CAR WAS STATIONARY WHEN THIS HAPPENED, BUT IT IS SAFETY CONCERNS BECAUSE WE DIDN'T KNOW THAT ONE OF THE DOOR WAS BEING LEFT UNLOCKED. THERE IS NO WARNING THAT IT FAILED TO LOCK.
**1 Affected Product**
**Vehicle**

| MAKE | MODEL | YEAR |
|------|-------|------|
| TOYOTA | HIGHLANDER | 2014 |

**June 6, 2019** **NHTSA ID NUMBER: 11218321**
**Components: STRUCTURE**
**NHTSA ID Number:** 11218321
**Incident Date** June 4, 2019
**Consumer Location** ALLEN, TX
**Vehicle Identification Number** 5TDYKRFH7ES****
**Summary of Complaint**
**CRASH**No
**FIRE**No
**INJURIES**0
**DEATHS**0
ISSUES WITH THE FRONT AND BACK DOORS NOT UNLOCKING. THE ISSUES HAVE RANGED FROM ALL DOORS UNLOCKED, BUT STICKING AND NOT DISENGAGING. I JUST HAD THE DOOR LOCK ACTUATOR REPLACED IN THE DRIVER'S SIDE BACK DOOR THIS WEEK. THE NEXT DAY THE PASSENGER SIDE FRONT DOOR WOULD NOT DISENGAGE. THIS HAS BEEN GOING ON OFF AND ON FOR THE PAST 3-4 YEARS.
**1 Affected Product**
**Vehicle**

| MAKE | MODEL | YEAR |
|------|-------|------|
| TOYOTA | HIGHLANDER | 2014 |

## 2015 TOYOTA HIGHLANDER

**March 3, 2022** **NHTSA ID NUMBER: 11455034**
**Components: ELECTRICAL SYSTEM**
**NHTSA ID Number:** 11455034
**Incident Date** April 28, 2021
**Consumer Location** CHALMETTE, LA
**Vehicle Identification Number** 5TDKKRFH3FS****
**Summary of Complaint**
**CRASH**No
**FIRE**No

**INJURIES**0
**DEATHS**0

actuators, yes it's available for inspection The actuators on all the door are going out, they randomly work. It's a safety issue if you needed to exit the car for any emergency or making sure your car is locked and secured. You're at risk due to it simply not working, getting into the car it's a security issue, presents issues for parent(s) with children, children with disabilities, driver/passengers with disablities. When the car is put into reverse, they will not automatically lock as they should. Same when put into park, they do not automatically lock or unlock. Yes, the dealer confirmed the issue. The driver door actuator has been replaced but the other doors need to be replaced now as well. To my knowledge the faulty actuator has not been inspected No warning it just happened. but when they due fail to lock when using the keypad the car doesn't confirm the lock and security is set. When they fail to unlock using the keypad the car continues to beep several times after hitting the unlock button. You have to manually reach/maneuver to lock or unlock the door.

**1 Affected Product**
**Vehicle**

| MAKE | MODEL | YEAR |
|------|-------|------|
| TOYOTA | HIGHLANDER | 2015 |

June 9, 2021 **NHTSA ID NUMBER: 11420249**
**Components: LATCHES/LOCKS/LINKAGES**
**NHTSA ID Number:** 11420249
**Incident Date** October 12, 2020
**Consumer Location** Unknown
**Vehicle Identification Number** 5TDKKRFHXFS****
**Summary of Complaint**
**CRASH**No
**FIRE**No
**INJURIES**0
**DEATHS**0

The contact owns a 2015 Toyota Highlander. The contact stated that the front driver's and passenger's side doors failed to unlock while using the keys. The contact stated that there was no warning light illuminated. The vehicle was taken to a local dealer where it was diagnosed with the door lock actuator needing to be replaced. The vehicle was not yet repaired. The manufacturer was not informed of the failure. The failure mileage was approximately 100,000.
**1 Affected Product**
**Vehicle**

| MAKE | MODEL | YEAR |
|------|-------|------|
| TOYOTA | HIGHLANDER | 2015 |

**January 17, 2020** NHTSA ID NUMBER: 11300030
**Components: ELECTRICAL SYSTEM**
**NHTSA ID Number:** 11300030
**Incident Date** December 15, 2018
**Consumer Location** TRENTON, NJ
**Vehicle Identification Number** 5TDJKRFH2FS****
**Summary of Complaint**
**CRASH** No
**FIRE** No
**INJURIES** 0
**DEATHS** 0
IN DECEMBER OF 2018 I STARTED HAVING PROBLEMS WITH MY DOORS,GOT IT
CHECKED AT TOYOTA,3 DOOR ACTUATORS HAD GONE BAD ,TOYOTA SAID IT WAS
NOT A RECALL,CHECKED TOYOTA BULLETIN NUMEROUS OWNERS WERE HAVING
THIS PROBLEM, TOYOTA WAS NOT GOING TO FIX PROBLEM COST 3 HUNDRED
PLUS FOR EACH ACTUATOR PLUS LABOR,HAD TO BUY ON AMAZON AND FIX
MYSELF.
**1 Affected Product**
**Vehicle**

| MAKE | MODEL | YEAR |
|------|-------|------|
| TOYOTA | HIGHLANDER | 2015 |

**July 28, 2019** NHTSA ID NUMBER: 11240165
**Components: ELECTRICAL SYSTEM**
**NHTSA ID Number:** 11240165
**Incident Date** July 28, 2019
**Consumer Location** LA PLATA, MD
**Vehicle Identification Number** 5TDDKRFH0FS****
**Summary of Complaint**
**CRASH** No
**FIRE** No
**INJURIES** 0
**DEATHS** 0

DRIVER-SIDE DOOR DOES NOT LOCK/UNLOCK WHEN USING THE KEY FOB, DOOR HANDLE, OR THE SWITCH INSIDE THE VEHICLE. ISSUE WAS SPORADIC AT FIRST BUT NOW OCCURS ALMOST EVERY TIME WE (TRY TO) LOCK/UNLOCK THE DOORS. I BELIEVE THE ISSUE TO BE THE DOOR LOCK ACTUATOR, WHICH I INTEND ON REPLACING.

**1 Affected Product**
**Vehicle**

| MAKE | MODEL | YEAR |
|------|-------|------|
| TOYOTA | HIGHLANDER | 2015 |

**August 18, 2021** **NHTSA ID NUMBER: 11429572**
**Components: ELECTRICAL SYSTEM, STRUCTURE**
**NHTSA ID Number:** 11429572
**Incident Date** March 1, 2021
**Consumer Location** BUHL, AL
**Vehicle Identification Number** 5TDYKRFH7FS****
**Summary of Complaint**
**CRASH** No
**FIRE** No
**INJURIES** 0
**DEATHS** 0

The door locks have stopped working one by one. First I noticed the driver door not unlocking or locking with the key fob, with the touch system on the door handle, or with the button on the inside panel. Then I noticed my back door on the driver side not locking or unlocking with the key fob OR with the button on the inside panel. Both of these locks are now manual only. And the front passenger door lock only works sometimes, so I imagine it will stop working altogether soon as well. This puts the safety of my belongings, myself, and my children at risk. I don't know how long this had been happening before I noticed it, so I very easily could have been unknowingly leaving my car unlocked all over town. I am unable to enter my car quickly because I have to take the key fob apart and use the manual key to enter the driver door, and then my son has to wait for me to manually unlock his door before he can get in. My daughter sits on the other side so he can't just switch to the side that works. Well he could but then my daughter would have the same issue. If it was an emergency situation and we had to get into the car quickly it's just not possible. Also in traffic or in parking lots when we are inside the car I feel like we are left vulnerable with the doors unlocked and I can't lock them without reaching and manually doing this for each door. Which I do, but shouldn't have to. A quick internet search has made it clear that I am FAR from the first person this has happened to with these vehicles. It is clearly an extremely common issue with Highlanders and other Toyota vehicles and it 100% should be a recall.

**1 Affected Product**
**Vehicle**

| MAKE | MODEL | YEAR |
|------|-------|------|
| TOYOTA | HIGHLANDER | 2015 |

October 17, 2020 **NHTSA ID NUMBER: 11364852**
**Components: ELECTRICAL SYSTEM**
**NHTSA ID Number:** 11364852
**Incident Date** August 1, 2020
**Consumer Location** LONDON, OH
**Vehicle Identification Number** 5TDDKRFH2FS****
**Summary of Complaint**
CRASH**No**
FIRE**No**
INJURIES**0**
DEATHS**0**
DOOR ACTUATORS ON BOTH REAR PASSENGER DOORS HAVE STOPPED WORKING. DOOR LOCKS DO NOT RESPOND TO POWER DOOR LOCK SWITCH NOR THE KEY FOBS.

**1 Affected Product**
**Vehicle**

| MAKE | MODEL | YEAR |
|------|-------|------|
| TOYOTA | HIGHLANDER | 2015 |

June 7, 2020 **NHTSA ID NUMBER: 11327604**
**Components: ELECTRICAL SYSTEM**
**NHTSA ID Number:** 11327604
**Incident Date** February 14, 2020
**Consumer Location** FREMONT, OH
**Vehicle Identification Number** 5TDJKRFH2FS****
**Summary of Complaint**
CRASH**No**
FIRE**No**
INJURIES**0**
DEATHS**0**

THE DOOR LOCK ACTUATOR FAILED ON THE DRIVERS DOOR. WITHIN TWO MONTHS ALL OF THE ACTUATOR DOOR LOCKS FAILED ON ALL OF THE DOORS. THE COST TO REPAIR IS VERY EXPENSIVE FOR A FIX AND FROM WHAT I HAVE BEEN READING THEY MAY FAIL AGAIN. THIS SHOULD HAVE BEEN RECALLED SINCE THERE WERE MANY OTHER PEOPLE WITH THE SAME COMPLAINT.

**1 Affected Product**
**Vehicle**

| MAKE | MODEL | YEAR |
|------|-------|------|
| TOYOTA | HIGHLANDER | 2015 |

**November 23, 2019 NHTSA ID NUMBER: 11281918**
**Components: UNKNOWN OR OTHER**
**NHTSA ID Number:** 11281918
**Incident Date** November 15, 2019
**Consumer Location** EDEN PRAIRIE, MN
**Vehicle Identification Number** 5TDJKRFH1FS****
**Summary of Complaint**
**CRASH** No
**FIRE** No
**INJURIES** 0
**DEATHS** 0

DRIVER SIDE DOOR LOCK MECHANISM WORKED ONLY INTERMITTENTLY. HAD TO CRAWL THROUGH PASSENGER SIDE TO UNLOCK DOOR MANUALLY BY PULLING ON THE DOOR HANDLE. REPLACED DOOR LOCK MECHANISM AT DEALERSHIP. NOW THE LEFT REAR DOOR IS STARTING TO MALFUNCTION. SOMETIMES PASSENGER IS UNABLE TO OPEN DOOR FROM INSIDE OF CAR AND THE DOOR HAS TO BE OPENED FROM THE OUTSIDE.

**1 Affected Product**
**Vehicle**

| MAKE | MODEL | YEAR |
|------|-------|------|
| TOYOTA | HIGHLANDER | 2015 |

**August 7, 2019 NHTSA ID NUMBER: 11242278**
**Components: UNKNOWN OR OTHER**
**NHTSA ID Number:** 11242278
**Incident Date** August 7, 2019

**Consumer Location** WEST MONROE, LA
**Vehicle Identification Number** 5TDYKRFH1FS****
**Summary of Complaint**
**CRASH** No
**FIRE** No
**INJURIES** 0
**DEATHS** 0
THREE OF THE DOOR LOCK ACTUATORS FAILED ON THIS VEHICLE AT THE SAME TIME. MY WIFE CANNOT UNLOCK THE CAR DOORS WITHOUT GOING TO THE ONE DOOR THAT IS WORKING WHEN SHE PUSHES THE UNLOCK BUTTON ON HER REMOTE. THIS IS A MAJOR SAFETY ISSUE AND THERE ARE THOUSANDS OF ARTICLES AND MESSAGE BOARD POSTS ON THE INTERNET RELATED TO DOOR LOCK ACTUATORS FAILING ON TOYOTA VEHICLES. TOYOTA IS PROVIDING SOME FINANCIAL ASSISTANCE TO REPAIR THE ISSUE BUT IT IS NOT NEAR ENOUGH TO COVER IT ALL AND I AM OUT OF POCKET FOR A LARGE AMOUNT OF THE REPAIR. DUE TO THE SCOPE OF THE ISSUE I BELIEVE THIS SHOULD BE HANDLED THROUGH A RECALL.
**1 Affected Product**
**Vehicle**

| MAKE | MODEL | YEAR |
|------|-------|------|
| TOYOTA | HIGHLANDER | 2015 |

## 2015 TOYOTA PRIUS

January 13, 2020 **NHTSA ID NUMBER: 11298961**
**Components: ELECTRICAL SYSTEM**
**NHTSA ID Number:** 11298961
**Incident Date** December 16, 2019
**Consumer Location** RANCHO CUCAMONGA, CA
**Vehicle Identification Number** JTDKN3DP8F3****
**Summary of Complaint**
**CRASH** No
**FIRE** No
**INJURIES** 0
**DEATHS** 0
FAILED DOOR ACTUATOR CAUSING LOCKS TO NO LONGER SWITCH ON OR OFF.
**1 Affected Product**
**Vehicle**

| MAKE | MODEL | YEAR |
|------|-------|------|
| TOYOTA | PRIUS PLUG-IN HYBRID | 2015 |

## 2016 TOYOTA PRIUS

**March 23, 2022** NHTSA ID NUMBER: 11457984
**Components: UNKNOWN OR OTHER**
**NHTSA ID Number:** 11457984
**Incident Date** March 1, 2022
**Consumer Location** OAKLAND, CA
**Vehicle Identification Number** JTDKBRFU1G3****
**Summary of Complaint**
**CRASH** **No**
**FIRE** **No**
**INJURIES** **0**
**DEATHS** **0**
Our car has approximately 65K miles on it. THREE of the door lock actuators have failed already. This is terrifying that we might not be able to lock or unlock doors in an emergency particularly with our kids in the back seat. We have had our Prius serviced regularly by an independent well regarded local hybrid car mechanic and they think it is very odd that these have all failed so quickly.

**1 Affected Product**
**Vehicle**

| MAKE | MODEL | YEAR |
|------|-------|------|
| TOYOTA | PRIUS | 2016 |

## 2014 TOYOTA CAMRY

**April 14, 2021** NHTSA ID NUMBER: 11408125
**Components: UNKNOWN OR OTHER**
**NHTSA ID Number:** 11408125
**Incident Date** March 20, 2021
**Consumer Location** BIRMINGHAM, AL
**Vehicle Identification Number** 4T1BF1FK4EU****
**Summary of Complaint**

**CRASH**No
**FIRE**No
**INJURIES**0
**DEATHS**0

MY DOOR LOCK ACTUATORS HAVE FAILED. IT STARTED WITH THE PASSENGER SIDE FRONT THEN DRIVER SIDE NOW ALL HAVE FAILED MAKING IT IMPOSSIBLE TO LOCK OR UNLOCK CAR EXCEPT BY MANUALLY DOING IT. THIS IS INCONVENIENT AND MAKES THE CAR HARDLY ACCESSIBLE EXCEPT USING KEY TO MANUALLY OPEN DRIVER SIDE

**1 Affected Product**
**Vehicle**

| MAKE | MODEL | YEAR |
| --- | --- | --- |
| TOYOTA | CAMRY | 2014 |

June 24, 2019 NHTSA ID NUMBER: 11222218
**Components: ELECTRICAL SYSTEM, UNKNOWN OR OTHER**
**NHTSA ID Number:** 11222218
**Incident Date** June 24, 2019
**Consumer Location** CHANNELVIEW, TX
**Vehicle Identification Number** 4T4BF1FK2ER****
**Summary of Complaint**
**CRASH**No
**FIRE**No
**INJURIES**0
**DEATHS**0

THE FRONT DOOR LOCKS NO LONGER OPERATE BY REMOTE. THIS IS NOT A REMOTE PROBLEM SINCE MY REAR DOOR LOCKS DO RESPOND. I BELIEVE THE FRONT DOOR LOCK ACTUATORS HAVE FAILED ON BOTH THE DRIVER AND PASSENGER SIDES. THE REPAIRS FOR THIS WILL COST HUNDREDS OF DOLLARS. THERE IS CURRENTLY A CLASS ACTION LAWSUIT IN CALIFORNIA. I THINK THIS IS A WIDE SPREAD PROBLEM.
**1 Affected Product**
**Vehicle**

| MAKE | MODEL | YEAR |
| --- | --- | --- |
| TOYOTA | CAMRY | 2014 |

June 17, 2024 NHTSA ID NUMBER: 11594917
**Components: LATCHES/LOCKS/LINKAGES**
**NHTSA ID Number:** 11594917

**Incident Date** June 16, 2023

**Consumer Location** PASADENA, CA

**Vehicle Identification Number** 4T4BF1FK0ER****

**Summary of Complaint**

**CRASH** **No**

**FIRE** **No**

**INJURIES** **0**

**DEATHS** **0**

The contact owns a 2014 Toyota Camry. The contact stated that the driver's side front door automatic lock failed to operate as designed. The contact took the vehicle to the dealer and was informed that the door actuator needed to be replaced. The vehicle was not repaired. The contact stated that later all the door lock actuators failed, and the doors had to be locked and unlocked manually. The contact had not returned to the dealer. The manufacturer was not made aware of the failure. The vehicle was not repaired. The failure mileage was approximately 125,000.

**1 Affected Product**
**IV    Vehicle**

| MAKE | MODEL | YEAR |
|------|-------|------|
| TOYOTA | CAMRY | 2014 |

### **2017 TOYOTA CAMRY**

November 6, 2019 NHTSA ID NUMBER: 11278550
**Components: UNKNOWN OR OTHER**
**NHTSA ID Number:** 11278550
**Incident Date** October 2, 2019
**Consumer Location** YORKTOWN HEIGHTS, NY
**Vehicle Identification Number** 4T1BF1FK8HU****
**Summary of Complaint**
**CRASH** **No**
**FIRE** **No**

**INJURIES** 0

**DEATHS** 0

MY DRIVER SIDE DOOR LOCK ACTUATOR FAILED DURING WARRANTY PERIOD FEB, 2019. NOW AT 37,500 MILES WHICH IS 1,500 MILES OVER WARRANTY THE PASSENGER SIDE DOOR ACTUATOR FAILED. TOYOTA REFUSES TO ACKNOWLEDGE THAT THEY USING DEFECTIVE PARTS OR UNRELIABLE SUPPLIERS. CAR IS LITTLE OVER 2 YEARS OLD AND IN MY OPINION THIS IS NOT ACCEPTABLE. I AM DOWNLOADING ORIGINAL REPAIR DOCUMENT FROM FEBRUARY, 2019.

**1 Affected Product**

**Vehicle**

| MAKE | MODEL | YEAR |
|------|-------|------|
| TOYOTA | CAMRY | 2017 |

**May 20, 2020 NHTSA ID NUMBER: 11325276**

**Components: ELECTRICAL SYSTEM, LATCHES/LOCKS/LINKAGES, SERVICE BRAKES**

**NHTSA ID Number:** 11325276

**Incident Date** April 28, 2020

**Consumer Location** Unknown

**Vehicle Identification Number** 4T1BF1FKXHU****

**Summary of Complaint**

**CRASH** No

**FIRE** No

**INJURIES** 0

**DEATHS** 0

2017 TOYOTA CAMRY SE. I HAVE HAD MY VEHICLE INTO THE DEALERSHIP OVER 8 TIMES NOW FOR PROBLEMS WITH THE DOOR LOCK ACTUATORS AND A CLUNKING SOUND COMING FROM THE BRAKES THAT HAS PROGRESSIVELY GOTTEN WORSE. THE DOOR LOCK ACTUATORS WOULD NOT LOCK/UNLOCK AND ON TWO OCCURRENCES WHILE THE VEHICLE WAS IN MOTION THE DOORS UNLOCKED THEMSELVES WITHOUT BEING COMMANDED. THE CAR WAS BROUGHT INTO THE DEALER 4 TIMES FOR THE ISSUE BEFORE THE DEALERSHIP FINALLY REPLACED 3 OF 4 OUT OF SAFETY. I BROUGHT THIS ISSUE TO THE GENERAL MANAGER ATTENTION THAT IT SHOULD TAKE 4 VISITS TO THE DEALERSHIP TO GET A SAFETY FEATURE FIXED. HE TOLD ME TOYOTA IS AWARE OF THE PROBLEM WITH THE DOOR ACTUATORS AND HAVE KNOWN ABOUT THE PROBLEM BUT THE ENGINEERS HAVE NOT CAME UP WITH A SOLUTION TO THE PROBLEM. CLEARLY ITS AN ELECTRICAL ISSUE WITH THE VEHICLE TOYOTA AND THE DEALERSHIP WANT TO ACKNOWLEDGE OR ADDRESS. THE CAR HAD

BEEN IN APPROX. 8 TIMES NOW FOR A CLUNKING SOUND COMING FROM THE BRAKING SYSTEM THAT HAS PROGRESSIVELY GOTTEN WORSE. THE DEALERSHIP SAID TOYOTA'S ARE KNOWN FOR THIS. THEIR SOLUTION WAS TO PAY FOR A BRAKE JOB EVEN THOUGH THE CAR IS STILL UNDER THE BUMPER TO BUMPER WARRANTY AND THEY KNOW THEIR IS AN DEFECT WITH THE SYSTEM. I HAVE VOICED MY CONCERNS TO TOYOTA BUT THEY REFUSE TO ACKNOWLEDGE THE PROBLEM OR FIX THE PROBLEM. *TR

**1 Affected Product**
**Vehicle**

| MAKE | MODEL | YEAR |
|------|-------|------|
| TOYOTA | CAMRY | 2017 |

### 2018 TOYOTA CAMRY

July 25, 2023 **NHTSA ID NUMBER: 11534266**
**Components: ELECTRICAL SYSTEM**
**NHTSA ID Number:** 11534266
**Incident Date** May 1, 2023
**Consumer Location** BRYAN, TX
**Vehicle Identification Number** 4T1B61HK3JU****
**Summary of Complaint**
**CRASH** No
**FIRE** No
**INJURIES** 0
**DEATHS** 0
Doors come equipped with touch active door lock. Where you press on the door and it locks and if you put hand on the handle it will unlock. First the passenger door stopped working. It doesn't lock the car. Now the driver seat stopped working. You have to lock doors manually and some times it won't unlock the door for you after car is locked.

**1 Affected Product**
**Vehicle**

| MAKE | MODEL | YEAR |
|------|-------|------|
| TOYOTA | CAMRY | 2018 |

## 2014 TOYOTA TUNDRA

August 26, 2019 **NHTSA ID NUMBER: 11246370**
**Components: ELECTRICAL SYSTEM, LATCHES/LOCKS/LINKAGES**
**NHTSA ID Number:** 11246370

**Incident Date** August 13, 2019

**Consumer Location** KINGSPORT, TN

**Vehicle Identification Number** 5TFUW5F16EX****

**Summary of Complaint**

**CRASH** No

**FIRE** No

**INJURIES** 0

**DEATHS** 0

TL* THE CONTACT OWNS A 2014 TOYOTA TUNDRA. WHILE ATTEMPTING TO UNLOCK THE DOORS WITH THE DOOR LOCK AND THE KEY REMOTE, THE FRONT PASSENGER DOOR FAILED TO UNLOCK. THE CONTACT MENTIONED THAT THE DOOR NEEDED TO BE UNLOCKED MANUALLY FROM INSIDE THE VEHICLE. THE VEHICLE WAS TAKEN TO TOYOTA OF KINGSPORT (2525 E STONE DR, KINGSPORT, TN 37660 423-246-6611), BUT THE MECHANIC FAILED TO PROVIDE DIAGNOSTIC TESTING. THE VEHICLE WAS NOT REPAIRED. THE MANUFACTURER WAS NOT NOTIFIED OF THE FAILURE. THE APPROXIMATE FAILURE MILEAGE WAS 50,000.

**1 Affected Product**
**Vehicle**

| MAKE | MODEL | YEAR |
|------|-------|------|
| TOYOTA | TUNDRA | 2014 |

## 2016 TOYOTA TUNDRA

March 1, 2021 **NHTSA ID NUMBER: 11398419**
**Components: ELECTRICAL SYSTEM**
**NHTSA ID Number:** 11398419
**Incident Date** August 30, 2019
**Consumer Location** HOUSTON, TX
**Vehicle Identification Number** 5TFFW5F10GX****

**Summary of Complaint**
**CRASH**No
**FIRE**No
**INJURIES**0
**DEATHS**0
THE FRONT DRIVER AND FRONT PASSENGER DOOR LOCK INTERMITTENTLY DO NOT WORK. THERE ARE NO SPECIFIC PARTS OF THE DAY, TIME, WEATHER CONDITIONS. IT WILL WORK FINE AND THEN EITHER ONE FAILS OR THE OTHER, OR BOTH. THEN ITS STARTS TO WORK AGAIN WITHOUT ANY ISSUES. THIS HAS BEEN GOING ON FOR AT LEAST 12-18 MONTHS.
**1 Affected Product**
**Vehicle**

| MAKE | MODEL | YEAR |
|------|-------|------|
| TOYOTA | TUNDRA | 2016 |

### 2014 FJ CRUISER

March 8, 2020 NHTSA ID NUMBER: 11316902
**Components: ELECTRICAL SYSTEM**
**NHTSA ID Number:** 11316902
**Incident Date** September 1, 2014
**Consumer Location** BUENA PARK, CA
**Vehicle Identification Number** JTEBU4BF1EK****
**Summary of Complaint**
**CRASH**No
**FIRE**No
**INJURIES**0
**DEATHS**0
I BOUGHT MY 2014 FJ CRUISER BRAND NEW WITH 5 MILES ON IT. 6 MONTHS INTO OWNING IT THE DRIVER DOOR LOCKS STOPPED WORKING. THE DEALER REPLACED IT UNDER WARRANTY. ABOUT A YEAR LATER THE PASSENGER LOCKS STOPPED WORKING AND THEY REPLACED THOSE UNDER WARRANTY. ABOUT 1-1/2 YEARS LATER THE DRIVER LOCK (THAT WAS ALREADY REPLACED) STOPPED WORKING AGAIN. I HAD 34,000 MILES ON IT AND THEY TOLD ME THAT IT'S NO LONGER COVERED UNDER WARRANTY. I TOLD THEM THAT THE LOCK THEY REPLACED WENT OUT BUT THE DEALER SAID THE REPLACEMENT WARRANTY IS ONLY GOOD FOR 1 YEAR AFTER THE REPAIR! SHORTLY AFTER THE PASSENGER LOCK WENT OUT AGAIN AS WELL. AND NOW THE BACK DOOR WONT EVEN UNLOCK WITH THE KEY FOB OR EVEN MANUALLY WITH THE KEY. THE DOOR LOCK ACTUATORS ON THE CARS ARE TERRIBLE! I WENT TO THE

- 80 -

DEALER AND THE SERVICE MANAGER TOLD ME THEY WERE HAVING A LOT OF ISSUES WITH THE TOYOTA LOCKS AND FOR ME TO KEEP AN EYE OUT FOR A RECALL! IT'S BEEN 3 YEARS NOW THAT I'VE BEEN WITHOUT LOCKS AND NO RECALL! DEALER QUOTED ME $900 TO FIX ONE DOOR! $360 FOR THE PART AND THE REST LABOR. RIDICULOUS ESPECIALLY BECAUSE THEY HAVE ALREADY REPLACED THESE PARTS IN THE PAST UNDER WARRANTY!! WHAT GOOD IS IT TO PAY FOR THE SAME PART THEY ALREADY 'REPLACED' JUST FOR THEM TO GO OUT SO SOON!!!

**1 Affected Product**
**Vehicle**

| MAKE | MODEL | YEAR |
|------|-------|------|
| TOYOTA | FJ CRUISER | 2014 |

### 2019 TOYOTA TACOMA

March 5, 2020 NHTSA ID NUMBER: 11316243
**Components: UNKNOWN OR OTHER**
**NHTSA ID Number:** 11316243
**Incident Date** February 6, 2019
**Consumer Location** MOBILE, AL
**Vehicle Identification Number** 3TMAZ5CN2KM****
**Summary of Complaint**
**CRASH**No
**FIRE**No
**INJURIES**0
**DEATHS**0
POWER DOOR LOCK MAKES A GRINDING WHEEL COG-LIKE NOISE WHEN ATTEMPTING TO LOCK AFTER CAR START WHEN SHIFTING FROM PARK TO DRIVE. SOMETIMES THE DOOR REQUIRES A HAND LOCK. OTHER TIMES WHEN DEPARTING VEHICLE, LOCK BY ELECTRONIC KEY, IT FAILS TO LOCK AND DOOR CAN BE OPENED BY DOOR HANDLE. PALMERS TOYOTA, MOBILE AL USED COMPUTER BUT NO READ OUT. UNSATISFACTORY SOLUTION BECAUSE PROBLEM COMES AND GOES.

**1 Affected Product**
**Vehicle**

| MAKE | MODEL | YEAR |
|------|-------|------|
| TOYOTA | TACOMA | 2019 |

## **2014 TOYOTA COROLLA**

February 15, 2020 NHTSA ID NUMBER: 11309387
**Components: UNKNOWN OR OTHER**
**NHTSA ID Number:** 11309387
**Incident Date** February 15, 2020
**Consumer Location** PORT JEFFERSON STATION, NY
**Vehicle Identification Number** 2T1BURHE0EC****
**Summary of Complaint**
**CRASH**No
**FIRE**No
**INJURIES**0
**DEATHS**0
THE PROBLEM STARTED WITH 3 OF THE DOOR LOCK ACTUATORS NOT FUNCTIONING PROPERLY ON MY 2014 COROLLA. THE KEY FOB WOULD NOT ACTIVATE THEM. I BROUGHT IT IN FOR SERVICE ON 2/8/2020 AND THE DEALER CONFIRMED THEY WERE FAULTY AND WOULD ORDER THE PARTS. WITHIN A COUPLE OF DAYS, THE 4TH ACTUATOR AND THE TRUNK LOCK ACTUATOR ALSO FAILED. I BOUGHT IT IN ON 2/15/2020 TO HAVE THE FIRST 3 FIXED AND ALSO TO CONFIRM THE PROBLEM WITH THE OTHER 2 ISSUES SO THOSE PARTS COULD BE ORDERED. I WAS TOLD THE COST TO FIX THE FIRST 3 WOULD BE ABOUT $1500! THE EXTENDED WARRANTY I PURCHASED HAD EXPIRED AND SO I COULD NOT AFFORD THIS. I WAS TOLD BY THE SERVICE CONSULTANT THAT HE'S SEEN THIS PROBLEM WITH COROLLAS. I LOOKED ON LINE AND HAVE FOUND NUMEROUS COMPLAINTS FOR THIS SAME VEHICLE ABOUT THIS SAME SITUATION. WITH THIS NUMBER OF COMPLAINTS, I WOULD THINK THERE WOULD HAVE BEEN A RECALL BY TOYOTA AS THIS CAN BE CONSIDERED A SAFETY ISSUE, CONSIDERING IT TAKES LONGER FOR PEOPLE TO GET IN THEIR WHICH CAN SUBJECT THEM TO POSSIBLE CRIMINAL ACTIVITY. THEY ALSO SHOULD DO THE RIGHT THING AND FIX THEM AT NO CHARGE BECAUSE THEY KNOW IT'S A PROBLEM. I'VE ATTACHED THE SERVICE FOR 2/15/2020 JUST TO SHOW THAT I DID BRING IT IN.
**1 Affected Product**
**Vehicle**

| MAKE | MODEL | YEAR |
|------|-------|------|
| TOYOTA | COROLLA | 2014 |

June 8, 2019 **NHTSA ID NUMBER: 11218624**
**Components: ELECTRICAL SYSTEM**
**NHTSA ID Number:** 11218624
**Incident Date** June 7, 2019
**Consumer Location** ROCHESTER, MN
**Vehicle Identification Number** N/A
**Summary of Complaint**
CRASH**No**
FIRE**No**
INJURIES**0**
DEATHS**0**
I HAVE THREE SEPARATE DOOR LOCK ACTUATERS THAT HAVE FAILED OR ARE FAILING ALL WITHIN A 2 MONTH PERIOD WITH ONLY 51000 MILES ON THE ODOMETER. THE FRONT RIGHT PASSENGER DOOR WILL NOT LOCK OR UNLOCK UNLESS I MANUALLY FLIP THE SWITCH, AND THE FRONT LEFT DRIVER DOOR AND LEFT REAR PASSENGER DOOR INTERMITTENTLY WILL NOT LOCK OR UNLOCK WHEN I USE THE KEY FOB OR WHEN I SHIFT THE CAR INTO GEAR. THIS MAKES IT DIFFICULT TO KNOW IF THE CAR IS SECURED WHEN I PARK IT OR WHEN STARTING TO DRIVE, AND I AM CONCERNED IF THE REAR CHILD SAFETY LOCKS DO NOT FUNCTION CORRECTLY NOW. I HAVE HAD THE TOYOTA DEALERSHIP IN ROCHESTER MN CONFIRMED THE NEED FOR 3 DOOR LOCK ACTUATORS AND ARE ASKING FOR OVER $1400 FOR FIXING THEM. I AM IN TOUCH WITH TOYOTA NORTH AMERICA HOPING TO BE APPROVED FOR A "GOODWILL" FIX. DOING FURTHER RESEARCH ONLINE SHOWS TWO SEPARATE LAW FIRMS INVESTIGATING THIS ISSUE AS THERE HAS BEEN A SIGNIFICANT UPTICK IN DOOR LOCK ACTUATOR FAILURES IN VARIOUS TOYOTA VEHICLES. I BELIEVE THEY ARE DEFECTIVE.
**1 Affected Product**
**Vehicle**

| MAKE | MODEL | YEAR |
|------|-------|------|
| TOYOTA | COROLLA | 2014 |

**<u>2015 TOYOTA COROLLA</u>**

**Components: ELECTRICAL SYSTEM**
**NHTSA ID Number:** 11301183
**Incident Date** January 2, 2020
**Consumer Location** STOCKBRIDGE, GA
**Vehicle Identification Number** 5YFBURHE7FP****
**Summary of Complaint**
**CRASH**No
**FIRE**No
**INJURIES**0
**DEATHS**0
DRIVER SIDE ELECTRONIC DOOR LOCK SYSTEM HAS FAILED! DOES NOT
OPERATE USING THE FOB, THE KEY HAS TO BE INSERTED TO LOCK AND UNLOCK
THE DOOR!!

**1 Affected Product**
**Vehicle**

| MAKE | MODEL | YEAR |
|------|-------|------|
| TOYOTA | COROLLA | 2015 |

137.    Toyota reviews and monitors NHTSA complaints and the above-listed complaints
put Toyota on notice of the Door Actuator Defect.

138.    Toyota also has other long-standing and material knowledge of the Door Actuator
Defect. Upon information and belief, Toyota through (1) its own records of customers' complaints,
(2) dealership repair records, (3) access to monitoring and review of records from the National
Highway Traffic Safety Administration and its aforesaid database, (4) warranty and post-warranty
claims, (5) and pre-sale durability testing and part sales.

139.    Toyota routinely monitors the internet for complaints similar in substance to those
quoted herein. Its customer relations department routinely monitors the internet for customer
complaints, and it retains the services of third parties to do the same. Further, Toyota's customer
relations divisions regularly receive and respond to customer calls concerning, *inter alia*, product

defects. Through these sources, Toyota knew about the Door Actuator Defect. NHTSA complaints also indicate Toyota's knowledge of the Door Actuator Defect and the potential danger it poses to passengers and the general public.

140.    Moreover, Toyota should have known about the Door Actuator Defect because its customer relations departments, which interact with Toyota-authorized service technicians in order to identify potentially widespread vehicle problems and assist in diagnosing vehicle issues, has received numerous reports or the Door Actuator Defect. Toyota's customer relations departments also collect and analyze field data including, but not limited to, repair requests made at dealerships and service centers, technical reports prepared by engineers that have reviewed vehicles for which warranty coverage is requested, parts sales reports, and warranty claims data.

141.    Toyota's warranty department similarly reviews and analyzes warranty data submitted by its dealerships and authorized technicians in order to identify defect trends in its vehicles. Toyota dictates that when a repair is made under warranty (or warranty coverage is requested), service centers must provide Toyota with detailed documentation. Toyota also requires service centers to save the broken parts in case Toyota audits the dealership, or otherwise acts to verify the warranty repair. For their part, service centers are meticulous about providing this detailed information about in-warranty repairs because Toyota withholds payment for the repair if the complaint, cause, and correction are not sufficiently described.

142.    Toyota's knowledge can also be inferred because several NHTSA complaints reference that the manufacturer—Toyota—has been notified of consumers' concerns about the Door Actuator Defect.

143.   Toyota's acts and omissions have unnecessarily put the safety of Class members and the public in jeopardy. Reliable operation of a vehicle's door locking actuators is necessary to safely operate the Class Vehicles.

144.   Further, because of Toyota's unfair, deceptive, and/or fraudulent business practices, owners, and/or lessees of the Class Vehicles, including Plaintiffs, have suffered an ascertainable loss of money and/or property and/or loss in value. Toyota undertook these unfair and deceptive trade practices in a manner giving rise to substantial aggravating circumstances.

145.   Had Plaintiffs known about the Door Actuator Defect at the time of purchase or lease, they would not have bought the Vehicle, or they would have paid substantially less for the Vehicle.

146.   As a result of the Door Actuator Defect and the monetary costs associated with attempting to repair it, Plaintiffs and the other Class members have suffered injury in fact, incurred damages, and have otherwise been harmed by Toyota's conduct. Accordingly, Plaintiffs bring this action to redress Toyota's violations of state consumer protection statutes and its breaches of express and implied warranties on the Class Vehicles.

**C.**   **Toyota's Warranty-Related Practices**

147.   Toyota issued a Limited New Vehicle Warranty with each Class Vehicle.

148.   Under the Limited New Vehicle Warranty, Toyota agreed to repair reported defects within the earlier of 3 years or 36,000 miles. The warranty manual provides that:

> This warranty covers repairs and adjustments needed to correct defects in materials or workmanship of any part supplied by Toyota, subject to the exceptions indicated under "What Is Not Covered" on pages 14-15.
>
> Coverage is for 36 months or 36,000 miles, whichever occurs first, with the exception of wheel alignment and wheel balancing, which are covered for 12 months or 20,000 miles, whichever occurs first.

149.    Toyota instructs vehicle owners and lessees to bring their vehicles to a certified dealership for warranty repairs. Many owners and lessees have presented Class Vehicles to Toyota-certified dealerships with complaints related to the Door Actuator Defect.

**D.    Toyota Caught Cheating on Vehicle Testing**

150.    In December 2023, Toyota-owned carmaker Daihatsu closed all of its factories for more than a month, after admitting that it had falsified safety tests. Some of the cars were sold with Toyota branding. Daihatsu compensated more than 400 domestic suppliers during the period when its plants were idle.

151.    In January 2024, Japanese Transport officials raided a Toyota-affiliated plant after Toyota admitted to cheating on engine testing, as TMC reported it sold over 11 million vehicles in 2023 to retain its status as the world's top car manufacturer.[6]

152.    In June 2024, Toyota's headquarters in Tokyo were raided by Japanese Transport ministry officials investigating the scandal of the automaker's flawed vehicle safety data. TMC is accused of using modified vehicles during safety collision tests of some vehicles that are no longer in production.

## V    TOLLING OF STATUTES OF LIMITATIONS

**Discovery Rule**

153.    Toyota's knowing and active concealment and denial of the facts alleged herein act to toll any applicable statute(s) of limitations. Plaintiffs and other Class members could not have reasonably discovered the true, latent nature of the Door Actuator Defect until shortly before commencing this class-action litigation.

---

[6] https://apnews.com/article/japan-toyota-auto-daihatsu-scandal-bdfec73ce59ab336bc6ff1502ac3db46

154.    Plaintiffs and Class members had no realistic ability to discover the presence of the Door Actuator Defect in the Class Vehicles within the applicable statute of limitations and could not have discovered through the exercise of reasonable diligence that Toyota was concealing the Door Actuator Defect in the Class Vehicles and misrepresenting the safety, quality and reliability of the Class Vehicles.

155.    Any statutes of limitation otherwise applicable to any claims asserted herein have thus been tolled by the discovery rule.

**Fraudulent Concealment**

156.    All applicable statutes of limitation have also been tolled by Toyota's knowing, active and ongoing fraudulent concealment of the facts alleged herein. Even after Plaintiffs and other Class members contacted Toyota and/or its authorized dealers to repair the Door Actuator Defect, Toyota and/or its dealers repeatedly and consistently told them the Class Vehicles were not defective.

157.    As a result of Toyota's active concealment, any and all applicable statutes of limitations otherwise applicable to the allegations herein have been tolled.

**Estoppel**

158.    Toyota has had, and continues to have, a duty to disclose to Plaintiffs and the other Class members the true character, quality, and nature of the Class Vehicles, including the facts that the Class Vehicles require costly repairs, pose safety concerns, and have a diminished resale value.

159.    Instead, Toyota actively concealed the true character, quality, and nature of the Class Vehicles and knowingly made misrepresentations about the quality, reliability, characteristics, and performance of the Class Vehicles.

160.    Plaintiffs and Class members have reasonably relied upon Toyota's knowing and affirmative misrepresentations and/or active concealment of these facts.

161.    Based on the foregoing, Toyota is estopped from relying on any statutes of limitation in defense of this action.

## VI    CLASS ALLEGATIONS

162.    Plaintiffs bring this action on their own behalf, and on behalf of a nationwide class pursuant to Federal Rules of Civil Procedure, Rules 23(a), 23(b)(2), and/or 23(b)(3).

**Nationwide Class:**

All persons or entities in the United States who are current or former owners and/or lessees of a Class Vehicle.

163.    In the alternative to the Nationwide Class, and pursuant to Federal Rules of Civil Procedure, Rule 23(c)(5), Plaintiffs seek to represent the following individual State Classes:

**Texas Class**

All persons or entities in the State of Texas who are current or former owners and/or lessees of a Class Vehicle and all persons or entities who purchased or leased a Class Vehicle in the State of Texas.

**New York Class**

All persons or entities in the State of New York who are current or former owners and/or lessees of a Class Vehicle and all persons or entities who purchased or leased a Class Vehicle in the State of New York.

**North Carolina Class**

All persons or entities in the State of North Carolina who are current or former owners and/or lessees of a Class Vehicle and all persons or entities who purchased or leased a Class Vehicle in the State of North Carolina.

**Florida Class**

All persons or entities in the State of Florida who are current or former owners and/or lessees of a Class Vehicle and all persons or entities who purchased or leased a Class Vehicle in the State of Florida.

**Indiana Class**

All persons or entities in the State of Indiana who are current or former owners and/or lessees of a Class Vehicle and all persons or entities who purchased or leased a Class Vehicle in the State of Indiana.

**Georgia Class**

All persons or entities in the State of Georgia who are current or former owners and/or lessees of a Class Vehicle and all persons or entities who purchased or leased a Class Vehicle in the State of Georgia.

164. Together, the Nationwide Class, and the State Classes shall be collectively referred to herein as the "Class." Excluded from the Class are Toyota, its affiliates, employees, officers and directors, persons or entities that purchased the Class Vehicles for resale, and the Judge(s) assigned to this case. Plaintiffs reserve the right to modify, change, or expand the Class definitions based on discovery and further investigation.

165. **Numerosity:** Upon information and belief, the Class is so numerous that joinder of all members is impracticable. While the exact number and identities of individual members of the Class are unknown at this time, such information being in the Toyota's sole possession and obtainable by Plaintiffs only through the discovery process, Plaintiffs believe, and on that basis allege, that millions of Class Vehicles have been sold and leased in states that are the subject of the Class.

166. **Existence and Predominance of Common Questions of Fact and Law:** Common questions of law and fact exist as to all members of the Class. These questions predominate over the questions affecting individual Class members. These common legal and factual questions include, but are not limited to, whether:

a) the Class Vehicles were sold with the Door Actuator Defect, and any and all related defects;

b) the electronic door lock systems in the Class Vehicles are predisposed to fail prematurely;

c) the electronic door lock systems in Class Vehicles contain a defect;

d) the defective vehicle design is common to all or some of the Class Vehicles;

e)  if so, the Door Actuator Defect causes the electronic door lock systems to fail in the Class Vehicles;

f)  Toyota knowingly failed to disclose the existence and cause of the Door Actuator Defect in Class Vehicles;

g)  Toyota's conduct violates the Texas Deceptive Trade Practices Act and the other statutes asserted herein;

h)  a reasonable consumer would consider the Door Actuator Defect or its consequences to be material;

i)  Toyota should be required to disclose the Door Actuator Defect's existence and its consequences;

j)  Toyota's conduct violates the statutory and common-law provisions set forth in this Complaint;

k)  as a result of Toyota's omissions and/or misrepresentations of material facts related to the Door Actuator Defect, Plaintiffs and members of the Class have suffered ascertainable loss of monies and/or property and/or value; and

l)  Plaintiffs and Class members are entitled to monetary damages and/or other remedies and, if so, the nature of any such relief.

167.  **Typicality:** All of Plaintiffs' claims are typical of the claims of the Class because Plaintiffs purchased the Vehicles with the same defective door actuator as other Class members. *See Franklin v. Apple Inc.*, 569 F. Supp. 3d 465, 475-76 (E.D. Tex. 2021) (J. Mazzant). Furthermore, Plaintiffs and all Class members sustained monetary and economic injuries including, but not limited to, ascertainable losses arising out of Toyota's wrongful conduct. Plaintiffs advance the same claims and legal theories on behalf of themselves and all absent Class members.

168.  **Adequacy:** Plaintiffs adequately represent the Class because their interests do not conflict with the interests of the Class they seek to represent, they have retained counsel who are competent and highly experienced in complex class action litigation, and Plaintiffs intend to

prosecute this action vigorously. Plaintiffs and their counsel are well-suited to fairly and adequately protect the interests of the Class.

169.    **Superiority:** A class action is superior to all other available means of fairly and efficiently adjudicating the claims brought by Plaintiffs and the Class. The injury suffered by each individual Class member is relatively small in comparison to the burden and expense of individual prosecution of the complex and extensive litigation necessitated by Toyota's conduct. It would be virtually impossible for Class members on an individual basis to effectively redress the wrongs done to them. Even if Class members could afford such individual litigation, the courts cannot. Individualized litigation presents potential for inconsistent or contradictory judgments. Individualized litigation also increases the delay and expense to all parties and to the court system, particularly where the subject matter of the case may be technically complex. By contrast, the class action device presents far fewer management difficulties, and provides the benefits of single adjudication, an economy of scale, and comprehensive supervision by a single court. Upon information and belief, individual Class members can be readily identified and notified based on, *inter alia*, Toyota's vehicle identification numbers, warranty claims, registration records, and database of complaints.

170.    Toyota has acted, and/or refused to act, on grounds generally applicable to the Class, thereby making appropriate final equitable relief with respect to the Class as a whole.

## VII    CAUSES OF ACTION

**A.**    **Claims Brought on Behalf of the Nationwide Class (or alternatively, the Texas State Class, the New York State Class, the North Carolina State, the Florida State Class, the Indiana State Class, and the Georgia State Class)**

### COUNT I: VIOLATIONS OF THE MAGNUSON-MOSS WARRANTY ACT
### (15 U.S.C. § 2301, *et seq.*)
### (By all Plaintiffs against Toyota on behalf of the Nationwide Class)

171.    All Plaintiffs and the Class incorporate by reference paragraphs 1-170 as though fully set forth at length herein.

172.    All Plaintiffs bring this claim on behalf of themselves and on behalf of the Nationwide Class.

173.    Plaintiffs and the Class members are "consumers" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(3).

174.    Defendants are suppliers and warrantor within the meaning of 15 U.S.C. §§ 2301(4)-(5).

175.    The Class Vehicles, including Plaintiffs' vehicle, are "consumer products" within the meaning of 15 U.S.C. § 2301(1).

176.    Toyota's 3 year/36,000-mile limited warranty is a "written warranty" within the meaning of 15 U.S.C. § 2301(6).

177.    Toyota breached its express warranties by:

   a)   selling and leasing Class Vehicles with door locking actuators that are defective in materials and/or workmanship, requiring repair or replacement within the warranty period; and

b) refusing and/or failing to honor Plaintiffs' express warranties by repairing or replacing, free of charge, the door locking actuators in the Class Vehicles.

178.    Plaintiffs and the other Class members relied on the existence and length of the express warranties in deciding whether to purchase or lease the Class Vehicles.

179.    Toyota's breach of express warranties has deprived Plaintiffs and the other Class members of the benefit of their bargain.

180.    The amount in controversy of Plaintiffs' individual claim meets or exceeds the sum or value of $25.00. In addition, the amount in controversy meets or exceeds the sum or value of $50,000 (exclusive of interests and costs) computed on the basis of all claims to be determined in this suit.

181.    Toyota has been given a reasonable opportunity to cure its breach of the written warranties. Alternatively, Plaintiffs and the other Class members are not required to do so because affording Toyota a reasonable opportunity to cure its breach of written warranties was, and is, futile. Toyota has long been on notice of the alleged defect from complaints and service requests it has received from Class members, as well as from its own warranty claims, customer complaint data, and/or parts sales data, and has made clear from its actions it has no intention of resolving the defect.

182.    As a direct and proximate cause of Toyota' breach of its written warranties, Plaintiffs and Class members sustained damages and other losses in an amount to be determined at trial. Toyota's conduct damaged Plaintiffs and Class members, who are entitled to recover actual damages, consequential damages, specific performance, diminution in value, costs, including statutory attorney fees and/or other relief as deemed appropriate.

**COUNT II: VIOLATIONS OF THE DECEPTIVE TRADE PRACTICES ACT –
CONSUMER PROTECTION ACT
(Tex. Bus. & Com. Code §§ 17.41, *et seq*.)**

**(By all Plaintiffs against Toyota on behalf of the Nationwide Class, or alternatively, by
Plaintiffs Mixon, Logan, Smith, and Flick against Toyota on behalf of the Texas State
Class, by Plaintiff Sindoni against Toyota on behalf of the New York Class, by Plaintiff
Sexton against Toyota on behalf of the North Carolina State Class, by Plaintiff Mayberry
against Toyota on behalf of the Florida State Class, by Plaintiff Foster against Toyota on
behalf of the Indiana State Class, and by Plaintiff Woodall against Toyota on behalf of the
Georgia State Class)**

183.    All Plaintiffs and the Class incorporate by reference paragraphs 1-170 as though
fully set forth at length herein.

184.    All Plaintiffs bring this cause of action on behalf of themselves and the Nationwide
Class or, alternatively, Plaintiffs Mixon, Logan, Smith, and Flick on behalf of the Texas Class, by
Plaintiff Sexton against Toyota on behalf of the North Carolina State Class, by Plaintiff Mayberry
against Toyota on behalf of the Florida State Class, by Plaintiff Foster against Toyota on behalf of
the Indiana State Class, and by Plaintiff Woodall against Toyota on behalf of the Georgia State
Class.

185.    All Plaintiffs, and the Nationwide Class are individuals, partnerships, or
corporations with assets of less than $25 million (or are controlled by corporations or entities with
less than $25 million in assets), *see* TEX. BUS. & COM. CODE § 17.41, and are therefore
"consumers," pursuant to Texas Business and Commercial Code § 17.45(4). Toyota is a "person"
within the meaning of Texas Business and Commercial Code § 17.45(3).

186.    Toyota is engaged in "trade" or "commerce" or "consumer transactions" within the
meaning of Texas Business and Commercial Code § 17.46(a).

187.    The Texas Deceptive Trade Practices – Consumer Protection Act ("Texas DTPA")
prohibits "false, misleading, or deceptive acts or practices in the conduct of any trade or

commerce," TEX. BUS. & COM. CODE § 17.46(a), and an "unconscionable action or course of action," which means an act or practice which, to a consumer's detriment, takes advantage of the lack of knowledge, ability, experience, or capacity of the consumer to a grossly unfair degree." TEX. BUS. & COM. CODE §§ 17.45(5) and 17.50(a)(3).

188.    In the course of their business, Toyota knew that the Class Vehicles' door locking actuators systems were defectively designed or manufactured, would fail prematurely, and were not suitable for their intended use. Yet Toyota concealed and suppressed material facts concerning the Class Vehicles, the Door Actuator Defect, and its propensity to cause door lock actuators to fail. Toyota accomplished this by denying the existence of the Door Actuator Defect.

189.    Toyota thus violated the Texas DTPA by, at minimum, representing that the Class Vehicles have characteristics, uses, benefits, and qualities which they do not have; representing that the Class Vehicles are of a particular standard and quality when they are not; advertising the Class Vehicles with the intent not to sell them as advertised; and omitting material facts in describing the Class Vehicles.

190.    Toyota engaged in misleading, false, unfair, and deceptive acts or practices that violated the Texas DTPA by failing to disclose and actively concealing the nature of the Door Actuator Defect.

191.    Toyota owed all Plaintiffs, and the Nationwide Class members a duty to disclose the existence of the Door Actuator Defect because:

    a)    Toyota was in a superior position to know the true state of facts about the Defect and associated repair costs in the Class Vehicles;

    b)    all Plaintiffs and the Nationwide Class members could not reasonably have been expected to learn or discover that the Class Vehicles had dangerous defects until manifestation of the defects;

      c)      Toyota knew that all Plaintiffs and the Nationwide Class members could not reasonably have been expected to learn about or discover the Door Actuator Defect and its associated repair costs; and

      d)      Toyota actively concealed the Defect, its causes, and resulting effects, by asserting to all Plaintiffs and Nationwide Class members that their door locking actuators systems failed for reasons other than the Door Actuator Defect.

192.    Whether or not a vehicle's door locking actuators systems work properly is a fact a reasonable consumer would consider important in selecting a vehicle to purchase or lease. When all Plaintiffs and the Nationwide Class members bought a Class Vehicle for personal, family, or household purposes, they reasonably expected the vehicle would have non-defective door lock actuators systems.

193.    Toyota's unfair or deceptive acts or practices were likely to and did in fact deceive regulators and reasonable consumers, including Plaintiffs Mixon, Logan, Smith, Flick, Sindoni, Sexton, Mayberry, Foster, and Woodall about the safety and reliability of the Class Vehicles.

194.    All Plaintiffs and the Nationwide Class suffered ascertainable loss and actual damages as a direct and proximate result of Toyota's misrepresentations and its concealment of and failure to disclose material information. All Plaintiffs and the Nationwide Class members who purchased or leased the Class Vehicles would not have purchased or leased them at all and/or—if the Vehicles' true nature had been disclosed and mitigated or would have paid significantly less for them. All Plaintiffs also suffered diminished value of their vehicles, as well as lost or diminished use.

195.    The omissions and acts of concealment by Toyota pertained to information that was material to all Plaintiffs and the Nationwide Class members, as it would have been to all reasonable consumers.

196.    Toyota had an ongoing duty to all Toyota customers to refrain from unfair and deceptive practices under the Texas DTPA in the course of its business.

197.    Toyota's violations present a continuing risk to Plaintiffs as well as to the general public. Toyota's unlawful acts and practices complained of herein affect the public interest.

198.    All Plaintiffs notified Toyota of its violations of the Texas DTPA, and/or they were not required to do so because affording Toyota a reasonable opportunity to cure its violations would have been futile. Toyota also knew about the Door Actuator Defect but chose to conceal it in further violation of the Texas DTPA.

199.    Pursuant to Texas Business and Commercial Code § 17.50, all Plaintiffs, and the Nationwide Class seek an order enjoining Toyota's unfair and/or deceptive acts or practices, damages, multiple damages for knowing and intentional violations, pursuant to § 17.50(b)(1), punitive damages, and attorneys' fees, costs, and any other just and proper relief available under the Texas DTPA.

200.    Toyota has been provided notice of these issues by numerous complaints, as alleged herein.

## COUNT III: BREACH OF IMPLIED WARRANTY
### (Tex. Bus. & Com. Code § 2.314)

**(By all Plaintiffs against Toyota on behalf of the Nationwide Class or, alternatively, by Plaintiffs Mixon, Logan, Smith, and Flick against Toyota on behalf of the Texas State Class, by Plaintiff Sindoni against Toyota on behalf of the New York Class, by Plaintiff Sexton against Toyota on behalf of the North Carolina State Class, by Plaintiff Mayberry against Toyota on behalf of the Florida State Class, by Plaintiff Foster against Toyota on behalf of the Indiana State Class, and by Plaintiff Woodall against Toyota on behalf of the Georgia State Class)**

201.    Plaintiffs and the Class incorporate by reference paragraphs 1-170 as though fully set forth at length herein.

202.    Plaintiffs bring this cause of action on behalf of themselves and the Nationwide Class or, alternatively, Plaintiffs Mixon, Logan, Smith, and Flick on behalf of the Texas Class, by Plaintiff Sexton against Toyota on behalf of the North Carolina State Class, by Plaintiff Mayberry against Toyota on behalf of the Florida State Class, by Plaintiff Foster against Toyota on behalf of the Indiana State Class, and by Plaintiff Woodall against Toyota on behalf of the Georgia State Class.

203.    Toyota is and was at all relevant times a "merchant" with respect to motor vehicles under Texas Business and Commercial Code §§ 2.104(1) and 2A.103(a)(20), and a "seller" of motor vehicles under § 2.103(a)(4).

204.    With respect to leases, Toyota is and was at all relevant times a "lessor" of motor vehicles under Texas Business and Commercial Code § 2A.103(a)(16).

205.    The Class Vehicles are and were at all relevant times "goods" within the meaning of Texas Business and Commercial Code §§ 2.105(a) and 2A.103(a)(8).

206.    A warranty that the Class Vehicles were in merchantable condition and fit for the ordinary purpose for which vehicles are used is implied by law, pursuant to Texas Business and Commercial Code §§ 2.314 and 2A.212.

207.    Toyota impliedly warranted that the Class Vehicles, including the door actuators, were of merchantable quality and fit for such use. This implied warranty included, *inter alia*, the following: (i) a warranty that the Class Vehicles were manufactured, supplied, distributed, and/or sold by Toyota were safe and reliable for providing transportation; and (ii) a warranty that the Class Vehicles would be fit for their intended use—providing safe and reliable transportation— while the Class Vehicles were being operated.

208.    Toyota breached the implied warranty of merchantability in that the defective Class Vehicles were not in merchantable condition when they were sold to Plaintiffs and Nationwide Class members and said vehicles were and are unfit for the ordinary purposes for which such vehicle is used because they pose a serious safety risk to the occupants and are an unreliable means of transportation.

209.    Toyota has been provided notice of these issues by numerous complaints, as alleged herein.

210.    As a direct and proximate result of breaches of the implied warranty of merchantability, Plaintiffs and the Nationwide Class members have suffered damages, including but not limited to incidental and consequential damages.

### COUNT IV: BREACH OF EXPRESS WARRANTIES
### (Tex. Bus. & Com. Code § 2.313)

**(By all Plaintiffs against Toyota on behalf of the Nationwide Class or, alternatively, by Plaintiffs Mixon, Logan, Smith, and Flick against Toyota on behalf of the Texas State Class, by Plaintiff Sindoni against Toyota on behalf of the New York Class, by Plaintiff Sexton against Toyota on behalf of the North Carolina State Class, by Plaintiff Mayberry against Toyota on behalf of the Florida State Class, by Plaintiff Foster against Toyota on behalf of the Indiana State Class, and by Plaintiff Woodall against Toyota on behalf of the Georgia State Class)**

211.    Plaintiffs and the Class incorporate by reference paragraphs 1-170 as though fully set forth at length herein.

212.    Plaintiffs bring this cause of action on behalf themselves and the Nationwide Class or, alternatively, Plaintiffs Mixon, Logan, Smith, and Flick on behalf of the Texas Class, by Plaintiff Sexton against Toyota on behalf of the North Carolina State Class, by Plaintiff Mayberry against Toyota on behalf of the Florida State Class, by Plaintiff Foster against Toyota on behalf of the Indiana State Class, and by Plaintiff Woodall against Toyota on behalf of the Georgia State Class.

213.    Toyota is and was at all relevant times a "merchant" with respect to motor vehicles under Texas Business and Commercial Code §§ 2.104(1) and 2A.103(a)(20), and a "seller" of motor vehicles under § 2.103(a)(4).

214.    With respect to leases, Toyota is and was at all relevant times a "lessor" of motor vehicles under Texas Business and Commercial Code § 2A.103(a)(16).

215.    The Class Vehicles are and were at all relevant times "goods" within the meaning of Texas Business and Commercial Code §§ 2.105(a) and 2A.103(a)(8).

216.    In connection with the sale of the defective Class Vehicles to the Plaintiffs and the Nationwide Class, Toyota provided a new vehicle warranty, under which it agreed to repair original components found to be defective in material or workmanship under normal use and maintenance, including the engine and its components.

217.    Toyota's express warranties were part of the basis of the bargain respecting the purchase and/or lease of the defective Class Vehicles. In addition to written warranties, Toyota warranted several attributes, characteristics, and qualities of the subject vehicles, as alleged above.

218.    Toyota distributed the defective parts causing the Door Actuator Defect in the Class Vehicles, and said parts are covered by Toyota's warranties granted to all purchasers and lessees of the Class Vehicles.

219.    Toyota breached these warranties by selling and leasing Class Vehicles with the Door Actuator Defect, requiring repair or replacement within the applicable warranty periods, and refusing to honor the warranties by providing free repairs or replacements during the applicable warranty periods.

220.    Plaintiffs notified Toyota of its breach within a reasonable time, and/or they were not required to do so because affording Toyota a reasonable opportunity to cure its breaches would

have been futile. Toyota also knew about the Door Actuator Defect but chose to conceal it as a means of avoiding compliance with its warranty obligations.

221.    Plaintiffs submitted their vehicles for warranty repairs as referenced herein. Toyota failed to comply with the terms of the express written warranty provided to Plaintiff, by failing and/or refusing to repair the Door Actuator Defect under the vehicle's warranty as described herein.

222.    Plaintiffs have given Toyota a reasonable opportunity to cure the Door Actuator Defect, but Toyota has been unable and/or has refused to do so within a reasonable time.

223.    As a result of said nonconformities, Plaintiffs cannot reasonably rely on the subject vehicle for the ordinary purpose of safe, comfortable, and efficient transportation.

224.    Plaintiffs could not reasonably have discovered said nonconformities with the subject vehicles prior to Plaintiffs' acceptance of the subject vehicle.

225.    Plaintiffs would not have purchased the subject vehicle, or would have paid less for the subject vehicle, had she known, prior to her respective time of purchase or lease, that the subject vehicle contained the Door Actuator Defect.

226.    As a direct and proximate result of the willful failure of Toyota to comply with their obligations under the express warranties, Plaintiffs and the Nationwide Class members have suffered actual and consequential damages. Such damages include, but are not limited to, a diminution in the value of the subject vehicles containing the defects identified herein.

227.    As a direct and proximate cause of Toyota's breach, Plaintiffs and the Texas Class members bought or leased Class Vehicles they otherwise would not have, overpaid for their vehicles, did not receive the benefit of their bargain, and their Class Vehicles.

228.    Any attempt to disclaim or limit these express warranties vis-à-vis consumers is unconscionable and unenforceable under the circumstances here. Specifically, Toyota's warranty limitations are unenforceable because it knowingly sold a defective product without giving notice to Plaintiffs or the Nationwide Class members.

229.    The time limits contained in Toyota's warranty period were also unconscionable and inadequate to protect Plaintiffs and the Nationwide Class members. Among other things, Plaintiffs and the Nationwide Class members had no meaningful choice in determining these time limitations, the terms of which unreasonably favored Toyota. A gross disparity in bargaining power existed between Toyota and Plaintiffs and the Nationwide Class members because Toyota knew or should have known that the Class Vehicles were defective at the time of sale and would fail well before their useful lives.

230.    Plaintiffs and the Texas Class members have complied with all obligations under the warranty, or otherwise have been excused from performance of said obligations as a result of Toyota's conduct.

231.    Also, as alleged in more detail herein, at the time that Toyota warranted and sold the vehicles, it knew that the vehicles did not conform to the warranties and were inherently defective, and Toyota wrongfully and fraudulently misrepresented and/or concealed material facts regarding their vehicles. Plaintiffs and the Nationwide Class members were therefore induced to purchase the defective Class Vehicles under false and/or fraudulent pretenses.

232.    Toyota has been provided notice of these issues by numerous complaints as described herein.

233.    As a direct and proximate result of Toyota's breach of express warranties, Plaintiffs and the Nationwide Class members have been damaged in an amount to be determined at trial.

## COUNT V: FRAUD BY CONCEALMENT
### (Based on Texas Law)

**(By all Plaintiffs against Toyota on behalf of the Nationwide Class or, alternatively, by Plaintiffs Mixon, Logan, Smith, and Flick against Toyota on behalf of the Texas State Class, by Plaintiff Sindoni against Toyota on behalf of the New York Class, by Plaintiff Sexton against Toyota on behalf of the North Carolina State Class, by Plaintiff Mayberry against Toyota on behalf of the Florida State Class, by Plaintiff Foster against Toyota on behalf of the Indiana State Class, and by Plaintiff Woodall against Toyota on behalf of the Georgia State Class)**

234.    Plaintiffs and the Class incorporate by reference paragraphs 1-170 as though fully set forth at length herein.

235.    Plaintiffs bring this cause of action on behalf themselves and the Nationwide Class or, alternatively, Plaintiffs Mixon, Logan, Smith, and Flick on behalf of the Texas Class, by Plaintiff Sexton against Toyota on behalf of the North Carolina State Class, by Plaintiff Mayberry against Toyota on behalf of the Florida State Class, by Plaintiff Foster against Toyota on behalf of the Indiana State Class, and by Plaintiff Woodall against Toyota on behalf of the Georgia State Class.

236.    Toyota made material omissions concerning a presently existing or past fact in that, for example, Toyota did not fully and truthfully disclose to its customers the true nature of the Door Actuator Defect which was not readily discoverable by them until many years after purchase or lease of the Class Vehicles. These facts, and other facts as set forth above, were material because reasonable people attach importance to their existence or nonexistence in deciding which vehicle to purchase.

237.    Toyota was under a duty to disclose these omitted facts, because where one does speak one must speak the whole truth and not conceal any facts which materially qualify those facts stated. One who volunteers information must be truthful, and the telling of a half-truth calculated to deceive is fraud.

- 104 -

238.    In addition, Toyota had a duty to disclose these omitted material facts because they were known and/or accessible only to Toyota who had superior knowledge and access to the facts, and Toyota knew they were not known to or reasonably discoverable by Plaintiffs, and the Nationwide Class members. These omitted facts were material because they directly impact the safety of the Class Vehicles.

239.    Toyota was in exclusive control of the material facts and such facts were not known to the public or the Nationwide Class members. Toyota also possessed exclusive knowledge of the defects rendering the Class Vehicles inherently more dangerous and unreliable than similar vehicles.

240.    Toyota actively concealed and/or suppressed these material facts, in whole or in part, with the intent to induce Plaintiffs and the Nationwide Class members to purchase the Class Vehicles at a higher price for the vehicles, which did not match the vehicles' true value.

241.    Plaintiffs and the Nationwide Class members were unaware of these omitted material facts and would not have acted as they did if they had known of the concealed and/or suppressed facts. The actions of Plaintiffs and the Nationwide Class members were justified.

242.    Plaintiffs and the Nationwide Class members reasonably relied on these omissions and suffered damages as a result.

243.    As a result of the concealment and/or suppression of the facts, Plaintiffs and the Nationwide Class members sustained damage. For those Nationwide Class members who elect to affirm the sale, these damages include the difference between the actual value of that which Plaintiffs and the Nationwide Class members paid and the actual value of that which they received, together with additional damages arising from the sales transaction, amounts expended in reliance upon the fraud, compensation for loss of use and enjoyment of the property, and/or lost profits.

For those who want to rescind the purchase, they are entitled to restitution and consequential damages. Toyota's acts were done maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of the rights and well-being of Plaintiffs and the Nationwide Class members in order to enrich Toyota. Toyota's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

### COUNT VI: MONEY HAD AND RECEIVED/UNJUST ENRICHMENT (IN THE ALTERNATIVE) (Based on Texas law)

**(By all Plaintiffs against Toyota on behalf of the Nationwide Class or, alternatively, by Plaintiffs Mixon, Logan, Smith, and Flick against Toyota on behalf of the Texas State Class, by Plaintiff Sindoni against Toyota on behalf of the New York Class, by Plaintiff Sexton against Toyota on behalf of the North Carolina State Class, by Plaintiff Mayberry against Toyota on behalf of the Florida State Class, by Plaintiff Foster against Toyota on behalf of the Indiana State Class, and by Plaintiff Woodall against Toyota on behalf of the Georgia State Class)**

244.    Plaintiffs and the Class incorporate by paragraphs 1-170 as though fully set forth at length herein.

245.    Plaintiffs bring this cause of action on behalf of themselves and the Nationwide Class or, alternatively, Plaintiffs Mixon, Logan, Smith, and Flick on behalf of the Texas Class, by Plaintiff Sexton against Toyota on behalf of the North Carolina State Class, by Plaintiff Mayberry against Toyota on behalf of the Florida State Class, by Plaintiff Foster against Toyota on behalf of the Indiana State Class, and by Plaintiff Woodall against Toyota on behalf of the Georgia State Class.

246.    As a result of their wrongful and fraudulent acts and omissions, as set forth above, pertaining to the design and/or manufacturing defect of their vehicles and the concealment of the

defect, Toyota charged a higher price for their vehicles than the vehicles' true value and Toyota obtained monies which rightfully belong to Plaintiffs and the Nationwide Class members.

247.    Toyota enjoyed the benefit of increased financial gains, to the detriment of Plaintiffs and the Nationwide Class members, who paid a higher price for vehicles which actually had lower values. It would be inequitable and unjust for Toyota to retain these wrongfully obtained profits.

248.    Plaintiffs, therefore, seek an order establishing Toyota as a constructive trustee of the profits unjustly obtained, plus interest.

**B.    Claims Brought on Behalf of the New York Class**

**COUNT VII: VIOLATION OF THE NEW YORK DECEPTIVE PRACTICES ACT**
**(N.Y. Gen. Bus. Law §§ 349)**

**(Brought by Plaintiff Sindoni against Toyota on behalf of the New York State Class)**

249.    Plaintiff Sindoni and the New York Class incorporate by reference paragraphs 1-170 as though fully set forth at length herein.

250.    Plaintiff Sindoni brings this cause of action on behalf of herself and the New York Class.

251.    This action is brought to secure redress for the deceptive practices perpetrated by Toyota against Plaintiff Sindoni and the New York Class.

252.    As a manufacturer, marketer, and distributor of vehicles, Toyota was engaged in the conduct of business, trade or commerce within the intended ambit of GBL § 349.

253.    Toyota's actions and/or omissions as described herein violated GBL § 349 *et seq*., which makes unlawful "DPA language" and "[f]alse advertising in the conduct of any business, trade or commerce."

254.    Specifically, Toyota knowingly and willfully misrepresented and intentionally omitted material information regarding the safety and effectiveness of the door lock actuators installed in the Class Vehicles.

255.    In the course of their business, Toyota knew that the Class Vehicles' door locking actuators systems were defectively designed or manufactured, would fail prematurely, and were not suitable for their intended use. Yet Toyota concealed and suppressed material facts concerning the Class Vehicles, the Door Actuator Defect, and its propensity to cause door lock actuators to fail. Toyota accomplished this by denying the existence of the Door Actuator Defect.

256.    Toyota thus violated the New York Deceptive Practices Act by, at minimum, representing that the Class Vehicles have characteristics, uses, benefits, and qualities which they do not have; representing that the Class Vehicles are of a particular standard and quality when they are not; advertising the Class Vehicles with the intent not to sell them as advertised; and omitting material facts in describing the Class Vehicles.

257.    Toyota engaged in misleading, false, unfair, and deceptive acts or practices that violated the New York Deceptive Practices Act by failing to disclose and actively concealing the nature of the Door Actuator Defect.

258.    Toyota owed all Plaintiffs, and the Nationwide Class members a duty to disclose the existence of the Door Actuator Defect because:

    a)    Toyota was in a superior position to know the true state of facts about the Defect and associated repair costs in the Class Vehicles;

    b)    all Plaintiffs and the New York Class members could not reasonably have been expected to learn or discover that the Class Vehicles had dangerous defects until manifestation of the defects;

    c)    Toyota knew that all Plaintiffs and the New York Class members could not reasonably have been expected to learn about or discover the Door Actuator Defect and its associated repair costs; and

- 108 -

d)     Toyota actively concealed the Defect, its causes, and resulting effects, by asserting to the New York Class members that their door locking actuators systems failed for reasons other than the Door Actuator Defect.

259.     Whether or not a vehicle's door locking actuators systems work properly is a fact a reasonable consumer would consider important in selecting a vehicle to purchase or lease. When Plaintiff and the New York Class members bought a Class Vehicle for personal, family, or household purposes, they reasonably expected the vehicle would have non-defective door lock actuators systems.

260.     Toyota's unfair or deceptive acts or practices were likely to and did in fact deceive regulators and reasonable consumers, including Plaintiff Sindoni about the safety and reliability of the Class Vehicles.

261.     Furthermore, through its advertising, Toyota caused to be made or disseminated throughout New York statements that were untrue or misleading, and that were known, or which should have been known to Toyota, to be untrue and misleading to consumers in New York.

262.     Despite knowledge that the door lock actuators installed in the Class Vehicles are defective, Toyota failed to inform Plaintiff Sindoni and the members of the New York Class that it is defective and presents a safety risk.

263.     The misrepresentations and omissions regarding the defect in Class Vehicles, and Toyota's failure to disclose and active concealing of the defect, were material and likely to deceive a reasonable consumer, who would understand and believe from Toyota's actions and omissions that the Class Vehicles were free of safety hazards.

264.     Toyota's deceptive and misleading actions and omissions as set forth herein caused injury to Plaintiff Sindoni and the members of the New York Class.

265.     By reason of the foregoing, Toyota is liable to Plaintiff Sindoni and the members of the New York Class for actual damages they have suffered as a result of Toyota's actions, the amount of which will be determined at trial, statutory, treble damages, reasonable attorneys' fees and costs, injunctive relief prohibiting Toyota's unlawful and deceptive practices, and punitive damages, as well as any other remedies afforded at law or in equity.

## COUNT VIII: BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY
### (N.Y. U.C.C. Law §§ 2-314 and 2A-212)

**(Brought by Plaintiff Sindoni against Toyota on behalf of the New York Class)**

266.     Plaintiff Sindoni and the New York Class incorporate by reference paragraphs 1-170 as though fully set forth at length herein.

267.     Plaintiff Sindoni brings this cause of action on behalf of herself and the New York Class.

268.     Toyota is and was at all relevant times a "merchant" with respect to motor vehicles under N.Y. UCC Law § 2-104(1) and a "seller" of motor vehicles under § 2-103(1)(d).

269.     With respect to leases, Toyota is and was at all relevant times a "lessor" of motor vehicles under N.Y. UCC Law § 2A-103(1)(p).

270.     The Class Vehicles are and were at all relevant times "goods" within the meaning of N.Y. UCC Law §§ 2-105(1) and 2A-103(1)(h).

271.     A warranty that the Class Vehicles were in merchantable condition and fit for the ordinary purpose for which vehicles are used is implied by law pursuant to N.Y. UCC Law §§ 2-314 and 2A-212.

272.     These Class Vehicles, when sold or leased and at all times thereafter, were not in merchantable condition and are not fit for the ordinary purpose for which vehicles are used.

273.    Specifically, the Class Vehicles are inherently defective in that they contain the Door Actuator Defect, which, as alleged above, is not adequately designed, manufactured, and/or tested and presents a safety risk, including, but not limited to, affecting the driver's ability to lock and unlock the vehicles using the utilizing the remote key FOB or power door locks on the interior door panels.

274.    Toyota was provided notice of these issues by the investigations of the NHTSA, numerous complaints filed against it including the instant Complaint.

275.    As a direct and proximate result of Toyota's breach of the implied warranty of merchantability, Plaintiff Sindoni and the other members of the New York Class have been damaged in an amount to be proven at trial.

## COUNT IX: UNJUST ENRICHMENT

### (Brought by Plaintiff Sindoni against Toyota on behalf of the New York Class)

276.    Plaintiff Sindoni and the New York Class incorporate by reference paragraphs 1-170 as though fully set forth at length herein.

277.    Plaintiff Sindoni brings this cause of action on behalf of herself and the New York Class.

278.    By its wrongful acts and omissions of material facts, Toyota was unjustly enriched at the expense of Plaintiff Sindoni and members of the New York Class.

279.    At all relevant times, Toyota knew that the door lock actuators were defective.

280.    Nevertheless, Toyota continued to market and sell vehicles known to contain a defect that placed consumers and the general public in danger.

281.    As a result, Toyota was unjustly enriched at the expense of Plaintiff Sindoni and other members of the New York Class because they sold and leased at a profit defective cars whose

value was artificially inflated by Toyota's concealment of defects and safety risks associated with the Door Actuator Defect, and Plaintiff Sindoni and the members of the New York Class have overpaid for the cars and been forced to pay other costs.

282.     It would be inequitable and unconscionable for Toyota to retain the profit, benefit, and other compensation it has obtained from its fraudulent, deceptive, and misleading conduct alleged herein.

283.     By reason of the foregoing, Plaintiff Sindoni and the New York Class are entitled to restitution and disgorgement by Toyota of all monies unjustly and inequitably retained by Toyota in connection with its sale of the Class Vehicles, as well as any other remedies afforded at law or in equity.

**C.     Claims Brought on Behalf of the North Carolina Class**

### COUNT X: VIOLATION OF THE
### NORTH CAROLINA UNFAIR AND DECEPTIVE TRADE PRACTICES ACT
### (N.C. Gen. Stat. § 75-1.1, *et seq.*)

**(Brought by Plaintiff Sexton against Toyota on behalf of the North Carolina State Class)**

284.     Plaintiff Sexton and the North Carolina Class incorporate by paragraphs 1-170 as though fully set forth at length herein.

285.     Plaintiff Sexton brings this cause of action on behalf of herself and the North Carolina Class.

286.     North Carolina's Unfair and Deceptive Trade Practices Act, N.C. Gen. Stat. §§ 75-1.1, *et seq.* ("NCUDTPA"), prohibits a person from engaging in "[u]nfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce[.]" The NCUDTPA provides a private right of action for any person injured "by reason of any act or

thing done by any other person, firm or corporation in violation of" the NCUDTPA. N.C. Gen. Stat. § 75-16.

287.    Toyota's acts and practices complained of herein were performed in the course of Toyota's trade or business and thus occurred in or affected "commerce," as defined in N.C. Gen. Stat. § 75-1.1(b).

288.    In the course of its business, Toyota willfully failed to disclose and actively concealed the Door Actuator Defect discussed herein and otherwise engaged in activities with a tendency or capacity to deceive. Toyota also engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud misrepresentations, or concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression, or omission, in connection with the sale of the Class Vehicles.

289.    Toyota knew about the Door Actuator Defect but never informed Plaintiff Sexton and the North Carolina Class about the presence of the Door Actuator Defect prior to it manifesting in Plaintiff Sexton's vehicle.

290.    Toyota was also aware that the Door Actuator Defect created a significant and dangerous safety issue, whereby the Door Actuator Defect causes the door lock actuator in each of the Class Vehicles' doors to prematurely cease to operate so that door cannot be locked or unlocked utilizing the remote key fob or power door locks on the interior door panels. Toyota had actual notice that it manufactured, sold, and distributed vehicles throughout the United States that suffered from the Door Actuator Defect, which jeopardized the safety of the vehicle's occupants.

291.    By failing to disclose that the Class Vehicles were not safe, by marketing its vehicles as safe, reliable, and of high quality, and by presenting itself as a reputable manufacturer

that valued safety and stood behind its vehicles after they were sold, Toyota engaged in deceptive business practices in violation of the NCUDTPA.

292.    Toyota's unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers, including Plaintiff Sexton and the other North Carolina Class members, about the true performance of the Class Vehicles, Toyota's alleged commitment to customer satisfaction, and undermining safety and performance.

293.    Toyota knew or should have known that its conduct violated the NCUDTPA.

294.    As alleged above, Toyota made material statements about the safety and utility of the Class Vehicles and the Toyota brand that were either false or misleading.

295.    Toyota owed Plaintiffs a duty to disclose the Door Actuator Defect as it creates a true safety hazard and the reliability of the Class Vehicles.

296.    Plaintiff Sexton and the North Carolina Class suffered an ascertainable loss caused by Toyota's concealment of, and failure to, disclose material information about the Door Actuator Defect, including rendering their vehicles door locks inoperable via the remote key fob or power door locks on the interior door panels.

297.    Toyota had an ongoing duty to refrain from unfair and deceptive practices.

298.    Toyota's unlawful acts and practices complained of herein affect the public interest.

299.    As a direct and proximate result of Toyota's violations of the NCUDTPA, Plaintiff Sexton and the North Carolina Class have suffered injury-in-fact and/or actual damage.

300.    Plaintiff Sexton individually and on behalf of the other North Carolina Class members, seeks an award of attorneys' fees pursuant to N.C. Gen. Stat. § 75-16.1.

## COUNT XI: BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY
### (N.C. Gen. Stat. § 25-2-314)

**(Brought by Plaintiff Sexton against Toyota on behalf of the North Carolina State Class)**

- 114 -

301.    Plaintiff Sexton and the North Carolina Class incorporate by reference paragraphs 1-170 as though fully set forth at length herein.

302.    Plaintiff Sexton brings this cause of action on behalf of herself and the North Carolina Class.

303.    Toyota manufactured and distributed the Class Vehicles throughout the United States, including North Carolina, for sale to Plaintiff Sexton and North Carolina Class Members.

304.    Toyota impliedly warranted to Plaintiff Sexton and North Carolina Class Members that the Class Vehicles were free of defects and were merchantable and fit for their ordinary purpose for which such goods are used.

305.    As alleged herein, Toyota breached the implied warranty of merchantability because the Class Vehicles suffer from the Door Actuator Defect that cause the door lock actuator in each of the Class Vehicles' doors to prematurely cease to operate so that door cannot be locked or unlocked utilizing the remote key fob or power door locks on the interior door panels. The Class Vehicles are therefore defective, unmerchantable, and unfit for their ordinary, intended purpose.

306.    Toyota was also provided notice of these issues by complaints lodged by consumers with NHTSA—which vehicle manufacturers like Toyota are legally required to monitor—before or within a reasonable amount of time after the allegations of the Class Vehicles Door Actuator Defect became public.

307.    Due to the Door Actuator Defect, Plaintiffs and the North Carolina Class members are unable to operate their vehicles as intended in a safe condition, substantially free from defects. The Class Vehicles do not provide safe and reliable transportation to Plaintiff Sexton and North Carolina Class members. As a result, Plaintiff Sexton and the North Carolina Class members are

unable to safely drive their Class Vehicles without manifestation, or imminent threat of manifestation, of the Door Actuator Defect.

## COUNT XII: FRAUDULENT CONCEALMENT

**(Brought by Plaintiff Sexton against Toyota on behalf of the North Carolina State Class)**

308.    Plaintiff Sexton and the North Carolina Class incorporate by reference paragraphs 1-170 as though fully set forth at length herein.

309.    Plaintiff Sexton brings this cause of action on behalf of herself and the North Carolina Class.

310.    As set forth herein, Toyota concealed and/or suppressed material facts concerning the safety, quality, functionality, and reliability of their Class Vehicles. Toyota had a duty to disclose these safety, quality, functionality, and reliability issues because they consistently marketed their Class Vehicles as safe, functional, reliable, and of high quality.

311.    Toyota had a duty to disclose these omitted material facts because they were known and/or accessible only to Toyota, which has superior knowledge and access to the facts, and Toyota knew they were not known to or reasonably discoverable by Plaintiff Sexton and the North Carolina Class members. These omitted facts were material because they directly impact the safety, quality, functionality, and reliability of the Class Vehicles.

312.    Whether or not the Class Vehicles' door lock actuators fail as a result of the Door Actuator Defect are material safety concerns. Toyota possessed exclusive knowledge of the Door Actuator Defect rendering Class Vehicles inherently more dangerous and unreliable than similar vehicles.

313.    Toyota actively concealed and/or suppressed these material facts, in whole or in part, with the intent to induce Plaintiffs and Class members to purchase or lease Class Vehicles at a higher price than the Class Vehicles' true value.

314.    Toyota still has not made full and adequate disclosure and continues to defraud Plaintiff Sexton and North Carolina Class members.

315.    Plaintiff Sexton and North Carolina Class members were unaware of these omitted material facts and would not have acted as they did if they had known of the concealed and/or suppressed facts. Plaintiff Sexton and North Carolina States Class members actions were justified. Toyota was in exclusive control of the material facts and such facts were not known to the public, Plaintiff Sexton, or the North Carolina States Class.

316.    As a result of the concealment and/or suppression of the facts, Plaintiff Sexton and North Carolina Class members sustained damage.

317.    Toyota's acts were done maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiff Sexton's and the North Carolina Class members' rights and well-being in an effort to enrich Toyota. Toyota's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

**COUNT XIII: UNJUST ENRICHMENT**

**(Brought by Plaintiff Sexton against Toyota on behalf of the North Carolina State Class)**

318.    Plaintiff Sexton and the North Carolina Class incorporate by reference paragraphs 1-170 as though fully set forth at length herein.

319.    Plaintiff Sexton brings this cause of action on behalf of herself and the North Carolina Class.

320.    Plaintiff Sexton and the North Carolina Class have conferred a benefit upon Toyota in the form of money paid for the Class Vehicles.

321.    Toyota appreciates and/or has knowledge of the benefits conferred on it by Plaintiff Sexton and the putative North Carolina Class.

322.    Under principles of equity and good conscience, Toyota should not be permitted to retain all the money obtained from Plaintiff Sexton and the putative North Carolina Class, which Toyota took without disclosing the Door Actuator Defect. Toyota should not be permitted to retain the ill-gotten gains it received.

323.    Accordingly, Plaintiff Sexton and the North Carolina Class seek disgorgement and restitution of any money in an amount to be determined at trial that Toyota received because of the unlawful and/or wrongful conduct alleged herein.

**D.    Claims Brought on Behalf of the Florida Class**

**COUNT XIV: VIOLATION OF
THE FLORIDA DECEPTIVE AND UNFAIR TRADE PRACTICES ACT
(Fla. Stat. § 501.201, *et seq*.)**

**(Brought by Plaintiff Mayberry against Toyota on behalf of the Florida State Class)**

324.    Plaintiff Mayberry and the Florida Class incorporate by reference paragraphs 1-170 as though fully set forth at length herein.

325.    Plaintiff Mayberry brings this cause of action on behalf of himself and the Florida Class.

326.    Plaintiff Mayberry and the Florida Class Members are "consumers[s]" under the Florida Deceptive and Unfair Trade Practices Act ("FDUPTA"), Fla. Stat. § 501.203(7).

327.    Toyota engaged in "trade or commerce" in Florida within the meaning of the FDUPTA. *See* Fla. Stat. § 501.203(8).

328.    The FDUPTA prohibits "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce." Fla. Stat. § 501.204(1).

329.    Toyota engaged in deceptive trade practices in violation of the FDUPTA by failing to disclose and actively concealing the dangers and risks posed by the Class Vehicles and/or the defective door lock actuators installed in them. Toyota's deceptive business practices include: (i) representing that its vehicles had characteristics, uses, or benefits which they do not have; (ii) advertising its goods with intent not to sell them as advertised; (iii) representing that its vehicles are of a particular standard, quality, or grade when they are not; (iv) representing that a transaction conferred or involved rights, remedies, or obligations which they do not; and (v) representing that its goods have been supplied in accordance with a previous representation when they have not.

330.    Toyota owed Plaintiff Mayberry and the Florida Class Members a duty to disclose the true safety and reliability of the Class Vehicles and/or the defective door lock actuators installed in them because Toyota: (a) possessed exclusive knowledge of the dangers and risks posed by the foregoing; (b) intentionally concealed the foregoing from Plaintiff Mayberry and the Florida Class Members; and/or (c) made incomplete representations about the safety and reliability of the foregoing generally, while withholding material facts from Plaintiff Mayberry and the Florida Class Members that contradicted these representations.

331.    Toyota's failure to disclose and active concealment of the dangers and risks posed by the defective door lock actuators in Class Vehicles were material to Plaintiff Mayberry and the Florida Class Members. A vehicle made by a reputable manufacturer of safe vehicles is worth more than an otherwise comparable vehicle made by a disreputable manufacturer of unsafe vehicles that conceals defects rather than promptly remedies them.

332. Plaintiff Mayberry and the Florida Class Members suffered ascertainable loss caused by Toyota's misrepresentations and failure to disclose material information. Had they been aware of the defective door lock actuators installed in the Class Vehicles, Plaintiff Mayberry and the Florida Class Members either would have paid less for their vehicles or would not have purchased or leased them at all. Plaintiff Mayberry and the Florida Class Members did not receive the benefit of their bargain as a result of Toyota's misconduct.

333. Toyota knew or should have known that its conduct violated the FDUPTA.

334. Toyota's violations present a continuing risk to Plaintiff Mayberry, the Florida Class Members, as well as to the general public. Toyota's unlawful acts and practices complained of herein affect the public interest.

335. As a direct and proximate result of Toyota's violations of the FDUPTA, Plaintiff Mayberry and the Florida Class Members have suffered injury-in-fact and/or actual damages.

336. Plaintiff Mayberry and the Florida Class Members seek, *inter alia*, actual damages in an amount to be determined at trial, reasonable attorneys' fees; and any other just and proper relief available under the FDUPTA. Because Toyota acted with willful and conscious disregard of the rights and safety of others, Toyota's conduct constitutes malice, oppression, and fraud warranting punitive damages.

## COUNT XV: BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY
### (F.S.A. §§ 672.314 and 680.12)

**(Brought by Plaintiff Mayberry against Toyota on behalf of the Florida State Class)**

337. Plaintiff Mayberry and the Florida Class incorporate by reference paragraphs 1-170 as though fully set forth at length herein.

338. Plaintiff Mayberry brings this cause of action on behalf of himself and the Florida Class.

339.    Toyota is and was at all relevant times a "merchant" with respect to motor vehicles under Fla. Stat. §§ 672.104(1) and 680.1031(3)(k), and a "seller" of motor vehicles under § 672.103(1)(d).

340.    With respect to leases, Toyota is and was at all relevant times a "lessor" of motor vehicles under Fla. Stat. § 680.1031(1)(p).

341.    The Class Vehicles are and were at all relevant times "goods" within the meaning of Fla. Stat. §§ 672.105(1) and 680.1031(1)(h).

342.    A warranty that the Class Vehicles were in merchantable condition and fit for the ordinary purpose for which vehicles are used is implied by law under Fla. Stat. §§ 672.314 and 680.212.

343.    Toyota was and is in actual or constructive privity with Plaintiff Mayberry and the Florida Class Members.

344.    At all relevant times hereto, applicable law imposed upon Toyota a duty that the door lock actuators installed in the Class Vehicles be fit for the ordinary purposes for which door lock actuators are used and that they pass without objection in the trade under the contract description.

345.    Toyota has not validly disclaimed, excluded, or modified the implied warranties or duties described above, and any attempted disclaimer or exclusion of the implied warranties was and is ineffectual.

346.    The door lock actuators installed in the Class Vehicles were defective at the time they left the possession of Toyota, as set forth above. Toyota knew of this Door Actuator Defect at the time the purchase and lease transactions occurred. Thus, the door lock actuators installed in the Class Vehicles, when sold and at all times thereafter, were not in merchantable condition or

quality because they are not fit for their ordinary intended purpose and they do not pass without objection in the trade under the contract description.

347.    Plaintiff Mayberry and the Florida Class Members used the door lock actuators installed in the Class Vehicles in a manner consistent with their intended use and performed each and every duty required under the terms of the warranties, except as may have been excused or prevented by the conduct of Toyota or by operation of law in light of Toyota's unconscionable conduct.

348.    Toyota had actual knowledge of, and received timely notice regarding, the Door Actuator Defect at issue in this litigation and, notwithstanding such notice, failed and refused to offer an effective remedy.

349.    In addition, Toyota received, on information and belief, numerous consumer complaints and other notices from customers advising of the Door Actuator Defect associated with the door lock actuators installed in the Class Vehicles.

350.    By virtue of the conduct described herein and throughout this Complaint, Toyota breached the implied warranty of merchantability.

351.    As a direct and proximate result of Toyota's breach of warranties, Plaintiff Mayberry and the Florida Class Members suffered economic damage, including loss attributable to the diminished value of their Class Vehicles, loss of use of their Class Vehicles and other tangible property, as well as the monies spent and to be spent to repair and/or replace their door lock actuators.

## COUNT XVI: UNJUST ENRICHMENT

**(Brought by Plaintiff Mayberry against Toyota on behalf of the Florida State Class)**

352.     Plaintiff Mayberry and the Florida Class incorporate by reference paragraphs 1-170 as though fully set forth at length herein.

353.     Plaintiff Mayberry brings this Count individually and on behalf of the Florida Class against Toyota.

354.     As set forth above, Plaintiff Mayberry and other Florida Class members have suffered from a defect that existed in the Class Vehicles which began affecting the Class Vehicles and their door lock actuators shortly after the limited warranty period expired. Plaintiff Mayberry and other Florida Class members are seeking recovery for this manifested defect and any and all consequential damages stemming therefrom.

355.     As a result of its wrongful and fraudulent acts and omissions, as set forth herein, pertaining to the defects in the door lock actuators and the Class Vehicles and the concealment thereof, Toyota charged a higher price for the Class Vehicles than the Vehicles' true value and Toyota, therefore, obtained monies that rightfully belong to Plaintiff Mayberry and other Florida Class members.

356.     Toyota has benefitted from manufacturing, selling, and leasing at an unjust profit defective Class Vehicles whose value was artificially inflated by Toyota's concealment of the defective nature of the door lock actuators and of the Class Vehicles, and false representations related thereto.

357.     Toyota enjoyed the benefit of increased financial gains, to the detriment of Plaintiff Mayberry and other Florida Class members, who paid a higher price for their vehicles that actually had lower values.

358.     Toyota has received and retained unjust benefits from the Plaintiff Mayberry and other Florida Class members, and inequity has resulted.

359.    It would be inequitable and unconscionable for Toyota to retain these wrongfully obtained benefits.

360.    Because Toyota concealed its fraud and deception, Plaintiff Mayberry and other Florida Class members were not aware of the true facts concerning the Class Vehicles and did not benefit from Toyota's misconduct.

361.    Toyota knowingly accepted and retained the unjust benefits of its fraudulent conduct.

362.    As a result of Toyota's misconduct, the amount of its unjust enrichment should be disgorged and returned to Plaintiff Mayberry and other Florida Class members, in an amount to be proven at trial.

363.    Plaintiff Mayberry and other Florida Class members, therefore, seek an order establishing Toyota as a constructive trustee of the profits unjustly obtained, plus interest.

**E.    Claims Brought on Behalf of the Indiana Class**

**COUNT XVII: VIOLATION OF**
**THE INDIANA DECEPTIVE CONSUMER SALES ACT**
**(Ind. Code § 24-5-0.5-3)**

**(Brought by Plaintiff Foster against Toyota on behalf of the Indiana State Class)**

364.    Plaintiff Foster and the Indiana Class incorporate by reference paragraphs 1-170 as though fully set forth at length herein.

365.    Plaintiff Foster brings this cause of action on behalf of himself and the Indiana Class.

366.    Toyota is a "person" within the meaning of Ind. Code § 24-5-0.5-2(2) and a "supplier" within the meaning of Ind. Code § 24-5-.05-2(a)(3).

367.    Plaintiff Foster and Indiana Class members' purchases of the Class Vehicles are "consumer transactions" within the meaning of Ind. Code § 24-5-.05-2(a)(1).

368.    Indiana's Deceptive Consumer Sales Act ("Indiana DCSA") prohibits a person or supplier from engaging in "an unfair, abusive or deceptive act, or omission, or practice in connection with a consumer transaction." "Deceptive acts" include: "(1) That such subject of a consumer transaction has sponsorship, approval, performance, characteristics, accessories, uses, or benefits it does not have which the supplier knows or should reasonably know it does not have; (2) That such subject of a consumer transaction is of a particular standard, quality, grade, style, or model, if it is not and if the supplier knows or should reasonably know that it is not: . . . (c) Any representations on or within a product or its packaging or in advertising or promotional materials which would constitute a deceptive act shall be the deceptive act both of the supplier who places such a representation thereon or therein, or who authored such materials, and such suppliers who shall state orally or in writing that such representation is true if such other supplier shall know or have reason to know that such representation was false." Ind. Code § 24-5-0.5-3.

369.    Toyota participated in unfair and deceptive trade practices that violated the Indiana DCSA as described herein. Toyota violated the Indiana DCSA by misrepresenting and concealing and failing to disclose the Door Actuator Defect. Toyota had an ongoing duty to Plaintiff Foster and the Indiana Class to refrain from unfair and deceptive practices under the Indiana DCSA in the course of its business.

370.    Toyota's unfair or deceptive acts or practices, including the abovementioned concealments, omissions, and suppressions of material facts, had a tendency or capacity to mislead and create a false impression in consumers and were likely to and did in fact deceive reasonable consumers, including the Indiana Class Members.

371.    As alleged above, in the course of its business, Toyota intentionally and knowingly misrepresented material facts regarding the Class Vehicles and the defective door lock actuators installed therein with an intent to mislead the Indiana Class Members.

372.    Toyota knew or should have known that its conduct violated the Indiana DCSA.

373.    To protect its profits, Toyota concealed the door lock actuator defects and continued to allow unsuspecting new and used vehicle purchasers to continue to buy, lease, and drive the inherently defective Class Vehicles.

374.    Toyota owed the Indiana Class Members a duty to disclose the truth about the quality, reliability, durability, and safety of the Class Vehicles because Toyota:

a)  possessed exclusive knowledge of the Door Actuator Defect in the Class Vehicles;

b)  intentionally concealed the foregoing from the Indiana Class Members; and/or

c)  made incomplete representations about the quality, reliability, durability, and safety of the Class Vehicles, while purposefully withholding material facts from the Indiana Class Members that contradicted these representations.

375.    Because Toyota fraudulently concealed the Door Actuator Defect in the Class Vehicles, and intentionally failed to disclose it to the Indiana Class Members at the time of purchase or lease, the Class Vehicles are worth significantly less than the amounts paid by the Indiana Class Members at the time of purchase or lease. Indeed, consumers who purchased or leased the Class Vehicles would not have purchased or leased said vehicles, or would have paid significantly less for them, had they known of the existence of this defect prior to purchase or lease.

376.     The Indiana Class Members suffered ascertainable loss caused by Toyota's misrepresentations and its failure to disclose material information. The Indiana Class Members did not receive the benefit of their bargains as a result of Toyota's misconduct.

377.     As a direct and proximate result of Toyota's violations of the Indiana DCSA, the Indiana Class Members have suffered injury-in-fact and/or actual damages.

378.     Pursuant to Ind. Code § 24-5-0.5-4, the Indiana Class Members are entitled to monetary relief from Toyota measured as the greater of (a) actual damages in an amount to be determined at trial, and (b) statutory damages in the amount of $500 for each Indiana Class Member, including treble damages up to $1,000 for Toyota's willfully deceptive acts.

379.     The Indiana Class Members also seek punitive damages based on the outrageousness and recklessness of Toyota's conduct and Toyota's high net worth.

380.     Plaintiffs therefore seek compensatory and monetary damages to which Plaintiffs and Indiana Class Members are entitled.

**COUNT XVIII: BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY
(Ind. Code § 26-1-2-314)**

**(Brought by Plaintiff Foster against Toyota on behalf of the Indiana State Class)**

381.     Plaintiff Foster and the Indiana Class incorporate by reference paragraphs 1-170 as though fully set forth at length herein.

382.     Plaintiff Foster brings this cause of action on behalf of himself and the Indiana Class.

383.     Toyota was a merchant with respect to motor vehicles within the meaning of Ind. Code § 26-1-2-104(1).

384.    Under Ind. Code § 26-1-2-314, a warranty that the Class Vehicles were in merchantable condition was implied by law in the transactions when Plaintiffs purchased their Toyota Vehicles.

385.    These vehicles, when sold and at all times thereafter, were not merchantable and are not fit for the ordinary purpose for which cars are used. Specifically, the Class Vehicles are inherently defective because of the Door Actuator Defect that causes the Class Vehicles' door lock actuators to prematurely cease to operate so that door cannot be locked or unlocked utilizing the remote key fob or power door locks on the interior door panels and thus become susceptible to quality and safety issues.

386.    Toyota has been apprised of these issues by numerous individual complaints to Toyota representatives or dealerships and service requests by Plaintiffs and the Indiana Class before or within a reasonable amount of time.

387.    As a direct and proximate result of Toyota's breach of the implied warranty of merchantability, Plaintiff Foster and the Indiana Class have been damaged in an amount to be proven at trial.

## COUNT XIX: FRAUD BY CONCEALMENT

**(Brought by Plaintiff Foster against Toyota on behalf of the Indiana State Class)**

388.    Plaintiff Foster and the Indiana Class incorporate by reference paragraphs 1-170 as though fully set forth at length herein.

389.    Plaintiff Foster brings this cause of action on behalf of himself and the Indiana Class.

390.    Toyota concealed and suppressed material facts concerning the quality of its Class Vehicles and the Toyota brand.

391.    Toyota concealed and suppressed material facts concerning the culture of Toyota—a culture characterized by an emphasis on cost-cutting, the studious avoidance of safety issues, and a shoddy design process.

392.    Toyota concealed and suppressed material facts concerning Door Actuator Defect plaguing Class Vehicles, and that it valued cost-cutting and took steps to ensure that its employees did not reveal known defects to regulators or consumers.

393.    Toyota did so in order to boost confidence in its vehicles and falsely assure purchasers and lessors of its vehicles that Toyota was a reputable manufacturer that stands behind its vehicles after they are sold and that its vehicles are of sound quality. The false representations were material to consumers, because they concerned the quality of the Class Vehicles and because they played a significant role in the value of the Class Vehicles.

394.    Toyota had a duty to disclose the Door Actuator Defect in Class Vehicles because it was known and/or accessible only to Toyota who had superior knowledge and access to the facts, and Toyota knew the facts were not known to or reasonably discoverable by Plaintiff Foster and the Indiana Class. These omitted and concealed facts were material because they directly impact the value of the Class Vehicles purchased or leased by Plaintiff Foster and the Indiana Class. Whether a manufacturer's products are of sound quality, and whether that manufacturer stands behind its products, are material concerns to a consumer.

395.    Toyota actively concealed and/or suppressed these material facts, in whole or in part, to protect its profits and avoid recalls that would hurt the brand's image and cost Toyota money, and it did so at the expense of Plaintiff Foster and the Indiana Class.

396.     On information and belief, Toyota has still not made full and adequate disclosure and continues to defraud Plaintiff Foster and the Indiana Class and conceal material information regarding the Door Actuator Defect that exists in Class Vehicles.

397.     Plaintiff Foster and the Indiana Class were unaware of these omitted material facts and would not have acted as they did if they had known of the concealed and/or suppressed facts. Plaintiff Foster and the Indiana Class's actions were justified. Toyota was in exclusive control of the material facts and such facts were not known to the public, Plaintiff Foster, or the Indiana Class.

398.     As a result of Toyota's concealment of, and failure to timely disclose, the Door Actuator Defect in millions of Class Vehicles and the quality issues engendered by Toyota's corporate policies, Plaintiff Foster and the Indiana Class sustained monetary damage due to out-of-pocket payments expended to remedy the Door Actuator Defect and because they own vehicles that diminished in value. Had they been aware of the Door Actuator Defect that existed in Class Vehicles, Plaintiff Foster either would have paid less for his vehicle or would not have purchased or leased it at all. Plaintiff Foster did not receive the benefit of their bargain as a result of Toyota's fraudulent concealment.

399.     Accordingly, Toyota is liable to Plaintiff Foster and the Indiana Class for their damages in an amount to be proven at trial.

400.     Toyota's acts were done deliberately, with intent to defraud, and in reckless disregard of Plaintiff Foster and the Indiana Class's rights to enrich Toyota. Toyota's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

## COUNT XX: UNJUST ENRICHMENT

**(Brought by Plaintiff Foster against Toyota on behalf of the Indiana State Class)**

401.    Plaintiff Foster and the Indiana Class incorporate by reference paragraphs 1-170 as though fully set forth at length herein.

402.    Plaintiff Foster brings this cause of action on behalf of himself and the Indiana Class.

403.    Toyota has received and retained a benefit from Plaintiff Foster and the Indiana Class and inequity has resulted.

404.    Toyota has benefitted from manufacturing, distributing, selling, and leasing the Class Vehicles for more than they were worth as a result of Toyota's conduct, at a profit, and Plaintiff Foster and the members of the Indiana Class have overpaid for the Vehicles and been forced to pay other costs.

405.    Thus, Plaintiff Foster and the members of the Indiana Class conferred a benefit on Toyota.

406.    It is inequitable for Toyota to retain these benefits.

407.    Plaintiff Foster and the members of the Indiana Class were not aware of the true defective nature of the Class Vehicles at the time of acquisition, and did not benefit from Toyota's conduct.

408.    Toyota knowingly accepted the benefits of its unjust conduct.

409.    As a result of Toyota's conduct, the amount of its unjust enrichment should be determined to be an amount according to the proof.

**F.**     <u>Claims Brought on Behalf of the Georgia Class</u>

**COUNT XXI: VIOLATIONS OF GEORGIA'S**
**UNIFORM DECEPTIVE TRADE PRACTICES ACT**
**(Ga. Code Ann. § 10-1-370, *et seq*.)**

**(Brought by Plaintiff Woodall against Toyota on behalf of the Georgia State Class)**

410.     Plaintiff Woodall and the Georgia Class incorporate by reference paragraphs 1-170 as though fully set forth at length herein.

411.     Plaintiff Woodall brings this cause of action on behalf of himself and the Georgia Class.

412.     Toyota, Plaintiff Woodall, and the Georgia Class members are "persons" within the meaning of Georgia Uniform Deceptive Trade Practices Act ("Georgia UDTPA"), Ga. Code. Ann. § 10-1-371(5).

413.     The Georgia UDTPA prohibits any "deceptive trade practices," which include misrepresenting the "standard, quality, or grade" of goods or services, and engaging "in any other conduct which similarly creates a likelihood of confusion or of misunderstanding." Ga. Code. Ann. § 10-1-372(a).

414.     By the conduct described in detail above and incorporated herein, Toyota engaged in unfair or deceptive acts in violation of Ga. Code. Ann. § 10-1-372(a).

415.     Toyota's omissions regarding the Door Actuator Defect, described above, that results in the door lock actuators in each of the Class Vehicles' doors to prematurely cease to operate so that door cannot be locked or unlocked utilizing the remote key fob or power door locks on the interior door panels, are material facts that a reasonable person would have considered in deciding whether or not to purchase (or to pay the same price for) the vehicle.

- 132 -

416.     Toyota intended for Plaintiff Woodall and the other Georgia Class members to rely on Toyota's omissions of fact regarding the Door Actuator Defect.

417.     Plaintiff Woodall and the other Georgia Class members justifiably acted or relied to their detriment upon Toyota's omissions of fact concerning the above-described Door Actuator Defect that results in the door lock actuators in each of the Class Vehicles' doors to prematurely cease to operate so that door cannot be locked or unlocked utilizing the remote key fob or power door locks on the interior door panels, as evidenced by Plaintiff Woodall's purchase of their vehicles.

418.     Had Toyota disclosed all material information regarding the Door Actuator Defect to Plaintiff Woodall and the other Georgia Class members, then Plaintiff Woodall and the other Georgia Class members would not have purchased or leased the vehicle or would have paid less to do so.

419.     Toyota's omissions deceived Plaintiff Woodall and the other Georgia Class members.

420.     In addition to being deceptive, the business practices of Toyota were unfair because Toyota knowingly sold to Plaintiff Woodall and the other Georgia Class members vehicles with defective door lock actuators that are essentially unusable for the purposes for which they were sold once the Door Actuator Defect manifests. The injuries to Plaintiff Woodall and the Georgia Class are substantial and greatly outweigh any alleged countervailing benefit to Plaintiff Woodall and the Georgia Class or to any competition under all the circumstances. Moreover, considering Toyota's exclusive knowledge of the Door Actuator Defect, the injury is not one that Plaintiff Woodall and the Georgia Class could have reasonably avoided.

421.    Further, and to the extent required by law, Toyota had a duty to disclose the Door Actuator Defect because disclosure of the Door Actuator Defect was necessary to dispel misleading impressions about the Class Vehicles' reliability and durable that were or might have been created by partial representation of the facts. Specifically, Toyota promoted, through its advertisements available to all Class members, that the Vehicles were reliable and durable. Toyota owed Plaintiff Woodall and the Georgia Class members a duty to disclose all the material facts concerning the Door Actuator Defect because it possessed exclusive knowledge, it intentionally concealed the defect from Plaintiff Woodall and the Georgia Class members, and/or it made misrepresentations that were rendered misleading because they were contradicted by withheld facts.

422.    Toyota's unfair or deceptive acts or practices were likely to, and did, in fact, deceive consumers, including Plaintiff Woodall and the other Georgia Class members, about the true reliability, dependability, efficiency, and quality of the Class Vehicles.

423.    Toyota's violations present a continuing risk to Plaintiff Woodall and the Georgia Class members, as well as to the public. Toyota's unlawful acts and practices complained of herein affect the public interest.

424.    Plaintiff Woodall and the other Georgia Class members suffered ascertainable loss and actual damages as a direct result of Toyota's concealment of and failure to disclose material information, namely, the Door Actuator Defect. Plaintiff Woodall and the other Georgia Class members who purchased or leased the Class Vehicles would not have done so, or would have paid significantly less, if the true nature of the Class Vehicles had been disclosed. Plaintiff Woodall and the other Georgia Class members also suffered diminished value of their vehicles.

425.    Pursuant to Ga. Code. Ann § 10-1-373, Plaintiff Woodall and the Georgia Class members seek an order enjoining Toyota's unfair and/or deceptive acts or practices, any such orders or judgments as may be necessary to restore to Plaintiff Woodall and the Georgia Class members any money acquired by deceptive trade practices, including restitution and/or restitutionary disgorgement, and any other just and proper relief available under the Georgia UDTPA.

426.    Toyota was provided notice of the issues raised in this count and this Complaint by the numerous complaints filed against them. Plaintiff Woodall seeks all damages and relief to which Plaintiff Woodall and the Georgia Class members are entitled.

**COUNT XXII: VIOLATIONS OF GEORGIA'S FAIR BUSINESS PRACTICES ACT**
**(Ga. Code Ann. § 10-1-390, _et seq._)**

**(Brought by Plaintiff Woodall against Toyota on behalf of the Georgia State Class)**

427.    Plaintiff Woodall and the Georgia Class incorporate by reference paragraphs 1-172 as though fully set forth at length herein.

428.    Plaintiff Woodall brings this cause of action on behalf of himself and the Georgia Class.

429.    The Georgia Fair Business Practices Act ("Georgia FBPA") declares "[u]nfair or deceptive acts or practices in the conduct of consumer transactions and consumer acts or practices in trade or commerce" to be unlawful. Ga. Code. Ann. § 10-1-393(a).

430.    By the conduct described in detail above and incorporated herein, Toyota engaged in unfair or deceptive acts in violation of Ga. Code. Ann. § 10-1-393(a).

431.    Toyota's omissions regarding the Door Actuator Defect, described above, that results in the door lock actuators in each of the Class Vehicles' doors to prematurely cease to operate so that door cannot be locked or unlocked utilizing the remote key fob or power door locks

on the interior door panels, are material facts that a reasonable person would have considered in deciding whether or not to purchase (or to pay the same price for) the vehicle.

432.    Toyota intended for Plaintiff Woodall and the other Georgia Class members to rely on Toyota's omissions of fact regarding the Door Actuator Defect.

433.    Plaintiff Woodall and the other Georgia Class members justifiably acted or relied to their detriment upon Toyota's omissions of fact concerning the above-described Door Actuator Defect that results in the door lock actuators in each of the Class Vehicles' doors to prematurely cease to operate so that door cannot be locked or unlocked utilizing the remote key fob or power door locks on the interior door panels, as evidenced by Plaintiff Woodall's and the Georgia Class's purchase of their vehicles.

434.    Had Toyota disclosed all material information regarding the Door Actuator Defect to Plaintiff Woodall and the other Georgia Class members, then Plaintiff Woodall and the other Georgia Class members would not have purchased or leased their vehicle(s) or would have paid less to do so.

435.    Toyota's omissions deceived Plaintiff Woodall and the other Georgia Class members.

436.    In addition to being deceptive, the business practices of Toyota were unfair because Toyota knowingly sold to Plaintiff Woodall and the other Georgia Class members vehicles with defective door lock actuators that are essentially unusable for the purposes for which they were sold once the Door Actuator Defect manifests. The injuries to Plaintiff Woodall and the Georgia Class are substantial and greatly outweigh any alleged countervailing benefit to Plaintiff Woodall and the Georgia Class or to any competition under all of the circumstances. Moreover, in light of

Toyota's exclusive knowledge of the Door Actuator Defect, the injury is not one that Plaintiff Woodall and the Georgia Class could have reasonably avoided.

437.    Further, and to the extent required by law, Toyota had a duty to disclose the Door Actuator Defect because disclosure of the Door Actuator Defect was necessary to dispel misleading impressions about the Class Vehicles' reliability and durable that were or might have been created by partial representation of the facts. Specifically, Toyota promoted, through its advertisements available to all Class members, that the vehicles were reliable and durable. Toyota owed Plaintiff Woodall and the Georgia Class members a duty to disclose all the material facts concerning the Door Actuator Defect because it possessed exclusive knowledge, it intentionally concealed the defect from Plaintiff Woodall and the Georgia Class members, and/or it made misrepresentations that were rendered misleading because they were contradicted by withheld facts.

438.    Toyota's unfair or deceptive acts or practices were likely to, and did, in fact, deceive consumers, including Plaintiff Woodall and the other Georgia Class members, about the true reliability, dependability, efficiency, and quality of the Class Vehicles.

439.    Toyota's violations present a continuing risk to Plaintiff Woodall and the Georgia Class members, as well as to the public. Toyota's unlawful acts and practices complained of herein affect the public interest.

440.    Plaintiff Woodall and the other Georgia Class members suffered ascertainable loss and actual damages as a direct result of Toyota's concealment of and failure to disclose material information, namely, the Door Actuator Defect. Plaintiff Woodall and the other Georgia Class members who purchased or leased the Class Vehicles would not have done so, or would have paid

significantly less, if the true nature of the Class Vehicles had been disclosed. Plaintiff Woodall and the other Georgia Class members also suffered diminished value of their vehicles.

441.    Pursuant to Ga. Code. Ann. § 10-1-399, Plaintiff Woodall and the Georgia Class members seek an order enjoining Toyota's unfair and/or deceptive acts or practices, and awarding damages, treble damages, and any other just and proper relief available under the Georgia FBPA.

442.    Toyota was provided notice of the issues raised in this count and this Complaint by the numerous complaints filed against them and the notice letters sent by Plaintiffs within a reasonable amount of time after the allegations of Class Vehicle defects became public. Because Toyota failed to remedy its unlawful conduct within the requisite time period, Plaintiff Woodall seeks all damages and relief to which Plaintiff Woodall and the Georgia Class members are entitled.

### COUNT XXIII: BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY
### (Ga. Code. Ann. §§ 11-2-314 and 11-2A-212)

**(Brought by Plaintiff Woodall against Toyota on behalf of the Georgia State Class)**

443.    Plaintiff Woodall and the Georgia Class incorporate by reference paragraphs 1-172 as though fully set forth at length herein.

444.    Plaintiff Woodall brings this cause of action on behalf of himself and the Georgia Class.

445.    Toyota is and was at all relevant times a "merchant" with respect to motor vehicles under Ga. Code Ann. §§ 11-2-104(1) and 11-2A-103(3), and a "seller" of motor vehicles under § 11-2-103(1)(d).

446.    With respect to leases, Toyota is and was at all relevant times a "lessor" of motor vehicles under Ga. Code Ann. § 11-2A-103(1)(p).

447.    The Class Vehicles are and were at all relevant times "goods" within the meaning of Ga. Code Ann. §§ 11-2-105(1) and 11-2A-103(1)(h).

448.    A warranty that the Class Vehicles were in merchantable condition and fit for the ordinary purpose for which vehicles are used is implied by law pursuant to Ga. Code Ann. §§ 11-2-314 and 11-2A-212.

449.    The Class Vehicles are defective because they have a Door Actuator Defect, described above, that results in the door lock actuators in each of the Class Vehicles' doors to prematurely cease to operate so that door cannot be locked or unlocked utilizing the remote key fob or power door locks on the interior door panels.

450.    These defects existed at the time the Class Vehicles left the control of Toyota.

451.    Based upon these defects, Toyota has failed to meet the expectations of a reasonable consumer. The Class Vehicles are unfit for their ordinary, intended use, because they suffer from the Door Actuator Defect, that results in the door lock actuators in each of the Class Vehicles' doors to prematurely cease to operate so that door cannot be locked or unlocked utilizing the remote key fob or power door locks on the interior door panels.

452.    Toyota was provided notice of the Door Actuator Defect through numerous complaints filed against it directly and through its dealers, as well as its own internal engineering knowledge. In particular, Toyota was provided notice of the Door Actuator Defect, and its breach of its warranties, with respect to Plaintiff Woodall and the other Georgia Class members, through the complaints filed in the NHTSA.

453.    Moreover, notice is futile because Toyota has continually failed to provide adequate remedies to Plaintiff Woodall and Georgia Class members.

454.    The above-described defects in the Class Vehicles were the direct and proximate cause of economic damages to Plaintiff Woodall and the other Georgia Class members.

### COUNT XXIV: FRAUDULENT CONCEALMENT

**(Brought by Plaintiff Woodall against Toyota on behalf of the Georgia State Class)**

455.    Plaintiff Woodall and the Georgia Class incorporate by reference paragraphs 1-170 as though fully set forth at length herein.

456.    Plaintiff Woodall brings this cause of action on behalf of himself and the Georgia Class.

457.    Toyota was aware of the Door Actuator Defect within the Class Vehicles when it marketed and sold the Class Vehicles to Plaintiff Woodall and the other Georgia Class members.

458.    Having been aware of the Door Actuator Defect within the Class Vehicles and, having known that Plaintiff Woodall and the other Georgia Class members could not have reasonably been expected to know of this defect, Toyota had a duty to disclose the Door Actuator Defect to Plaintiff Woodall and the other Georgia Class members in connection with the sale or lease of the Class Vehicles.

459.    Further, Toyota had a duty to disclose the Door Actuator Defect because disclosure of the Door Actuator Defect was necessary to dispel misleading impressions about the Class Vehicles' reliability and durable that were or might have been created by partial representation of the facts. Specifically, Toyota promoted, through its advertisements available to all Class members, that the vehicles were reliable and durable.

460.    Toyota did not disclose the Door Actuator Defect within the Class Vehicles to Plaintiff Woodall and the other Georgia Class members in connection with the sale or lease of the Class Vehicles.

461.    For the reasons set forth above, the Door Actuator Defect within the Class Vehicles comprises material information with respect to the sale or lease of the Class Vehicles.

462.    In purchasing or leasing the Class Vehicles, Plaintiff Woodall and the other Georgia Class members reasonably relied on Toyota to disclose known material defects with respect to the Class Vehicles. Had Plaintiff Woodall and the other Georgia Class members known of the Door Actuator Defect within the Class Vehicles, they would have not purchased the Class Vehicles or would have paid less for the Class Vehicles.

463.    Through its omissions regarding the latent Door Actuator Defect within the Class Vehicles, Toyota intended to induce, and did induce, Plaintiff Woodall and the other Georgia Class members to purchase or lease a Class Vehicle that they otherwise would not have purchased, or to pay more for a Class Vehicle than they otherwise would have paid.

464.    As a direct and proximate result of Toyota's omissions, Plaintiff Woodall and the other Georgia Class members either paid too much for the Class Vehicles or would not have purchased the Class Vehicles if the Door Actuator Defect had been disclosed to them, and, therefore, have incurred damages in an amount to be determined at trial.

**COUNT XXV: UNJUST ENRICHMENT**

**(Brought by Plaintiff Woodall against Toyota on behalf of the Georgia State Class)**

465.    Plaintiff Woodall and the Georgia Class incorporate by reference paragraphs 1-170 as though fully set forth at length herein.

466.    Plaintiff Woodall brings this cause of action on behalf of himself and the Georgia Class.

467.    Toyota has benefitted from selling and leasing at an unjust profit defective Class Vehicles that had artificially inflated prices due to Toyota's concealment of the Door Actuator

Defect, and Plaintiff Woodall and the other members of the Georgia Class have overpaid for these vehicles.

468.    Toyota has received and retained unjust benefits from Plaintiff Woodall and the other members of the Georgia Class, and inequity has resulted.

469.    It is inequitable and unconscionable for Toyota to retain these benefits.

470.    Because Toyota concealed its fraud and deception, Plaintiff Woodall and the other members of the Georgia Class were not aware of the true facts concerning the Class Vehicles and did not benefit from Toyota's misconduct.

471.    Toyota knowingly accepted the unjust benefits of its wrongful conduct.

472.    As a result of Toyota's misconduct, the amount of its unjust enrichment should be disgorged and returned to Plaintiff Woodall and the other members of the Georgia Class in an amount to be proven at trial.

## JURY DEMAND

473.    Plaintiffs, on behalf of themselves and the putative Class, hereby demand a trial by jury on all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on behalf of themselves and the members of the Class, respectfully request that this Court:

a.    determine that the claims alleged herein may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and issue an order certifying the Class as defined above;

b.    appoint Plaintiffs as the representatives of the Class and their counsel as Class counsel;

c.  award all actual, general, special, incidental, statutory, punitive, and consequential damages and restitution to which Plaintiffs and members of the Class are entitled;

d.  award pre-judgment and post-judgment interest on any monetary relief;

e.  grant appropriate injunctive and/or declaratory relief, including, without limitation, an order that requires Toyota to repair, recall, and/or replace the Class vehicles and to extend the applicable warranties to a reasonable period of time, or, at a minimum, to provide Plaintiffs and Class members with appropriate curative notice regarding the existence and cause of the Door Actuator Defect;

f.  award reasonable attorneys' fees and costs; and

g.  grant such further relief that this Court deems appropriate.

Dated: October 11, 2024.

Respectfully submitted,

By: _/s/ Bruce W. Steckler_____
    Bruce W. Steckler
    Austin P. Smith
    Jack M. Kelley
    **STECKLER WAYNE & LOVE PLLC**
    12720 Hillcrest Road, Suite 1045
    Dallas, Texas 75230
    Telephone: (972) 387-4040
    Facsimile: (972) 387-4041
    bruce@stecklerlaw.com
    austin@stecklerlaw.com
    jkelley@stecklerlaw.com

    David C. Wright (*pro hac vice* forthcoming)
    Todd A. Walburg (*pro hac vice* forthcoming)
    **MCCUNE LAW GROUP**
    3281 E. Guasti, Road, Suite 100
    Ontario, California 91761
    Telephone: (909) 557-1250
    Facsimile: (909) 557-1275
    dcw@mccunewright.com
    taw@mccunewright.com
    sbb@mccunewright.com

*Attorneys for the Plaintiffs and the Proposed Class*